# EXHIBIT A

ELECTRONICALLY FILED
9/22/2010 1:29 PM
CV-2009-002318.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**

THE BANK OF NEW YORK MELLON,　)
as Indenture Trustee,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　)　　CIVIL ACTION NUMBER:
v.　　　　　　　　　　　　　　　)　　　　CV-2009-02318
　　　　　　　　　　　　　　　　)
JEFFERSON COUNTY, ALABAMA, et al.,　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)

**ORDER**

This matter was submitted to the Court for adjudication of the claims of Plaintiff, The Bank of New York Mellon, as Indenture Trustee (the "Trustee"), seeking against Jefferson County, Alabama (the "County") and the County Commissioners the appointment of a receiver and other relief. The Court, in the granting of Plaintiff's "Motion for Partial Summary Judgment," has before it several complex issues. The Court is of the opinion that the parties have mutual interests and a common objective. The common objective being the meeting of Jefferson County's obligations in the instant case while preserving the County's ability to grow and prosper.

The Court is of the opinion that bankruptcy is not a feasible alternative. Jefferson County in order to progress, must have access to capital markets. It is ironic that the sewer system that is the subject of this lawsuit and so much controversy is also a reason for optimism. The sewer system as infrastructure is for the most part state of the art and has much underutilized capacity. Access to capital markets is a requirement for the successful utilization of underutilized capacity. Bankruptcy would deny Jefferson County access to capital markets. It is apparent that bankruptcy would be catastrophic for the Plaintiff.

3908901.2

Capital markets abhor default and demand payment. Consequently it is important for the Plaintiff to be made whole or as nearly so as reasonably possible. In order to accomplish this, additional net revenues must be generated by the Jefferson County Sewer System. The Court is not unaware that demand for sewer services is not price inelastic. Consequently hikes in sewer usage rates must be reasonable and carefully implemented so as not to result in decreased demand for sewer services. In addition to raising rates for sewer usage, it is entirely possible that other avenues for generating additional net revenues may exist.

Accordingly and upon consideration of the entire record in this case, the record in the Federal Action,[1] and the arguments of counsel, the Court makes the following findings of fact and conclusions of law:

1. This Court has subject matter jurisdiction.

2. The Trustee has standing to bring this lawsuit.

3. The Trustee has met all preconditions to bringing this lawsuit against the Defendants. Alabama Code § 11-28-6 exempts the Trustee's claims from the requirements of Alabama Code §§ 6-5-20, 11-12-5, 11-12-6, and 11-12-8.

4. The County has defaulted on its obligations owed to the Trustee and the Parity Security Holders by Defendants' failure to make payments when due and to comply with certain obligations and covenants in the Indenture,[2] which defaults have put the Parity Security Holders' investments at risk.

---

[1] *The Bank of New York Mellon, as Indenture Trustee, et. al. v. Jefferson County, Alabama, et. al.*, Case No.: 2:08-CV-01703-RDP in the United States District Court for the Northern District of Alabama.

[2] The Parity Securities are governed by an Original Trust Indenture and eleven Supplemental Indentures (the Original Trust Indenture as supplemented from time to time, the "Indenture").

Case 11-05736-CRJ9 Doc 40-1 Filed 11/10/11 Entered 11/10/11 09:51:45 Desc
Exhibit A Page 3 of 24

5.      Separate Events of Default[3] have occurred and are continuing under §13.1(a) of the Indenture as a result of the County's failure to make $515,942,500 in rapidly amortizing principal redemption payments due on June 2, 2008, August 1, 2008, October 1, 2008, January 1, 2009, February 20, 2009, April 1, 2009, July 1, 2009, October 1, 2009, January 1, 2010, April 1, 2010, and July 1, 2010.

6.      An Event of Default has occurred and is continuing under §13.1(b) of the Indenture as a result of the County's failure to comply with the Rate Covenant set forth in §12.5(b) of the Indenture. The exceptions set forth in §12.5(b) have not been met by the County.

7.      Separate Events of Default have occurred and are continuing under §13.1(c) of the Indenture as a result of the County's failure to comply with its covenants set forth in §§12.5(a) and 12.5(b) of the Indenture to set rates and charges for services furnished by the System in an amount sufficient to provide for all interest, premium and principal payments when due and the County's failure to timely cure such defaults after notice thereof from the Trustee.

8.      An Event of Default has occurred and is continuing under §13.1(c) of the Indenture as a result of the County's failure to comply with its covenants set forth in §11.1 of the Indenture including the requirement that the County deposit System Revenues as required by the Indenture and the County's failure to timely cure such defaults after notice thereof from the Trustee.

9.      An Event of Default has occurred and is continuing under §13.1(c) of the Indenture as a result of the County's failure to comply with its covenants set forth in §11.3 of the Indenture including the requirement that the County satisfy the Reserve Fund Requirement and the County's failure to timely cure such defaults after notice thereof from the Trustee.

---

[3]    Capitalized terms shall have the meaning given them in the Indenture unless otherwise set forth herein.

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
                          Exhibit A    Page 4 of 24

10.     An Event of Default has occurred and is continuing under §13.1(c) of the Indenture as a result of the County's failure to comply with its covenants set forth in §11.11 of the Indenture including the requirement that the County deposit System Revenues as required by the Indenture and the County's failure to timely cure such defaults after notice thereof from the Trustee.

11.     Events of Default have occurred and are continuing under §13.1(c) of the Indenture as a result of the County's failure to comply with its covenants set forth in §12.2 of the Indenture including the requirement to maintain separate books and records pertaining to the System and to provide the Trustee with unaudited financial statements within ninety days after the close of the fiscal year and to provide audited financial statements to the Trustee within 180 days after the close of the fiscal year and the County's failure to timely cure such defaults after notice thereof from the Trustee.

12.     Events of Default have occurred and are continuing under §13.1(c) of the Indenture as a result of the County's failure to comply with its covenants set forth in §12.5(c) of the Indenture to implement yearly increases in the rates and charges in an amount sufficient to comply with the Rate Covenant and the County's failure to timely cure such defaults after notice thereof from the Trustee.

13.     The Trustee has a first priority lien on all funds of the System in its possession, the System Revenues (other than revenues derived from the Sewer Tax and any other tax revenues that constitute System Revenues) that remain after the payment of Operating Expenses, all monies from whatever source derived that are required by the Indenture to be deposited from time to time in the Debt Service Fund and the Reserve Fund, together with any investments and reinvestments of such monies and the income for proceeds thereof, and any and all other monies,

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 5 of 24

rights and properties of every kind or description which have been or hereafter may be sold, transferred, conveyed, assigned, hypothecated, endorsed, deposited, pledged, mortgaged, granted or delivered to, or deposited with Trustee by the County or anyone on its part as additional security for payment of all or any specified series of Parity Securities, or which pursuant to any of the provisions of the Indenture may come into possession or control of the Trustee as such additional security, in each case as security for the Parity Securities and the performance by the County of the covenants set forth in the Indenture (collectively the "Trust Estate").

14. Section 13.2(c) of the Indenture provides that the Trustee is entitled, as a matter of strict right, upon the order of a court of competent jurisdiction, to the appointment of a receiver upon the occurrence and continuation of any single Event of Default.

15. Section 13.2(c) of the Indenture, which provides for the appointment of a receiver to administer and operate the System with power to fix and charge rates and collect revenues sufficient to provide for the payment of the Parity Securities and any other obligations outstanding against the System or the revenues thereof and for the payment of expenses of operating and maintaining the System and with power to apply the income and revenues of the System in conformity with the Act and the Indenture, is valid and enforceable under Alabama law. The County and its taxpayers and citizens are precluded from challenging the validity of the covenants in and provisions of the Indenture by the order of the Jefferson County Circuit Court entered August 24, 2001, which order validated the provisions of the Indenture and the Parity Securities.

16. The Court has reviewed all of the evidence before it, including the parties' extensive stipulations, documentary evidence, deposition transcripts, and all of the evidence from the proceedings before Judge Proctor in the Federal Action. Based upon the totality of this

Case 11-05736-CRJ9   Doc 40-1   Filed 11/10/11   Entered 11/10/11 09:51:45   Desc
Exhibit A    Page 6 of 24

evidence, the Court finds that the facts and equities weigh in favor of appointing a receiver and that equity will not be served by refusing to enforce the Indenture as written. The Court has considered the appropriate factors under Alabama law and specifically finds that the Trustee has presented sufficient evidence to support the appointment of a receiver.

17.     Upon review of the entire record before this Court, this Court finds that the evidence is undisputed that: the Trustee has a clear legal right to be protected by the appointment of a receiver; the Trustee has no other adequate remedy at law; the Trustee and the Parity Security Holders that it represents have suffered and continue to suffer irreparable harm by the loss of the System Revenues and Net Revenues Available for Debt Service that the System could generate, but is not currently generating; the County has failed to abide by the terms of the Indenture and has failed to operate the Sewer System in an economical, efficient and proper manner; and the public interest and the ends of justice will be best served by the appointment of a receiver.

18.     The Court finds that a receiver will be able to stabilize the System finances and will also be able to implement significant operational improvements and efficiencies that will generate more System Revenues and more Net Revenues Available for Debt Service than Defendants have previously produced.

19.     Unless a receiver is appointed, the failure of the Defendants to operate the System to generate revenues sufficient to provide for the payment of the Parity Securities and other obligations outstanding against the System, and for the payment of expenses of operating and maintaining the System will reduce the overall value of the Trustee's collateral and result in further irreparable harm to the Trustee and the Parity Security Holders.

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 7 of 24

20.     The Trustee has proved its entitlement to the appointment of a receiver to ensure the economic and efficient operation of the System.  The Court finds that the Trustee has met all requirements for the appointment of a receiver as set out in

      a.     the Indenture;

      b.     Alabama Code § 6-6-620; and

      c.     the controlling legal standards in this State.

21.     Because the Court is appointing a receiver after a final hearing on the merits, Alabama law does not require the Trustee to post a bond.  *See Tsimpides v. Hare*, 123 So. 2d 109, 110 (Ala. 1960).

22.     John S. Young, Jr. LLC, a Delaware limited liability company ("JSY"), is qualified to serve as receiver of the System, and John S. Young, Jr., has agreed to remain the majority member, and to serve as the chief executive officer of JSY for so long as JSY is serving as receiver of the System pursuant to the order of this Court.

23.     Notwithstanding anything contained herein, the terms and conditions of the Indenture, the municipal bond insurance policies, and any related documents (the "Indenture Documents"), and the rights, property, powers, authority, and assets conferred therein remain in full force and effect.  Nothing contained in this Order shall act to divest, in any way, the Trustee of any collateral, property, or asset under the control of the Trustee, or enjoin or otherwise prohibit the Trustee from pursuing any remedies as provided in the Indenture Documents. Nothing contained in this Order shall relieve the County of any obligation or liability under any existing judgment, order or decree.

Case 11-05736-CRJ9   Doc 40-1   Filed 11/10/11   Entered 11/10/11 09:51:45   Desc
Exhibit A   Page 8 of 24

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** as follows:

1.      John S. Young, Jr. LLC ("JSY") is hereby appointed receiver over the System (as hereinafter defined) (the "Receiver"). The purpose of the receivership is to operate and administer the System in an economical and efficient manner in compliance with the terms and conditions of the Indenture to the extent possible, and subject to applicable state and federal law. To that end, the Receiver is hereby granted the full power and authority to effectively administer, operate, and protect the System.

2.      The Receiver is hereby appointed to administer and operate the System, and the Receiver is specifically vested with the power to fix and charge rates and to collect revenues sufficient to provide for the payment of the Parity Securities and any other obligations outstanding against the System or the revenues thereof and for the payment of expenses of operating and maintaining the System and with the power to apply the income and revenues of the System in conformity with the Act and the Indenture. By this Order, this Court intends to and hereby does grant to the Receiver full power and authority to administer and operate the System, subject to the Consent Decree,[4] applicable state and federal laws and the terms of the Indenture. The Receiver's powers include but are not limited to the following:

      a.      The sole and exclusive right and authority to take complete and exclusive possession, control and custody of the System in order to operate and administer the System and to perform all acts necessary or desirable to administer and operate the System in the ordinary course of business.

---

[4] The decree entered into in those civil actions consolidated in the United States District Court, Northern District of Alabama, and styled *United States of America v. Jefferson County, Alabama, et al.*, Civil Action No. 94-G2947-S, and *R. Allen Kipp, Jr., et al. and Cahaba River Society, Inc. v. Jefferson County, Alabama, et al.*, Civil Action No. 93-G-2492-S (the "Consent Decree"), 33 U.S.C. § 1251 *et seq.* (the Clean Water Act), and all NPDES permits.

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 9 of 24

b.     The sole and exclusive right and authority to implement operational efficiencies and revenue enhancement programs, that the Receiver, in its business judgment, may deem necessary for the administration or the operation of the System.

c.     The sole and exclusive right and authority to fix and charge rates and charges for services furnished by the System, to collect revenues sufficient to provide for the payment of the Parity Securities and any other obligations outstanding against the System or the revenues thereof and for the payment of expenses of operating and maintaining the System and to apply the income and revenues of the System in conformity with this Order, the Act and the Indenture, and to make reasonable reductions in the System's Operating Expenses, that the Receiver, in its business judgment, may deem necessary for the administration or the operation of the System.

d.     The sole and exclusive right to receive, collect, take possession of, and preserve all accounts, incomes, profits, and other revenues generated from and by the System, that the Receiver, in its business judgment, may deem necessary for the administration or the operation of the System.

e.     The sole and exclusive right and authority to terminate or modify any currently existing written or oral contract of the County (other than the Indenture Documents and the Parity Securities) and to assume and assign any such contract, to the extent the Receiver, in its business judgment, may deem necessary for the administration or operation of the System. Any

Case 11-05736-CRJ9   Doc 40-1   Filed 11/10/11   Entered 11/10/11 09:51:45   Desc
Exhibit A   Page 10 of 24

damages resulting from the termination or modification of a contract will be paid with System Revenues.

f.    The sole and exclusive right and authority to enter into new contracts on behalf of the County for goods or services, that the Receiver, in its business judgment, may deem necessary for the administration or operation of the System.

g.    The sole and exclusive right and authority to file, investigate, institute, prosecute, defend, compromise, adjust or intervene in any action or proceeding, legal, equitable or otherwise, before this Court, or any other appropriate court, agency or tribunal, that the Receiver, in its sole business judgment, may deem necessary for the administration or operation of the System.

h.    The right and authority to investigate and determine the nature and extent of prior expenditures may have been improperly classified as Operating Expenses, to take all reasonable and necessary action to have such expenses properly classified, and to investigate and determine whether System Revenues have been deposited as required by the Indenture and to take all reasonable and necessary action to recover System Revenues that have not been properly deposited, that the Receiver, in its sole business judgment, may deem necessary for the administration or operation of the System.

i.    The sole and exclusive right and authority to require the County to provide County employees to work for the System, as the Receiver, in its business judgment, may deem necessary for the administration or operation of the

System (the "System Staff"). The System shall reimburse the County for all compensation and benefits earned by the System Staff working for the System in this proceeding. The Receiver and the System shall not, for any purpose, be deemed the employer of any System Employee, who shall remain employees of the County. Any claim of a System Staff against the Receiver or the System shall be subject to the liability limitations set forth in this Order.

j.   The sole and exclusive right and authority to hire, discharge, manage and control System Staff, as the Receiver, in its business judgment, may deem necessary for the administration or operation of the System.

k.   The sole and exclusive right and authority, to enter into contracts for any insurance as the Receiver, in its business judgment, may deem necessary for the administration or operation of the System.

l.   The sole and exclusive right and authority to engage professionals, which may include but is not limited to American Water Works Company and its affiliated companies (collectively "American"), communication consultants, investment bankers, consultants, brokers, accountants, forensic and investigative accountants, engineers, licensed wastewater operators and attorneys and other service providers (collectively, the "Professionals and Service Providers"), as it may deem necessary in its business judgment to assist the Receiver in the performance of its duties as necessary during the period of the receivership.

Case 11-05736-CRJ9   Doc 40-1   Filed 11/10/11   Entered 11/10/11 09:51:45   Desc
Exhibit A   Page 12 of 24

m.   The Receiver's compensation for its services under this Order, not including any fee or expense of any broker, auctioneer, attorney, accountant or Professional and Service Provider retained by the Receiver, shall be five hundred dollars ($500.00) per hour with respect to the time devoted by John S. Young, Jr. to the work of the Receiver, not to exceed ten hours per day, plus the Receiver's reasonable and necessary out-of-pocket expenses directly related to the performance of its duties; including, but not limited to, local housing, meals, travel, local transportation, and transportation to and from the chief executive officer's primary residence. The Receiver shall file with this Court on a monthly basis an application for approval of the Receiver's fees and expenses during the pendency of the receivership and serve copies upon the County and the Trustee. If no objection is filed with this Court by the County or the Trustee within ten days of the service of the application, the Receiver shall be paid the fees and expenses covered by the application from System Revenues as an Operating Expense, subject to this Court's approval of the fees and expenses.

n.   Each of the Professional and Service Providers shall file with this Court on a monthly basis a fee application for approval of their respective fees and expenses during the pendency of the receivership and serve copies upon the County and the Trustee. If no objection is filed with this Court by the County, the Trustee or the Receiver within ten days of the service of a fee application, the Receiver shall pay the respective Professional and Service Provider the fees and expenses covered by the application from System

Case 11-05736-CRJ9   Doc 40-1   Filed 11/10/11   Entered 11/10/11 09:51:45   Desc
Exhibit A   Page 13 of 24

Revenues as an Operating Expense, subject to this Court's approval of the fees and expenses.

o.   The right and authority to submit applications for grants or other funding through state or federal programs, as the Receiver, in its business judgment, may deem necessary for the administration or operation of the System.

p.   The right and authority to request from the Trustee disbursements of funds of the System then on deposit with the Trustee and available under the Indenture for capital expenditures for use by the Receiver for the preservation or enhancement of the System as contemplated by the Capital Improvement Budget prepared by the Receiver in accordance with Section 8 hereafter of this Order, as the Receiver, in its business judgment, may deem necessary for the administration or operation of the System. Upon a request of the Receiver certifying that the expenditure of funds requested to be disbursed is for the preservation or enhancement of the System, the Trustee shall disburse funds available for capital expenditures under the Indenture to the Receiver unless otherwise ordered by the Court.

3.   The Receiver shall have the right and authority to generally, do, execute, and perform any other act, deed, matter or thing whatsoever that the Receiver, in its business judgment, reasonably believes ought to be done, executed, or performed, for the administration or operation of the System.

4.   Upon entry of this Order and its acceptance of the office, the Receiver is directed and empowered to take from the County all rights and powers of the County that the Receiver, in its business judgment, may deem necessary for the administration or operation of the System.

Case 11-05736-CRJ9   Doc 40-1   Filed 11/10/11   Entered 11/10/11 09:51:45   Desc
Exhibit A   Page 14 of 24

The System as used herein shall mean any and all funds of the County from the System, including federal and state grants in respect of the System and property which is used in or related to the System, including but not limited to:

a. any and all real, or personal property used in or related to the maintenance and operation of the System, including but not limited to all mains, laterals, collectors, transmission mains, outfalls, pumping stations, sewage disposal plants, sewage treatment plants, equipment, fixtures, machinery, motor vehicles, automobiles, trucks, other rolling stock, leasehold improvements, construction work in progress, supplies, raw materials, inventory, goods, work in process, parts, computers, computer software, (including all documentation and source codes with respect thereto, and licenses and leases), telecommunication systems, fixtures, furniture, furnishings, office equipment, all tangible property furnished by or used in connection with, as well as all rights, easements and franchises appurtenant thereto, (collectively, the "Physical Assets");

b. any and all cash, cash equivalents, bank accounts, deposit accounts, credits, prepaid expenses, deposits, deferred charges, advance payments, security deposits, prepaid items, funds (including the County's rights to all Funds, as defined in the Indenture), securities, investment accounts, accounts receivable, notes, notes receivable, mortgages, security interests, income, that portion of the County general fund to the extent that it consists of receipts and revenues (including payments received from customers) on account of or related to the System, System Revenues, the "Jefferson County

Case 11-05736-CRJ9   Doc 40-1   Filed 11/10/11   Entered 11/10/11 09:51:45   Desc
Exhibit A   Page 15 of 24

System Revenue Account," and including amounts received by the County as (a) grants or borrowed funds for improvements or extensions to the System, (b) deposits or payments by contractors to offset the cost of extensions or new connections, and (c) customer deposits to ensure payment for utility services whether or not held in a separate account or accounts pending use thereof for the said purposes, insurance claims, insurance proceeds and any and all other rights to receive payments and/or property used in, generated from or related to the administration, maintenance and operation of the System as well as all rights, interests, licenses and franchises related thereto (collectively, the "Cash Equivalent Assets");

c.      any and all records, documents, operating data and/or electronically stored information (the "ESI") and computer operating systems in which the ESI is stored, in the possession, custody or control of the County, related to or used in the administration, maintenance or operation of the System thereof (collectively, the "System Records"); and

d.      any and all of the internet domain names, post office box numbers, telephone and facsimile numbers, and other listings and numbers used by the System (collectively, the "Contact Information Assets").

Collectively, the assets of the System set forth in this paragraph are hereinafter referred to as the "Assets." For the avoidance of doubt, if any Physical Asset, System Record, or Contact Information Asset is used in or related to the System, but whose primary purpose is with respect to operations of the County unrelated to the System, then the Receiver's rights to the use, control and management of such Assets shall be governed by Section 16 hereafter of this Order.

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
                        Exhibit A    Page 16 of 24

5. The Receiver shall post a bond with the Clerk of this Court in the amount of one hundred thousand dollars ($100,000) within ten (10) business days of the entry of this Order. The expense of the bond shall be payable by the Receiver from the System Revenues.

6. The Parties shall have no authority to administer or operate the business and affairs of the System, which authority by this Order is vested solely and exclusively in the Receiver. Without limiting the generality of the foregoing, the Parties shall have no authority to make or commit to any expenditure of funds or resources of the System, which authority shall reside exclusively with the Receiver.

7. Upon notice of this Order any person or entity, or any employee or agent of such person or entity, shall be deemed to be required to comply with all of the terms of this Order until the Court shall have relieved such person from the terms of this Order by subsequent order.

8. The duties and responsibilities of the Receiver shall include the following:

   a. The Receiver shall use its reasonable best efforts to cause the System to comply with the requirements imposed on the County by the Consent Decree.

   b. The Receiver shall make an accounting and keep accurate records concerning the System, including the actual revenues collected and expenses paid each month, and make such records available to the Trustee, the County, and the Court during normal business hours and upon reasonable notice.

   c. The Receiver shall permit the Trustee or Defendants and its or their agents and independent contractors to inspect fully the Assets, the System's

Case 11-05736-CRJ9   Doc 40-1   Filed 11/10/11   Entered 11/10/11 09:51:45   Desc
Exhibit A   Page 17 of 24

accounts, and all books and records, including records as to the maintenance of any Assets during normal business hours and upon reasonable notice.

d. The Receiver shall annually propose a capital improvements budget, the amount of which shall not exceed $25,000,000 per year without further express approval by this Court.

e. The Receiver shall consult with Bond Counsel and make reasonable efforts to operate the System so that the tax-exempt status of the Parity Securities is maintained and preserved, to the extent that condition exists today.

9. The County is ordered immediately to deliver over to the Receiver: (a) full access to all System Records, including but not limited to any ESI; and (b) full and exclusive control over all Cash Equivalent Assets, including all authorizations or other documentation necessary or desirable for the Receiver to exercise full and exclusive control over the Cash Equivalent Assets. The Receiver shall have the absolute right, but not the duty, to change any accounts or other investment funds in which the Cash Equivalent Assets are currently maintained to any other account or fund if such change is in compliance with the terms of the Indenture, as the Receiver, in its business judgment, may deem necessary for the administration or operation of the System.

10. The Receiver shall have full and sole control over all Assets, as defined above, including all authorizations or other documentation, as the Receiver, in its business judgment, may deem necessary for the administration or operation of the System. The Receiver's administration and operation of the System shall not diminish the duties and cooperation required of the Defendants by this Order.

11. Any expenditures authorized by this Order for the administration and operation of the System (other than any expenditure chargeable to a capital account or that would be

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 18 of 24

characterized as an extraordinary item) and any and all expenses of the Receiver arising out of or related to the Receiver's administration or operation of the System or the implementation of this Order shall be paid from the System Revenues as Operating Expenses. Costs and expenses of the Receiver shall not be a general indebtedness or pledge of the full faith and credit of the County or a claim on the taxing power of the County or charge against any debt limit imposed on the County by the constitution or law of the State of Alabama.

12. The Receiver shall <u>not</u> have the authority, absent express order of this Court, to sell or otherwise dispose of the System or any single Asset.

13. The Parties along with their agents, employees, officials, officers and successors shall fully cooperate with the Receiver and the receivership in all matters related to this Order and the Receiver's administration and operation of the System, including the Parties executing all documents, providing all authorizations and taking any other action that the Receiver, in its business judgment, may deem necessary for the administration or operation of the System.

14. The Defendants are specifically enjoined from taking any action, other than in this Court or by appeal of this Order, which would interfere with the Receiver's administering and operating of the System or the Assets or remove any of the Assets from the control of the Receiver.

15. Unless otherwise requested by the Receiver, the County shall continue to maintain all insurance on the System required by the Indenture; provided, however, all premiums for such insurance to the extent relating to the System shall be Operating Expenses, as provided in the Indenture.

16. Unless and to the extent the Receiver notifies the County that the County shall not do so, the County shall continue to provide to the System all services that the County has

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 19 of 24

provided to the System since the execution and delivery of the Indenture, and shall do so with no less frequency, quality, quantity or timeliness (the "Historic Services"). If and to the extent that the Receiver notifies the County that it shall discontinue or diminish any of the Historic Services, the County shall comply with its request. If the Receiver elects to have the County continue to provide Historic Services for the System, the County shall continue to provide them at a reasonable cost. All reasonable costs of Historic Services shall constitute Operating Expenses, as provided in the Indenture.

17. The Receiver and its officers, agents, servants, attorneys, members, managers, directors, shareholders, representatives, employees, successors and assigns and any other Professional and Service Provider (jointly and severally with the Receiver, the "Receiver Affiliates") engaged by the Receiver shall owe duties only to the System and to this Court and shall not owe any duty, directly or indirectly, to the Plaintiff, the Defendants or any other party.

18. The Receiver Affiliates shall not have personal liability for any liabilities of the System or obligations incurred pursuant to the terms of this Order or any other order of this Court. In the event that any such liability or obligation is at any time asserted against the Receiver Affiliates on account of any claimed liability of, through or under the System, any order of this Court or the County, the Receiver may use System Revenues to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Receiver. Such expenditures shall constitute Operating Expenses. The Receiver shall in no event be required to use personal funds or any other funds for such purpose. The County shall enjoy the same protections afforded the Receiver pursuant to this Order with respect to any claims of liability asserted against the County for actions of the Receiver.

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
                        Exhibit A    Page 20 of 24

19.     The Receiver Affiliates shall perform the duties and obligations imposed on them by this Order with reasonable diligence and care under the circumstances. Neither the Receiver nor any Receiver Affiliate shall be personally liable to the County or to any third party except for such of its or their own acts as shall constitute fraudulent or willful misconduct determined by a final, nonappealable order of this Court. Except as aforesaid, the Receiver and the Receiver Affiliates shall be defended, held harmless and indemnified from time to time from the System's Revenues against any and all losses, claims, costs, expenses and liabilities (including legal fees, costs and expenses), and any costs of defending any action, suit, proceeding or investigation to which the Receiver or the Receiver Affiliates' may be subject by reason of their execution in good faith of their duties under this Order or any other order of this Court; provided, however, such indemnity shall be payable from the System Revenues and shall not be a general indebtedness or pledge of the full faith and credit of the County or a claim on the taxing power of the County or charge against any debt limit imposed on the County by the constitution or law of the State of Alabama. The Receiver may obtain for the Receiver's benefit, the benefit of the Receiver Affiliates and the benefit of the System, at the reasonable expense of the System, insurance against claims for liability, damage awards and settlements. Such expenditures shall constitute Operating Expenses.

20.     Any claim brought against the Receiver, System, or any Receiver Affiliate by any third party related in any way to the System or the administration, operation or control of the System by the Receiver (the "Receiver Claims") shall be filed in this Court. In addition, subject to orders of courts of superior jurisdiction to this Court, no judgment of a party other than the Trustee shall be enforced against the Assets absent further order of this Court..

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 21 of 24

21.     As an appointee of this Court and in carrying out the orders of this Court, the Receiver and the Receiver Affiliates shall have the same judicial immunity as this Court possesses. Furthermore, the Receiver and the Receiver Affiliates are not and shall not be considered public officials or public employees for any purpose, notwithstanding any other provision of this Order to the contrary.

22.     This Order shall not prohibit nor be construed to prohibit the Receiver or any Receiver Affiliate from performing work for third parties that is not related to the System.

23.     The System and the Assets shall be subject to and liable for only such local and state taxes as the County would have been liable for in its operation of the System or the Assets.

24.     The Receiver may only be removed by order of this Court upon appropriate motion, notice and hearing, after a showing, by clear and convincing evidence, of good cause by the Plaintiff or the Defendants.

25.     Starting thirty (30) days after the entry of this Order, and within twenty (20) days after the end of each calendar month thereafter, the Receiver shall file with this Court monthly reports concerning the financial results of the operations of the System.

26.     The Receiver may seek direction from this Court on any matter related to this Order, including but not limited to, relief from or modification of the provisions of this Order. The Receiver may also seek such further orders of this Court as it deems necessary or expedient to carry out its duties and responsibilities under this Order.

27.     At the completion of its duties set forth in this Order, the Receiver may file a motion seeking to terminate its position and to be discharged of its responsibilities as Receiver and the Court supervision of the System. The Receiver may resign and be discharged of its responsibilities at any time by giving ninety (90) days' prior written notice to this Court. Upon

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 22 of 24

the satisfaction and discharge of all indebtedness and obligations secured under the Indenture, the Court shall enter an Order, as appropriate, terminating the receivership.

28.    Until the Receiver is discharged and this receivership terminated, the Court retains jurisdiction of this matter for the following purposes:

        a.     to amend, supplement, or delete any provision of this Order;

        b.     to enforce compliance with or to punish violation of this Order; and

        c.     to order any additional actions or remedies as may be appropriate or reasonably necessary.

29.    The County shall give the Receiver prompt notice of all investigations, claims or potential claims, and actions now pending or later brought against the County related to the System.

**IT IS FURTHER ORDERED** as follows:

30.    The Trustee's Motion for Partial Summary Judgment is hereby **GRANTED**. The Defendants' Cross Motion for Summary Judgment is hereby **DENIED**.

31.    The Trustee is awarded a money judgment against the County in the amount of $515,942,500.11; provided, however, (i) recourse in the enforcement of this judgment shall be limited to the Trust Estate, (ii) this judgment shall not constitute a general indebtedness or pledge of the full faith and credit of the County or a claim on the taxing power of the County or charge against any debt limit imposed on the County by the constitution or law of the State of Alabama, and (iii) the money judgment lien shall not effect the priority of the lien of the Indenture in favor of the Trustee under the Indenture, which shall be first and prior to the lien of the money judgment.

32.    On or before the last business day of each calendar month, the Receiver shall pay to the Trustee all System Revenues and other funds of the System then in its possession that

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 23 of 24

remain after the payment of Operating Expenses, less any operating reserve as the Receiver, in its business judgment, may deem necessary for the administration or operation of the System and as approved by the Trustee.

33.     The reversal or modification on appeal of this Order shall not affect the validity of any actions taken in good faith by the Receiver or any Receiver Affiliate, the payment of compensation to which the Receiver or any Receiver Affiliate is entitled, or the payment of expenses incurred by the Receiver or a Receiver Affiliate pursuant to the terms of this Order.

34.     This Order shall be immediately effective upon its entry and shall continue until further order of this Court.

**SO ORDERED** this 22nd day of September, 2010.

_____
Albert L. Johnson, Circuit Judge

Case 11-05736-CRJ9    Doc 40-1    Filed 11/10/11    Entered 11/10/11 09:51:45    Desc
Exhibit A    Page 24 of 24