# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFERSON COUNTY, ALABAMA, | ) | Case No.: 11-05736-TBB |
| a political subdivision of the | ) | |
| State of Alabama | ) | |
| | ) | Chapter 9 |
| Debtor. | ) | |

## MEMORANDUM OPINION ON ELIGIBILITY OF JEFFERSON COUNTY, ALABAMA UNDER 11 U.S.C. § 109(C)

Amasa Coleman Lee, the father of Harper Lee, is famous for being the inspiration behind Atticus Finch in *To Kill a Mockingbird*, but he should also be remembered for his work in the Alabama Legislature. Although a newly elected member of the Alabama Legislature, A.C. Lee chaired the Recess Bond Law's Committee in 1927 and he continued to lead the state in revising Alabama's laws on municipal corporations well into the 1930s.[1] During this time, A.C. Lee worked with his colleagues in the Alabama Legislature to pass what is now in Ala. Code § 11-81-3 (2008), and as explained in this opinion, this statute specifically authorizes Jefferson County to file for bankruptcy under chapter 9 of the bankruptcy laws of the United States.

## I. A Debtor or Not: Eligibility, Bonds and Statutory Interpretation

The eligibility of Jefferson County, Alabama (hereinafter sometimes the "County") as a municipality that may adjust its debts under chapter 9 of the Bankruptcy Code, 11 U.S.C. §§ 901 *et seq.* is being challenged by The Bank of New York Mellon, as the Indenture Trustee for holders of warrants ("Indenture Trustee") issued by Jefferson County to pay for remediation, improvements, and expansion of its sewer system. The Indenture Trustee has been joined by The Bank of Novia Scotia; Société Générale, New York Branch; State Street Bank and Trust Company; Lloyds TSB Bank PLC; The Bank of New York Mellon; Assured Guaranty Municipal Corp.; Bank of America, N.A.; Financial Guaranty Insurance Company; JP Morgan Chase Bank, N.A.; Blue Ridge Investments, LLC; and Jeffrey Weissman D.D.S., Jeffrey Weissman D.D.S., P.C. and Keith Shannon (hereinafter Indenture Trustee and all of the other objecting parties are collectively referred to as the "Objectors") which/who are also asserting that Jefferson County

---

[1] For example, A.C. Lee sponsored Act 1935-191 and Act 1935-134. Act 1935-191, Ala. Code § 15-299(1) - (19) Code of Alabama 1928 (Supp. 1936) was the "County Financial Control Act" for counties with a population of 95,000 or less. Act 1935-154 was the "Municipal Revenue Bond Act of 1935."

1

does not meet the requisites of 11 U.S.C. § 109(c) setting forth when an entity may be a debtor under chapter 9.

At a hearing on December 15, 2011, the County presented evidence to establish that it met the requirements of 11 U.S.C. § 109(c)(1) - (5). At the conclusion of the hearing, this Court orally ruled that Jefferson County met four of the five requirements for being a debtor under chapter 9. Hr'g Tr. 202 Dec. 15, 2011. These four requirements are that it is a municipality for purposes of 11 U.S.C. § 109(c)(1), is insolvent as determined for 11 U.S.C. § 109(c)(3), desires to effect a plan to adjust its debts consistent with 11 U.S.C. § 109(c)(4), and had negotiated in good faith with creditors and failed to obtain an agreement with the necessary majority of creditors by class of claims intended to be impaired under a plan of adjustment before filing bankruptcy as required by 11 U.S.C. § 109(c)(5)(B). With respect to each of these four portions of § 109(c), the evidence overwhelmingly demonstrated the County's qualification and no meaningful challenge was made to these aspects of its eligibility.

The focus of the Objectors' assault on the County's eligibility is the requirement of 11 U.S.C. § 109(c)(2), which contains the following:

> (c) An entity may be a debtor under chapter 9 of this title if and only if such entity—
>
> . . . .
>
> (2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter . . . .

The disagreement between the County and the Objectors is over the breadth of Alabama's bankruptcy authorization. The Objectors argue that Jefferson County is not one of the counties that Alabama has authorized and assented to filing a bankruptcy case.

Since the July 17, 1935, effective date of Acts of Alabama 1935-197, and Acts of Alabama 1935-198, 1935 Ala. Acts 586, which were codified in § 2294(1) & (2) of the 1936 Cumulative Supplement to the Code of Alabama 1928, various Alabama municipal entities, including counties, cities, and towns have utilized the grant of authority and assent given by Alabama to municipal entities to initiate and prosecute a bankruptcy case. This authority and assent are now set forth in Ala. Code § 11-81-3 (2008). Until August 31, 2010, no court had restricted the application of Ala. Code § 11-81-3 (2008) to only municipal entities that had bond indebtedness outstanding as of the date of the filling of a bankruptcy case.

On August 31, 2010, in the case captioned *In re City of Prichard, Alabama*, case number 09-15000-WSS, the United States Bankruptcy Court for the Southern District of Alabama, dismissed the City of Prichard's chapter 9 case based on its determination that the city had no outstanding bond debt and that Ala. Code § 11-81-3 (2008) required outstanding bond indebtedness as a precondition to Alabama's grant of authority and assent to its municipalities' commencement of a bankruptcy case under the laws of the United States. This ruling was appealed to the United States District Court for the Southern District of Alabama. The District Court certified to the Supreme Court of Alabama the issue of whether bond indebtedness is a requisite for Alabama's municipalities to avail themselves of the bankruptcy authorization of Ala. Code § 11-81-3 (2008). This certification is currently under consideration by the Supreme Court of Alabama.

As one may have surmised by now, the over $4,000,000,000.00 indebtedness of Jefferson County does not include bonds. The vast majority is in the form of warrants.[2] In the past, the County has had bond debts. Some prior issues were extant in the 1930s through the 1950s. At least one Supreme Court of Alabama opinion, *see Shell v. Jefferson Cnty.*, 434 So. 2d 1331 (Ala. 1984), suggests the existence of sewer revenue bonds issued by Jefferson County in the mid-1980s and later.

Despite these earlier bond issues and as of the filing of Jefferson County's bankruptcy case, the undisputed evidence is that the County had no outstanding bond debt. Possibly as a backstop to anticipated arguments on eligibility, the Jefferson County Commission authorized by its July 26, 2011, resolution the "issuance of bonds or further warrants when, as and if necessary or desirable to restructure its long-term debts." Resolution Jul-26-2011-580. Some of the

---

[2] Until 2009, debt limits placed on counties did not take into account certain types of warrant indebtedness. *See* Ala. Code § 11-8A-1 (2009). Also and unlike most bond issues, certain types of warrants to fund municipal needs do not require a popular election. For a long time, Alabama has recognized the distinction between a bond and a warrant. A warrant is a command from an authorized officer to another municipal employee who must obey the command to pay from the municipality's funds an amount of money to a payee whose claim has been allowed by the municipality's governing body. Historically, the funds for payment of a warrant have been required to be on hand at the time of issuance of a warrant. Also, a warrant lacks some of the attributes of commercial paper and are not assignable. Rather, a transfer requires tender of a warrant and issuance of another to a subsequent holder. Of importance to Alabama courts is that warrants are not negotiable instruments. A bond, under Alabama courts' view, is a promise to pay money at a future date that often does not designate a person to whom the obligation is owed. It is viewed by Alabama courts as assignable without tender and reissuance. Unlike warrants, bonds are negotiable and often are negotiable instruments. Additionally, a bond is a promise to pay that is enforceable without being conditioned on the obligor "being in funds" sufficient to pay it. The Supreme Court of Alabama has designated these factors as distinguishing a warrant from a bond. It has also made clear that just because an obligation is called a warrant does not mean it is a warrant. It might be a bond or some other type of instrument. *See O'Grady v. City of Hoover*, 519 So. 2d 1292, 1298-1300 (Ala. 1987). Due to Alabama's debt limitation for Jefferson County, this Court takes note that the County has a vested interest in maintaining that its warrants are warrants and not some other sort of indebtedness that might be required to be included in ascertaining whether it has stayed within the debt limitation. Likewise, the Objectors have no interest at this juncture in the County's bankruptcy case to analyze whether the warrants are, as a matter of fact and law, warrants. If they are some other form of debt such as a bond, it would thwart their arguments on eligibility.

Objectors challenge the effectiveness of this resolution. In light of this Court's determinations, the effect and necessity of the July 26th resolution need not be addressed.

These are the facts directly relevant to § 109(c)(2)'s eligibility requirement for Jefferson County to be a municipal debtor under chapter 9 of the Bankruptcy Code, 11 U.S.C. §§ 901 *et seq.* A more comprehensive fact presentation is set forth in this Court's Memorandum Opinion dated January 19, 2012, Docketed Number 554. The fact portion of the January 19, 2012, Memorandum Opinion is incorporated herein by reference.

Section 109(c)'s eligibility requirements were made part of the current bankruptcy statute as the outcome of the Supreme Court of the United States' decision in *Ashton v. Cameron Cnty. Water Improvement District No. 1,* 298 U.S. 513 (1936). *Ashton* upheld a challenge to the 1934 act captioned "Provisions for the Emergency Temporary Aid of Insolvent Public Debtors and to Preserve the Assets Thereof and for other Related Purposes," which amended the Bankruptcy Act of 1898 by adding three sections, §§ 78, 79 & 80, constituting a new chapter 9. The *Ashton* court struck down this amendment, in part, as constituting a violation of the sovereignty of states protected under the Tenth Amendment to the United States Constitution. In response to *Ashton*, Congress passed another amendment to the Bankruptcy Act of 1898, captioned "The Municipal Corporation Bankruptcy Act," 28 U.S.C.A. §§ 401-404, that incorporated what Justice Cardozo articulated in his dissent in *Ashton* for why the Constitution's grant of authority for uniform laws on bankruptcy to the federal government, *see* U.S. Const. Art. 1, § 8, cl. 4, permits it to adopt municipal bankruptcy laws without violating the Tenth Amendment. The Supreme Court upheld this amendment in *United States v. Bekins*, 304 U.S. 27 (1938), premised on the absence of impairment of state sovereignty when a state authorizes its municipal subdivisions to file bankruptcy in a manner evidencing the State's consent and the filing is voluntary. These were requirements embodied in this 1937 amendment to the Bankruptcy Act of 1898, *id.* at 47-54, which have been carried forward into the Bankruptcy Code, 11 U.S.C §§ 101 *et seq*. Thus, the specific authorization necessity of § 109(c)(2) of the Bankruptcy Code.

The burden of proof for § 109(c) eligibility purposes is on the debtor municipal entity. *In re Cnty. of Orange*, 183 B.R. 594, 599 (Bankr. C.D. Cal. 1995). Because the interpretation of Ala. Code § 11-81-3 (2008)'s grant of authority and assent to filing of bankruptcy by Alabama's counties, among other entities, necessitates consideration of the meaning of an Alabama statute, determination by this Court of its meaning is governed by Alabama's case and statutory law. *State of La. ex rel. Francis v. Resweber*, 329 U.S. 459, 461-62 (1947); *cf. Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

## II. Some Attention, Overlooked, Argument Premises, and The Authority

### (A). Too Little Consideration

Statutes are often the subject of legal battles. Their purposes and meanings are also instances where numerous, sometimes arcane, and other times inscrutable and conflicting, rules

4

of construction are proffered to courts in support of arguments over what a statute does and does not allow. The issues in this fight over Jefferson County's qualification as an entity eligible to be a debtor under chapter 9 of the Bankruptcy Code, 11 U.S.C. §§ 901 *et seq.*, entail arguments by the opposing parties over the wording of one of Alabama's statutes by employing these rules.

What makes this Court's consideration of the arguments more involved are three statutes that are somewhat singular, but not unique.[3] Too little attention has been accorded to one of them and no consideration has been given to the other two. The one given some consideration by some of the parties is Ala. Code § 1-1-14 (1999) relating to the classification and organization of the Code of Alabama 1975.[4] One not addressed by the parties is Ala. Code § 29-7-8 (2003) and predecessor acts dealing with the codification of the Code of Alabama 1923, Code of Alabama 1928,[5] Code of Alabama 1940,[6] and Code of Alabama 1975, along with the role of the Code Commissioner and a special joint committee of Alabama's Legislature which compiled the Code of Alabama 1975 and various code commissioners and code commissions for earlier versions of the Code of Alabama.[7] Knowing what the current Code Commissioner and earlier such commissioners and commissions were authorized to do and not do is important in resolving the legal interpretation arguments presented by the parties in this Jefferson County bankruptcy qualification dispute. The second piece of the Code of Alabama 1975 not discussed by the parties is Ala. Code § 1-1-2 (1999) which has been a part of the laws of Alabama since no later than the Code of Alabama 1907. This section and its precursors deal with the tense of words used in the various versions of the Code of Alabama that are considered by this Court in its resolution of this 11 U.S.C. § 109(c) qualification fight.[8]

---

[3] *See, e.g.*, Wash. Rev. Code §§ 1.08.001 *et seq.* (2005) (providing for a comparable institution to Alabama's Code Commissioner through Washington's Statute Law Committee and its Code Reviser).

[4] The City of Prichard's *amicus curiae* brief cited this section in a footnote. It is the only citation in the briefs submitted to the Court. Jefferson County cited to Ala. Code § 1-1-14 (1999) during its oral argument.

[5] Despite the implication conferred by stamping "Code of Alabama 1928 " on the official volume, there is some question as to whether the Code of 1928 is a recodification, or merely a recompilation of the Code of 1923. The Preface to the one-volume 1928 Code is silent on the question. Moreover, the Act authorizing the creation of the Alabama Code of 1940 contains a list of prior codes that does not include 1928, 1940 Ala. Acts 13, 14, and the Court is not aware of an act providing for a complete recodification between 1923 and 1939-40. Regardless, the answer to this question has no bearing on the Court's eligibility ruling.

[6] There was a 1958 recompilation of the Code of Alabama 1940, which was not an official Code of Alabama. 1959 Ala. Acts 293; *see also* 1976 Ala. Acts 636.

[7] *See* 1969 Ala. Acts 2169; 1939 Ala. Acts 462; 1923 Ala. Acts 128; 1907 Ala. Acts 499; 1903 Ala. Acts 298; 1896-97 Ala. Acts 1089; 1894-95 Ala. Acts 1001; 1886-87 Ala. Acts 43; 1875-76 Ala. Acts 160; 1859-60 Ala. Acts 88; 1849-50 Ala. Acts 43.

[8] Ala. Code § 1-1-2 (1999); Ala. Code § 1-1 (1958); Ala. Code § 1-1 (1940); Ala. Code § 1 (1928); Ala. Code § 1 (1923); Ala. Code § 1 (1907).

5

Analyzing the impact of these three portions of the Code of Alabama 1975 along with the historical evolution of Alabama's county and municipal entity bankruptcy authorization assists in knowing the scope of grants of Ala. Code § 11-81-3 (2008) for settlement and readjustment of indebtedness including bankruptcy.  Also, understanding the effect of the repeal of an Alabama Code section, Art. 9, § 235 of the Code of Alabama 1923, in conjunction with the 1927 enactment of "The Municipal Bond Code" set forth in Article 40A, § 2294(1)-(70) of the Code of Alabama 1928 reveals some of why words in Ala. Code § 11-81-3 (2008) are not to be interpreted in the way suggested by some of the parties.  Essentially, the repeal of this section caused counties to lose powers they had for resolving bond indebtedness.

### (B).  Authorization and Code Placement

It is indisputable that Alabama has authorized its counties, cities, towns, and municipal authorities to initiate a bankruptcy case under the provisions of the bankruptcy laws of the United States.  It is equally certain that the State of Alabama has explicitly consented to such filings. The statute containing this authority and consent is currently located in the Code of Alabama 1975 at Ala. Code § 11-81-3 (2008).  The contest is the scope of application of the authority granted for and consent to filing bankruptcy.  Part of the Objectors' arguments are founded on where the bankruptcy authority and consent are found in the Code of Alabama and part are premised on the language of the statute.  The contentions of the parties premised on the locus of the statute and its words are offered to this Court using various rules for statutory interpretation. At least one is based on the tense of the phrase "which shall authorize" as it is used in Ala. Code § 11-81-3 (2008).

The location of the settlement and readjustment of indebtedness authority for counties, cities, towns, and municipal authorities is in Title 11 of the Code of Alabama 1975, which sets forth various provisions dealing with counties and municipal corporations.  Title 11 is captioned "Counties and Municipal Corporations."  Ala. Code §§ 11-1-1 *et seq.* (2008).  The chapter within which the bankruptcy filing authorization may be found is Chapter 81, which is captioned "Municipal Bonds" and the article is Article 1 for "General Provisions."  The section focused on by the parties is captioned and its language is:

**§ 11-81-3.  Powers of counties and municipalities authorizing issuance.**

The governing body of any county, city or town, or municipal authority organized under Article 9, Chapter 47 of this title which shall authorize the issuance of refunding or funding bonds may exercise all powers deemed necessary by the governing body for the execution and fulfillment of any plan or agreement for the settlement, adjustment, refunding, or funding of the indebtedness of the county, city or town, or municipal authority organized under Article 9, Chapter 47 of this title not inconsistent

6

with the provisions of law relating to the issuance of refunding or funding bonds. Without limiting the generality of any of the foregoing powers, it is expressly declared that the governing body shall have the power to take all steps and proceedings contemplated or permitted by any act of the Congress of the United States relating to the readjustment of municipal indebtedness, and the State of Alabama hereby gives its assent thereto and hereby authorizes each county, city or town, or municipal authority organized under Article 9, Chapter 47 of this title in the state to proceed under the provisions of acts for the readjustment of its debts.

Ala. Code § 11-81-3 (2008). Another section of the Code of Alabama 1975 not given sufficient attention is Ala. Code § 11-81-4 (2008). Its caption and language are:

### § 11-81-4. Municipal refunding certificates of indebtedness, notes or warrants.

The governing body of any municipality in this state is hereby authorized to issue, without an election, refunding interest-bearing certificates of indebtedness or refunding interest-bearing warrants or refunding interest-bearing notes maturing at such time or times as the governing body may determine, not exceeding 30 years from their respective dates, for the purpose of funding or refunding outstanding certificates of indebtedness or warrants or notes of such municipality or any outstanding revenue bonds of such municipality issued under the provisions of Article 5 of Chapter 81 of Title 11 [Ala. Code §§ 11-81-160 - 190 (2008)] as amended, or predecessor statute or any combination thereof, whether the same are due at the time of such funding or refunding or at a later date, in an aggregate principal amount not exceeding the sum of (1) the outstanding principal of such outstanding certificates, warrants, notes or revenue bonds, (2) the interest accrued and unpaid thereon plus the interest to mature thereon until the date on which they are to be redeemed or paid and (3) the amount of any redemption premium to be paid as a condition to their redemption prior to their respective maturities, or for the purpose of refunding or discharging any judgment or judgments based upon such obligations, and the governing body of any such municipality may pledge to the payment of the principal of and interest on said refunding certificates of indebtedness or refunding warrants or refunding notes any tax or license or revenues which

7

the municipality may then be authorized to pledge to the payment of bonded or other indebtedness.

Ala. Code § 11-81-4 (2008). It is part of the enhanced refinancing and restructuring of debt authority first enacted in 1935. *Compare* Act 1935-198, *with* Act 1935-197.

Part of the error in many of the interpretations pushed by various parties is that they either explicitly assume or implicitly rely on the placement of Ala. Code 11-81-3 (2008) and/or the descriptive headings developed by the codification process. Why this is inappropriate under Alabama's laws involves knowing its statutes directing how its laws are to be read.

### III. Location, Location, Location, It Does Not Matter

Initially and during the approximate forty-two year span from their 1935 date of incorporation into the Code of Alabama 1928 until the 1977 effective date of the Code of Alabama 1975, the prior versions of what are now Ala. Code §§ 11-81-3 & 4 (2008) were one section in the various Codes of Alabama, not as they appear now in separate sections. *See* Ala. Code § 37-253 (1958); Ala. Code § 37-253 (1940); Ala. Code § 2293(1) & (2) (Supp. 1936). How the initial placement of the original versions of Ala. Code §§ 11-81-3 & 4 (2008), those of Acts 1935-197 and Acts 1935-198, 1935 Ala. Acts 586, became two subsections of § 2293 of the Code of 1928, Ala. Code § 2293(1) & (2) (Supp. 1936), and then one section with no subsections in the Code of Alabama 1940, Ala. Code § 37-253 (1940) including its 1958 recompilation along with the 1976 amendment by Act 1976-107, 1976 Ala. Acts 102, and ultimately two separate sections of the Code of Alabama 1975, Ala. Code § 11-81-3 & 4 (2008), involves consideration of Ala. Code § 1-1-14 (1999).[9]

This section of the Code of Alabama 1975 reads:

**§ 1-1-14. Code organization; headings; notes.**

(a) The classification and organization of the titles, chapters, articles, divisions, subdivisions and sections of this code, and the headings thereto, are made for the purpose of convenient reference and orderly arrangement, and *no implication, inference or presumption of a legislative construction shall be drawn therefrom*.

(b) Unless otherwise provided in this code, the descriptive headings or catchlines immediately preceding or within the text of the individual sections of this code, except the section numbers included in the headings or catchlines immediately preceding the

_____

[9] Exhibit 3 shows in sequence the evolution of these laws from 1923 to date. Also, there are copies of some of the relevant acts and codifications for these laws.

8

text of such sections, *do not constitute part of the law, and shall in no manner limit or expand the construction of any such section. All historical citations and notes set out in this code are given for the purpose of convenient reference, and do not constitute part of the law.*

*Id.* (emphasis added). Without §1-1-14, one may intuit that the location and caption of a statute is relevant to its meaning. However, Ala. Code § 1-1-14 (1999) demonstrates why intuition without sufficient legal research is wrong when it comes to ascertaining the purpose and scope of Alabama's laws including Ala. Code § 11-81-3 (2008)'s readjustment of indebtedness and bankruptcy authority.

The Supreme Court of Alabama has recognized the importance of Ala. Code § 1-1-14 (1999) when determining the meaning of a statute. In *Ex parte McLeod*, 841 So. 2d 260 (2001), it was dealing with the interpretation of a portion of the Fair Dismissal Act, Ala. Code § 36-26-100, Code of Alabama 1975, delineating full time employees as those whose duties require twenty hours or more of work in each workweek. In rejecting the use of a section's heading to interpret a statute, the Alabama Court noted:

> The Code Commissioner's heading for the article in which § 36-26-100 is found refers to non-teacher employees, leading one to think only of janitors and bus drivers, whose duties do not require preparation and homework and whose duties would therefore be restricted to actual hours at the job site. This analysis leads one to conclude that § 36-26-100 must be read as dealing only with circumstances where the employer, and not the employee, sets the hours of service. *But, we cannot endorse this analysis for several reasons. Section 1-1-14, Ala. Code 1975, condemns the use of descriptive headings to construe statutes.*

*Id.* at 264-65 (emphasis added).

In *Chrysler Motor Corp. v. Cole*, 563 So. 2d 1040 (Ala. Civ. App. 1990), the Alabama Court of Civil Appeals dealt with application of a code section falling under a subtitle "Permanent Total Disability" when the wording of the text of the statute clearly dealt with permanent partial disabilities. In its opinion, the Court recognized the thrust of Ala. Code § 1-1-14 (1999) as making the location of a statute, as classified and organized by titles, chapters, articles, divisions, subdivisions and sections of the Alabama Code, irrelevant when it comes to determining legislative purpose. *Id.* at 1042. Similarly, the Alabama Court of Criminal Appeals has recognized that the heading, title, or catchline in the Alabama Code is "merely a descriptive heading or catchline . . . and is not considered a part of the law itself." *Reed v. Alabama*, 372 So. 2d 872, 875 (Ala. Crim. App. 1978). The Court of Criminal Appeals also recognized that this was the status of Alabama law prior to the 1977 enactment of Ala. Code § 1-1-14 (1999) ("This

9

distinction between descriptive headings and law is now codified in [§] 1-1-14, Code of Ala. 1975."); *see also United States v. Guthrie*, 50 F.3d 936, 941 (11th Cir. 1995); *Ex parte Edwards (In re Edwards v. Alabama)*, 816 So. 2d 98, 102 n.3 (Ala. 2001); *Sheffield v. State of Alabama*, 708 So. 2d 899, 900 n.2 (Ala. Crim. App. 1997); *Hays v. State of Alabama*, 518 So. 2d 749, 768 (Ala. Crim. App. 1985) (McMillan, J., concurring).

Added to these points are the facts of *McLeod*, *Chrysler Motor Corp.*, and *Reed*. Each involved statutes imprecisely located and/or having texts different from the headings, captions, and catchlines of the Code of Alabama.

This is precisely the case for Ala. Code § 11-81-3 (2008). Its Alabama Code caption is "Powers of counties and municipalities authorizing issuance" as part of the general provisions of Article 1 of Chapter 81 regarding "Municipal and County Bonds." The wording of its content is quite different from what the location and headings denote. The text of the section delineates the authority to enter into and fulfill a plan or agreement for the settlement, adjustment, refunding, and funding of indebtedness, which by the literal language is not limited to bonded indebtedness and by the same language is either within or outside the context of a bankruptcy case. *See* Ala. Code § 11-81-3 (2008). One ramification of Ala. Code § 1-1-14 (1999) is the arguments premised on the location of Ala. Code § 11-81-3 (2008) and the descriptive headings are, as a matter of Alabama law, incorrect.

## IV.  Commissioners, Commissions, Committees, and Compilations
## a/k/a Putting Codes Together

Alabama has Ala. Code § 1-1-14 (1999) because its Code Commissioner has a role in the placement of Alabama's laws into its Code. Currently, Ala. Code § 29-7-6(a)(6) (2003) makes the Director of the Legislative Reference Service of Alabama its Code Commissioner for the Code of Alabama 1975. In the latter capacity, this person is responsible for incorporating into the Alabama Code all laws and changes in laws resulting from the enactments of the Alabama Legislature. This statute unequivocally provides that the role of the Code Commissioner is not a delegation of the Legislature's policymaking powers. Section 29-7-8(a) (2003) sets forth that, while the Code Commissioner is empowered to place legislative enactments into what the Code Commissioner determines is the appropriate location and to perform editorial functions that include adding and deleting words, these actions "may not alter the sense, meaning or effect of any act." *Id.*

The scope of the Code Commissioner's designated duties includes changing the wording of descriptive headings and catchlines, changing and substituting hierarchy units, changing reference numbers, correcting reference numbers so long as such a correction can be made without altering the substance of a law, removing language in the Code that is deemed surplusage, substituting hierarchy designations, changing words when directed by law, dividing, consolidating, and rearranging hierarchy units and parts of them, resolving nonsubstantive conflicts between multiple acts, changing capitalization, spelling and punctuation, and correcting

10

grammatical, clerical, and typographical errors by adding or deleting language or by other methods. Ala. Code § 29-7-8(a)(1) - (14) (2003).

While the statutory creation of a permanent Code Commissioner occurred in 1993 by Act 1993-618, *ad hoc* Code Commissioners or the equivalent were created who/which compiled all of the iterations of the Alabama Code dating back to at least the Alabama Code of 1852. 1969 Ala. Acts 2169; 1939 Ala. Acts 462; 1923 Ala. Acts 128; 1907 Ala. Acts 499; 1903 Ala. Acts 298; 1896-97 Ala. Acts 1089; 1894-95 Ala. Acts 1001; 1886-87 Ala. Acts 43; 1875-76 Ala. Acts 160; 1859-60 Ala. Acts 88; 1849-50 Ala. Acts 43. In the past, the Code Commissioner was sometimes one of the publishers of the Code of Alabama working in concert with a joint legislative committee formed for purposes of compiling a Code. Other times, the position was filled by one or more individuals appointed either by an act of Alabama's Legislature or by its Governor. During some compilations of a Code of Alabama, the duties of the Code Commissioner were performed by a Code Commission or a Code Committee. Regardless of the title, be it Code Commissioner, Code Commission, or Code Committee, the functions performed were virtually the same and the process utilized had few, if any, significant differences from how the Code of Alabama 1975 was put together. *Compare* Act of Ala. 93-618, *with* 1969 Ala. Acts 2169, 1939 Ala. Acts 462, 1923 Ala. Acts 128, 1907 Ala. Acts 499, 1903 Ala. Acts 298, 1896-97 Ala. Acts 1089, 1894-95 Ala. Acts 1001, 1886-87 Ala. Acts 43, 1875-76 Ala. Acts 160, 1859-60 Ala. Acts 88, *and* 1849-50 Ala. Acts 43.

For the compilation of the Code of Alabama 1975, The Michie Company and the Bobbs-Merrill Company were collectively the Code Commissioner and collaborated with the Alabama Legislature through the Joint Legislative Subcommittee on Code Revision of the Alabama Senate and the House of Representatives (the Joint Committee). As part of this process, The Michie Company and Bobbs-Merrill Company solicited the views of the Alabama State Bar, the Legislative Reference Service, other groups and associations, and attorneys throughout Alabama. The Joint Committee and the Code Commissioner communicated via a series of memoranda dedicated to each title of the draft compilation of the 1975 Code. These communications include the recommendation by the Code Commissioner to the Joint Committee and its responses, which sometimes include agreeing with what the Code Commissioner proposed and other times disagreeing and providing edited or alternative language.[10]

The Alabama Department of Archives and History and the University of Alabama School of Law have retained the communications between the Code Commissioner and the Joint Committee regarding the splitting of § 253, Title 37 of the Code of Alabama 1940, as it was

---

[10] A similar collaborative process was employed in the compilation of the Code of Alabama 1940. The Michie Company, the Harrison Company, and West Publishing Company served as the Code Commissioner and worked in concert with a special legislative joint committee for compilation of the 1940 Code. 1940 Ala. Acts 13, 171, 460, 461. For the 1958 recompilation of the Code of Alabama 1940, The Michie Company was the Code Commissioner and another special legislative committee was formed to coordinate with the Code Commissioner in the recompilation. 1959 Ala. Acts 293.

11

recompiled.  The Legislative Manuscript for the Code of Alabama 1975 in volume 7 at page A.138 contains the following regarding the "Summary of Changes in Codified Sections":

> 11-81-3     This section is derived from the first portion of § 253
>                   of the former Title 37.
>
> 11-81-4     This section is derived from the second portion of
>                   § 253 of the former Title 37.

These communications show that the cleavage of the single section dealing with settlement and readjustment of debts of counties and other municipalities in former § 37-253 was at the recommendation of the Code Commissioner, and agreed to by the Joint Committee.  *See* Exhibit 2.  It was not the result of a specific enactment of the Alabama Legislature for purposes of amending or altering the scope of what its counties and other municipal entities had been and continue to be authorized to do for the settlement and readjustment of their indebtedness including the authorization for a municipal bankruptcy under federal law.  Rather, it is the result of the vagaries of codification, as was its original placement in one section.[11]

   One of the best ways to see why location and captions are not to be used for statutory interpretation is to expand on the locations and captions of Act 1935-197, Act 1935-198, 1935 Ala. Acts 586, and their successor provisions over the last seventy-seven years.  Following each statute's enactment, both Act 1935-197 and Act 1935-198 were located in the 1936 Cumulative Supplement to the Code of Alabama 1928's Chapter 42A titled "Municipal Corporations" under Article 40 captioned "Bonded Indebtedness; Refunding; Subrogation to Rights of Stockholders."  At the time of placement of Act 1935-197 & 198 into Article 40, all of the sections that previously had been in Article 40 had been repealed.  Ala. Code § 2294(70) (Supp. 1936).  Strikingly and despite the repeal of all of Article 40, the Code Commissioner codification process reused the caption for the repealed article and its article number for placement and captioning of Act 1935-197 and Act 1935-198.  Instead of this placement and captioning, locating these Acts in chapter and/or article more properly associated with their purposes under more accurate captions would have potentially avoided the very interpretation arguments this Court now has to resolve.

   Even more notable is that Act 1935-197 and Act 1935-198 were not initially located in The Municipal Bond Code or another article with language authorizing and setting the conditions upon which bonds could be issued and refunded.  The heading for subsection 2293(1) where Act 1935-197 was located was "Refinancing indebtedness; procedure according to act of congress."  Ala. Code § 2293(1) (Supp. 1936).  Act 1935-198 was located in subsection 2293(2) bearing the descriptive caption "Issuance as refunding certificates, etc."  Ala. Code § 2293(2) (Supp. 1936).

---

[11]  After the Code Commissioner and the joint committee of Alabama's Legislature agreed on the Code Commissioner's proposed codification, the Code Commissioner and the joint legislative committee collaborated on and prepared an omnibus bill that was submitted along with a draft of the proposed 1975 code to the Alabama Senate and House of Representatives for approval.

In the Code of Alabama 1940, their location was as one section with no subsections in Chapter 6, which bore the heading "Municipal Bonds." This single section was § 37-253 Code of Alabama 1940 bearing the heading "Refinancing indebtedness; procedure according to act of congress." In the 1958 recompilation of the Code of Alabama 1940, the enactments remained in § 37-253 and the descriptive headings were "Municipal Bonds" for Chapter 6, and "Refinancing indebtedness; procedure according to act of congress" for the section.

In the Code of Alabama 1975 as originally codified, the settlement, adjustment, refunding and funding authority, and the bankruptcy authority were separated from the funding and refunding grant for certificates of indebtedness, warrants, and notes as part of the codification process–not by an amendatory act of Alabama's Legislature[12]–and placed in Title 11 headed "Counties and Municipal Corporations," Subtitle 3 for "Provisions Applicable to Counties and Municipal Corporations," Chapter 81 described as "Municipal and County Bonds," and sections 3 and 4 respectively captioned "Powers of counties and municipalities authorizing issuance of refunding or funding bonds as to settlement, refunding, funding, etc., of indebtedness generally" and "Issuance of refunding interest-bearing certificates of indebtedness, warrants or notes by municipalities; pledge of tax revenues, etc., for payment of principal and interest on same." By this compilation of Alabama's Code, what had not been in The Municipal Bond Code had been moved by the Code Commissioner codification process into the general provisions of the Alabama Code 1975 dealing with the terms and conditions, among other things, upon which a county may issue bonds.

By 2008 and even though Ala. Code § 11-81-3 (2008) and Ala. Code § 11-81-4 (2008) remained in the same Title, Subtitle, and Chapter, the section headings had once more been altered. Section 3's heading now reads "Powers of counties and municipalities authorizing issuance." That for section 4 reads "Municipal refunding certificates of indebtedness, notes or warrants." Ala. Code §§ 11-81-3 & 4 (2008).

Over the course of approximately forty years from the enactment of Alabama's granting of authority to all of its counties to settle, adjust, fund and refund indebtedness, and to utilize any statute of the United States to readjust their debts, the code codifying processes moved these grants of authority from outside The Municipal Bond Code to a place within the statutes regulating the issuance of bonds and their refunding. Similarly, the descriptive headings in the various Codes of Alabama went from indicating authority to refinance indebtedness and readjustment of debts under laws of the United States to being limited in scope to the issuance of

---

[12] Until 1976, there was no act by Alabama's Legislature that amended the prior subsection placement into one section for purposes of the Code of Alabama 1940. The Code Commissioner and the Joint Committee agreed to this consolidation and it was approved as part of an omnibus act adopting the 1940 codification of the Code of Alabama. Alabama Code 1940: Report from Minutes of Code Committee to Legislature 407 (*See* Exhibit 3). However, Act 1976-107, 1976 Ala. Acts 102, amended and re-enacted as one section what in 1935 had been in two acts, Act 1935-197 and Act 1935-198. Since this 1976 amendment and other than via the Code Commissioner codification process, no act of Alabama's Legislature has changed this 1976 enactment as one act and placement in one section of Alabama's Code.

13

what appears without analysis to be only bonds. Failing to learn and understand that the Code Commissioner codification process made Ala. Code § 11-81-3 (2008)'s intent by appearance different from what it is, results in not knowing that the edicts of Ala. Code §§ 1-1-14 (1999) & 29-7-8 (2003) proscribe any transformation of the substance and intent of the law as enacted. To a great degree, the Objectors' readings of Ala. Code § 11-81-3 (2008) are founded on the placement and caption descriptions set by the Code Commissioner codification process, not the law as enacted.

This discussion demonstrates one of the types of events for which Alabama's Legislature included Ala. Code § 29-7-8(a) (2003)'s directive that such changes or edits "may not alter the sense, meaning or effect of any act." It also illustrates one of the codification problems that caused Alabama's Legislature to enact clear and unambiguous language that the location selected in a Code's compilation shall not dictate or drive a statute's purpose and meaning and that the various captions, headings, and catchlines shall not be used to interpret the purpose and meaning of a statute. Not following Alabama courts' holdings and its statutes in this respect would not comport with the purposes of Ala. Code § 1-1-14(a) & (b) (1999)'s expression that the classification, organization, and headings of the current Alabama Code "are made for the purpose of convenient reference and orderly arrangement, and no implication, inference or presumption of a legislative construction shall be drawn therefrom."[13] It would simultaneously disregard Ala. Code § 29-7-8 (2003)'s dictate and a similar one contained in prior legislation creating the various *ad hoc* Code Commissioners that the compilation of the Codes of Alabama may not change the sense, meaning or effect of any act. 1969 Ala. Acts 2169; 1939 Ala. Acts 462; 1923 Ala. Acts 128; 1907 Ala. Acts 499; 1903 Ala. Acts 298; 1896-97 Ala. Acts 1089; 1894-95 Ala. Acts 1001; 1886-87 Ala. Acts 43; 1875-76 Ala. Acts 160; 1859-60 Ala. Acts 88; 1849-50 Ala. Acts 43.

Determining the purpose of what is now in Ala. Code § 11-81-3 (2008) also highlights the wisdom embedded in Ala. Code §§ 1-1-14 (1999) & 29-7-8 (2003) and that these two sections are complementary and supplemental to each other. Because of their importance in consideration of what has occurred over more than a seven decade span to the refinancing, settlement, and adjustment of municipal indebtedness authority and assent, it bears repetition that locations of acts and their captions and other descriptive headings are not to be utilized to alter, in whole or in part, what the acts of Alabama's Legislature implemented. Unfortunately, these statutes have been overlooked by the Objectors and others in the process of constructing their arguments interpreting Ala. Code § 11-81-3 (2008).

---

[13]   Although the legislative history for Ala. Code § 1-1-14 (2008) does not evidence the existence of a similar provision in earlier versions of the Code of Alabama, its admonition that the organizational headings and the like are not to be part of the positive law or its interpretation was expressed in earlier Codes of Alabama. *See, e.g.*, Ala. Code 1940 Vol. I at IX ("[T]he annotations, title pages, cross references, and marginal references shall not constitute or be construed as part of the laws of this State, but are intended as mere indices of the contents thereof.").

# V.  Tenses:  Past Means Present, Present means Past, and Both mean Past, Present, and Future

Prior to a more detailed look into Ala. Code §§ 11-81-3 & 4 (2008), one group of arguments used by some of the Objectors based on the tense of words in one sentence of Ala. Code § 11-81-3 (2008) must be parsed.  It is premised on the first sentence of § 11-81-3 which reads in relevant part:

> The governing body of any county . . . *which shall authorize* the issuance of refunding or funding bonds may exercise all powers deemed necessary by the governing body for the execution and fulfillment of any plan or agreement for the settlement, adjustment, refunding, or funding of indebtedness of the county . . . not inconsistent with the provisions of law relating to the issuance of refunding or funding bonds.

Ala. Code § 11-81-3 (2008) (emphasis added).  Based on the "which shall authorize" verbiage, the Indenture Trustee and some of the other Objectors argue that this sentence requires Alabama counties to have already outstanding bonds.  First, this interpretation is contrary to the plain, natural, and unambiguous language.  It overlooks that the sentence is for the settlement, adjustment, refunding or funding of indebtedness, not just bond indebtedness.  Furthermore, it disregards that the sentence is not limited to refunding of bonds.  Refunding of bonds is coupled with funding of bonds for, among other purposes, the restructuring of non-bond indebtedness by funding it with bonds.  In other words, it clearly encompasses the contemporaneous and future issuance of bonds.  Under Alabama's case law, words of a statute "must be given their natural, plain, ordinary, and commonly understood meaning" and when "plain language is used" courts are required to interpret the language to mean what it says.  *DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc.*, 729 So. 2d 270, 275-76 (Ala. 1998); *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 714 So. 2d 293, 296 (Ala. 1998); *IMED Corp. v. Sys. Eng'g Assocs.*, 602 So. 2d 344, 346 (Ala. 1992).  The interpretation posited by the Objectors is contrary to this principle of Alabama's statutory construction case law.

In some instances, this case law based interpretation rule would be sufficient to dispatch the argument that pre-existing bond indebtedness is required by the language of the first sentence of Ala. Code § 11-81-3 (2008).  However, another aspect of Alabama's laws is a statute of superceding importance to this case law.  It has been in all of Alabama's Codes from at least the Code of Alabama 1907.  It eliminates all of the Indenture Trustee's and other Objectors' arguments structured on their version of the tense of the language of the first sentence of Ala. Code. 11-81-3 (2008).  These Objectors urge a past tense meaning for the phrase "which shall authorize."  Jefferson County argues that its meaning is not in the past tense.  Various dictionaries delineate that "shall" as used in this section of the Code is present tense.  *See* Merriam-Webster's Collegiate Dictionary 1075 (10th ed. 1999); The Oxford English Dictionary 607-13 (1st ed. 1933); Webster's Third New International Dictionary 2085-86 (1993).

15

Should the Objectors be correct in their past tense classification of "which shall authorize," they lose their argument that the first sentence of Ala. Code 11-81-3 (2008) requires pre-existing outstanding bonds. Likewise and if it is a present tense usage, the Objectors fail in their contended interpretation for this sentence. This result is demanded by a section of the Code of Alabama 1975 set forth in "Title 1 General Provisions," "Chapter 1 Construction of Code and Statutes." The wording of the pertinent sentence in this section, the first sentence of Ala. Code § 1-1-2 (1999) under the caption "Tense — Gender — Number" is: "*Words used in this code in the past or present tense include the future, as well as the past and present* (emphasis added)." In addition to having been in the Codes of Alabama for over a century, the words in this section have remained identical in all versions of the Codes of Alabama from at least the 1907 Code to today's. *See* Ala. Code § 1-1-2 (1999); Ala. Code § 1-1 (1958); Ala. Code § 1-1 (1940); Ala. Code § 1 (1928); Ala. Code § 1 (1923); Ala. Code § 1 (1907).

Thus, the "which shall authorize" language is not restricted to having outstanding bonds by a county before it may utilize the authority conferred by the first sentence of Ala. Code 11-81-3 (2008). As part of this debt refinancing, settlement, and/or adjustment, included are counties with already outstanding bonds, those currently issuing bonds, and those that may issue them in the future. Further support is given by ascertaining why the first sentence of what is now Ala. Code 11-81-3 (2008) had to be added to the authority given to counties by Alabama.

### VI.  Unintended Consequences of Repeal and The Municipal Bond Code

Learning why the first sentence of Ala. Code § 11-81-3 (2008) was made part of Act 1935-197 facilitates knowing the purpose, meaning, and consequentially, the scope of applicability of this bankruptcy authorization and assent. To accomplish this, one must examine the contents of Alabama's statutes in existence before the 1935 enactment of what is now Ala. Code § 11-81-3 (2008). In particular, Chapter 16, Article 9, § 235 of the Code of Alabama 1923 is of moment in any analysis of the competing interpretations over Jefferson County's qualification to file a municipal bankruptcy case.

Article 9 of the Code of Alabama 1923 dealt exclusively with the grant of authority and the terms under which counties were permitted to settle, adjust, and refund bond indebtedness. It contained four sections, §§ 235 through 238. The grant of authority to settle, adjust, and refund bonds that was set forth in § 235 read:

> **235.  Bonded indebtedness of county settle, refunded or adjusted. —** The court of county commissioners, board of revenue or other governing body, of any county in this state, which may have outstanding a bonded indebtedness of any kind, may settle, adjust, and refund the same upon the best terms obtainable and in order to carry into effect the settlement, adjustment and refunding of such bonded indebtedness, the said court of county commissioners, board of revenue or other governing body, of any county in this state

16

may issue the bonds of the county for such amount as may be necessary to settle, adjust and refund said outstanding bonded indebtedness.

Because counties are subdivisions of the State of Alabama, the powers and authorities each possesses are obtained by express grants of powers by the State. Without such grants, its counties and other political subdivisions do not have the ability to perform functions that they might desire or need to undertake. *Trailway Oil Co. v. City of Mobile*, 122 So. 2d 757, 760 (1960) (*citing Yielding v. State ex rel. Wilkinson*, 167 So. 580, 583-84 (Ala. 1936)); *State ex rel. Chilton Cnty. v. Butler*, 142 So. 531, 532 (Ala. 1932). In terms of the legal capability of Alabama's counties to settle, adjust, and refund outstanding bond indebtedness, § 235 of the Code of Alabama 1923 was the grant of authority to counties that allowed them to undertake such a settlement, adjustment, or refunding. Absent this section or another one giving the same authority, counties would not have had the power to settle, adjust, or refund outstanding bonds. *See Trailway Oil Co.*, 122 So. 2d at 760; *Butler*, 142 So. at 532.

During the later part of the 1920s as lead by A.C. Lee, the Alabama Legislature enacted Article 40A of Chapter 43 governing municipal corporations. All of the subsections, those from § 2294(1) through 2294(70), of Article 40A Code of Alabama 1928 constituted the "The Municipal Bond Code," which controlled every aspect of the authority for and conditions under which counties, among other municipalities, could thereafter issue bonds. Ala. Code 1923 § 2294(1). The Municipal Bond Code altered the abilities of counties to settle and adjust bond indebtedness. Whether it was intentional or simply an oversight has not been determined by this Court.

Contemporaneous with the enactment of The Municipal Bond Code, §§ 235-238 of Article 9 of the Code of Alabama 1923 were repealed. Ala. Code § 2294(70) (1928).[14] Of importance for the repealed § 235 power to settle and adjust bond debts, all that replaced it in The Municipal Bond Code as it applied to counties, §§ 2294(23) - 2294(70) of the Code of Alabama 1923, was subsection 2294(35) captioned "Counties may settle, adjust and refund

---

[14] Ala. Code § 1-1-10 (1999) deals with the general repeal of statutes omitted from the Code of Alabama 1975 along with a savings clause for some statutes that otherwise might be deemed repealed by the general repeal language. The savings provision provides that the general repeal portion does not repeal and shall not be construed to repeal, among other statutes, those "relating to the public debt or authorizing the issuance of bonds or other evidence of indebtedness by the state or any county . . . thereof." A provision somewhat similar to this was part of Code of Alabama 1923 and Code of Alabama 1928. It was different, though, due to the savings clause applying only to "those [statutes] relating to the public debt." Also, the phraseology was that laws relating to the public debt were "not repealed by this Code." Ala. Code § 11 (1928); Ala. Code § 11 (1923). Whether the earlier term "public debt" was intended to include "authorizing the issuance of bonds or other evidence of indebtedness," which is in the current statute, does not need to be addressed by this Court. These savings clauses have been designed, in part, to avoid repeal by implication of certain laws, in particular for this discussion, those involving bond and non-bond debts of counties. These savings clauses are inapplicable when there has been a specific act repealing a statute, as occurred with § 235 Code of Alabama 1923. *See State v. Spurlock,* 48 So. 849 (Ala. 1909).

bonded indebtedness." Unfortunately, the language of § 2294(35) is at variance with its Code's caption. The statute's words were:

> The governing body of any county now having bonds
> outstanding may without an election issue bonds of the county
> for the purpose of *refunding* such bonds to an amount not
> exceeding the principal of the bonds to be so *refunded*.

Ala. Code § 2294(35) (1928) (emphasis added). The authority for counties to settle and adjust bond indebtedness was left out of this statute. From this point of time in 1927 until 1935, no other statute existed that granted Alabama's counties the authority to settle and adjust bond debt issued under The Municipal Bond Code. All that was allowed for counties under The Municipal Bond Code was refunding of such bonds without an election which could not exceed the outstanding, unpaid principal amount of the bonds to be refunded. Ala. Code § 2294(35) (1928).

Furthermore and for bonds in default, this statute excluded the use of refunding bonds for payment of accrued, unpaid interest. For bonds in default and those not, this subsection of The Municipal Bond Code also prevented the use of refunding bonds for all other sums required to be paid above the unpaid principal such as early redemption premiums. Conceptually, the result was that the many bond issues could not be fully refunded without an election other than those for which no default in interest payments had occurred and those for which there was no early redemption premium or like other sums.

In times of difficult financial problems for counties that had defaulted or would in the future default on bond indebtedness, § 2294(35) of the Code of Alabama 1923 and 1928 left Alabama's counties with limited options when dealing with restructuring bonds subject to The Municipal Bond Code. One option might have been to have another popular election to authorize new bonds or authorize refunding bonds to cover unpaid, accrued interest or early redemption premiums. However, an election was required even if not desired by a county's governing body.

Approximately two years after the repeal of the settlement and adjustment authority for bond indebtedness, the Great Depression commenced. By 1935, Alabama and the rest of the United States were fully enveloped by the financial distresses of the Great Depression including county governments being unable to pay their obligations as and when they came due. This included both bonds and other debts along with operating expenses. This was part of the impetus for Congress to amend the Bankruptcy Code of 1898 to add specific provisions for municipal bankruptcies. *See United States v. Bekins*, 304 U.S. 27, 48-49 (1938); *Ashton v. Cameron Cnty. Water Improvement Dist. No. 1*, 298 U.S. 513, 533-34 (1936) (Cardozo, J., dissenting).

As has been indicated above and when it came to counties' abilities to settle and adjust outstanding bonds, the authority accorded counties by the Alabama in this 1927 to 1935 time frame only allowed a restricted refunding of bonds. As for certain types of interest bearing

18

warrants, certificates of indebtedness, and notes, refunding authority was wanting as was the ability to use these forms of county indebtedness for funding of other debts including certain judgments. Additionally and as consequential to municipalities, the counties needed the ability to pledge for repayment of interest bearing warrants, certificates of indebtedness, and notes taxes, license fees, or revenues that the municipalities had previously been authorized to pledge for repayment of bond or other debts.

All of this adds up to the reasons for and purposes for, and the goals of Ala. Code §§ 11-81-3 & 4 (2008). They addressed the counties' lack of sufficient authority to deal with their debt problems, including the pre-1927 authority they previously had to settle and adjust bonds. This is the genesis of the first sentence of Act 1935-197, which is now the first sentence of Ala. Code § 11-81-3 (2008), and Act 1935-198, which is currently located in Ala. Code § 11-81-4 (2008).

These Acts became effective in 1935 and remain, as amended, part of the laws of Alabama designed to give all counties and certain other municipal entities the authority and tools necessary to settle, adjust, readjust, fund, and refund various forms of indebtedness. Ala. Code §§ 11-81-3 & 4 (2008). Furthermore, an important point that must not be overlooked is that both the first sentence of Act 1935-197 dealing with plans and agreements for the settlement, adjustment, refunding, or funding of indebtedness, now as amended, Ala. Code § 11-81-3 (2008), and Act 1935-198 dealing with funding and refunding of non-bond indebtedness, now as amended, Ala. Code § 11-81-4 (2008), were and are necessary for the restructuring of county indebtedness outside a bankruptcy case. Without each provision, severe limitations would exist on county and other municipal debt restructuring done outside a bankruptcy case. Likewise and in a bankruptcy case context, having a state's grant of authority to and its assent for filing a bankruptcy case when a municipality has not been granted authority to settle or adjust debts, at a minimum, raises legal issues including one regarding the scope of what such a municipality may do in a bankruptcy case without the delegated authority to settle and adjust debts.

Furthermore, Act 1935-197 & 198 were sequential in order and enacted on the same day as part of achieving the same purpose: to give counties the authority to restructure their indebtedness, be it through bonds, warrants, certificates of indebtedness, notes, judgments, or other forms. That this is the case is explained in more detail in the following portions of this opinion. For now, knowing that Alabama counties had lost some of their powers to deal with bond debts by the 1927 repeal of § 235 of the Code of Alabama 1923 and lacked other necessary authority to restructure their debts is the important point. The reason for all of this discussion is that under Alabama's rules of statutory construction, a court may look to the reason and necessity for a statute and the purpose sought to be obtained as part of ascertaining and giving effect to the intent of law. *Pace v. Armstrong World Indus., Inc.*, 578 So. 2d 281, 283 (Ala. 1991); *Sheffield v. State,* 708 So. 2d 899, 906 (Ala. Crim. App. 1997). This recitation of the impact of the repeal of § 235 along with the need for greater authority to deal with municipal indebtedness in the form of settlement, adjustment, readjustment, and funding authorization in a time of financial distress is the overarching reason and purpose for Act 1935-197 & 198.

19

## VII.  What Counts:  Titles and Language Coupled with Reason, Necessity and Purpose[15]

### (A). The Same Rules and Their Application

One of the problems encountered in disagreements over the purpose, meaning, and intent of a statute is when opposing parties frequently recite the same rules of statutory construction in support of disparate readings of a law.  This is just such a case.  When applied properly, those cited resolve the dispute between the County and the Objectors.

Under Alabama's rules of construction, there are two rules that override all others.  They are:

> "In construing a statute, the intent of the legislature, as expressed in the statute, is ascertained and effectuated, and that intent may be gleaned from considering the language used, the reason and necessity for the act, and the goals sought to be accomplished."  *McGuire Oil Co. v. Mapco, Inc.*, 612 So. 2d 417 (Ala. 1992).  The court is to ascertain and give effect to the legislature's intent as expressed in the words of the statute. *Commercial Standard Ins. Co. v. Ala. Surface Mining Reclamation Comm'n.*, 443 So. 2d 1245 (Ala. Civ. App.1983), *cert. denied*, 467 U.S. 1242 (1984).  A statute susceptible to either of two opposing interpretations must be read in the manner that effectuates rather than frustrates the major purpose of the legislative draftsmen. *Shapiro v. Untied States*, 335 U.S. 1 (1948).

*BP Exploration & Oil, Inc. v. Hopkins*, 678 So. 2d 1052, 1054 (Ala. 1996); *see also Bean Dredging, L.L.C., v. Ala. Dep't of Revenue*, 855 So. 2d 513, 517 (Ala. 2003); *IMED Corp.*, 602 So. 2d at 346; *Tuscaloosa Cnty. Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa Cnty.*, 589 So. 2d 687, 689 (Ala. 1991) ("[L]egislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage." (*citing Ex parte Holladay*, 466 So. 2d 956 (Ala. 1985))).

Initially, this Court looks to the language of the statute.  However, looking to the language of Ala. Code § 11-81-3 (2008) requires starting with the wording of the statute as enacted in 1935 in Act 1935-197.  This is necessary due to alterations of the statute that were not the actions of Alabama's Legislature directed specifically to amend the law as enacted.  Rather,

---

[15]  One of the arguments proffered by some of the Objectors is premised on a bill that was not enacted during the 2011 Alabama legislative session designed to amend the bankruptcy authority of Ala. Code § 11-81-3 (2008).  A bill not passed into law is of no relevance to interpretation of an Alabama statute.  It may not be the basis for learning the reason for a law, its goals or purpose, and its meaning.  *See Ankrom v. State,* —So. 3d —, 2011 WL 3781258, at *10 (Ala. Crim. App. Aug. 26, 2011); *see also Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990).  In other words, it does not count.

some of the modifications to Ala. Code § 11-81-3 (2008) from its 1935 version are the result of the Code Commissioner codification process.

The wording of Act 1935-197 as codified in § 2293(1) Code of Alabama 1928 is:

> The governing body of any county, city or town which shall authorize the issuance of refunding or funding bonds may exercise all powers deemed necessary by such governing body for the execution and fulfillment of any plan or agreement for the settlement, adjustment, refunding or funding of the indebtedness of such county, city or town, not inconsistent with the provisions of law relating to the issuance of refunding or funding bonds. Without limiting the generality of any of the foregoing powers, it is expressly declared that any such governing body shall have the power to take all steps and proceedings contemplated or permitted by any act of the Congress of the United States then in force relating to the readjustment of municipal indebtedness. And the State of Alabama hereby gives its assent to the Act of Congress Approved May 24, 1934, entitled "An Act to amend an Act entitled 'An Act to establish a uniform system of bankruptcy throughout the United States', Approved July 1, 1898, and acts amendatory thereof and supplemental thereto," and hereby authorizes each county, city or town in the State to proceed under the provisions of said Act for the readjustment of its debts.

The original version has three sentences. As it exists today, Ala. Code § 11-81-3 (2008) has only two. This is the result of the second sentence of the original being joined with the third sentence. This merger is one of the changes to the statute caused solely by the Code Commissioner codification process, and is not an act of Alabama's Legislature to amend the statute's purpose, to alter the necessity for it, or to alter the goals sought to be achieved.

These three sentences remained separate through a 1976 amendment of the Code of 1940 which related to a clarification of the portion of § 37-253 Code of 1940 dealing with funding and refunding of warrants, certificates of indebtedness and notes, not plans or agreements for the restructuring of indebtedness or the bankruptcy authorization. Act No. 107, 1976 Ala. Acts 102. Act 1976-107 is the last amendment to § 37-253 Code of Alabama 1940, the successor location of § 2293(1) & (2) Code of Alabama 1928, before its codification into the Code of 1975. Act 1976-107 has the first sentence of this statute unchanged from its original wording. The second and third sentences in Act 1976-107 are:

> Without limiting the generality of any of the foregoing, it is expressly declared that any such governing body shall have the power to take all steps and proceedings contemplated or permitted

> by any act of the congress of the United States, relating to
> readjustment of municipal indebtedness.  And the state of Alabama
> hereby gives its assent thereto, and hereby authorizes each county,
> city or town in the state to proceed under the provisions of such
> acts for the readjustment of its debts.

After this 1976 amendment, this is exactly how it appeared in § 37-253 Code of Alabama (1940)'s 1958 recompilation.  Review of the acts of Alabama's Legislature from Act 1976-107 to the October 31, 1977 effective date of the Code of Alabama 1975 reveals no act of Alabama's Legislature that merged these sentences.

Added to the absence of an act merging these sentences as of the first compilation of the Code of Alabama 1975, an examination of the Legislative Transcript for the Code of Alabama 1975 along with the correspondence between the Code Commissioner and the Joint Committee reveals that this merger was not mentioned in either the Legislative Transcript or the correspondence setting forth changes proposed by the Code Commissioner to the Alabama Legislature's committee overseeing codification of the Code of Alabama 1975.  *See* Exhibit 2.

Regardless of what happened as part of the compilation of the Code of Alabama 1975, one of the purposes of Ala. Code § 29-7-8 (2003) and its precursors is that changes such as the merger of these two sentences does "not alter the sense, meaning, or effect of any act." Ala. Code § 29-7-8 (2003).  For Alabama statutory interpretation purposes, this results in the portion of what is the second sentence of Ala. Code § 11-81-3 (2008) before the words "and the state of Alabama" and that part commencing with these words being analyzed as separate sentences just as was the case over the forty-two years prior to October 31, 1977.[16]

Next, this Court examines whether there is any ambiguity in the words of Ala. Code § 11-81-3 (2008).  For if there is none, no statutory interpretation is required or allowed under Alabama case law.  *Ex parte Presse (Presse v. Koenemann)*, 554 So. 2d 406, 411 (Ala. 1989).

The first sentence of Ala. Code § 11-81-3 (2008) is clear and unambiguous.  It empowers any county to authorize bonds to execute and fulfill any plan or agreement for settlement, adjustment, refunding, or funding of its indebtedness.  It embraces using bonds for the refinancing of indebtedness, includes use of bonds for the funding of non-bond indebtedness by new bonds, and the authority to settle and adjust bond indebtedness.  Viewed as it was intended to be, it is a grant of power to the counties and other municipal entities to restructure all of their indebtedness involving both outstanding bonds and bonds that may be issued so long as the

---

[16]  Act 1976-107 placed into one section that which is now two sections in the Code of Alabama 1975, Ala. Code §§ 11-81-3 & 4 (2008), as a result of the Code Commissioner process.  This 1976 act was one by Alabama's Legislature specifically addressed at amending Ala. Code § 37-253 (1940), the predecessor to Ala. Code §§ 11-81-3 & 4 (2008).  In other words, the merging of the contents of Act 1935-197 and Act 1935-198 into one section in 1976 was not the result of the code codification process.

22

funding and refunding bonds that may be issued as part of any restructuring comply with what is elsewhere required for bond issuance.

The portion of the second sentence preceding the "and the State of Alabama hereby gives its assent" it is equally clear and unambiguous. It is another that is a grant of authority without which the counties, cities, towns, and certain municipal authorities would not have the power to act. It authorizes them to utilize and take the steps necessary to avail themselves of "any act of the Congress of the United States relating to readjustment of municipal indebtedness." This authority is not limited to bond debt. The word used by Alabama's Legislature is "indebtedness." The "[w]ithout limiting the generality of any of the foregoing powers" introductory phrase is used to make certain that the powers granted in the first sentence relating to plans and agreements to restructure indebtedness are not restricted by any reading of the grant of powers in the second sentence. More succinctly, the refinancing and restructuring authorized by the first sentence of Ala. Code § 11-81-3 (2008) does not have to be done under federal law. Furthermore, the argument that "the governing body" referred to in the second sentence must be read to be "the governing body with outstanding bonds" or a similar phrase is contrary to the literal, plain, and unambiguous language of the first, which has no such qualifier. As written, the powers accorded in this portion of the second sentence are supplementary to, not restrictive of or by, those in the first.

Following the Alabama courts' rule for determining a statute's intent by considering the "natural, plain, ordinary, and commonly understood meaning" of its words, *see, e.g. Tuscaloosa Cnty. Comm'n*, 589 So. 2d at 689, the last portion of the second sentence of Ala. Code § 11-81-3 (2008)--the part that was a separate sentence until the Code Commissioner process merged it into the preceding sentence--is clear and unambiguous. The outcome is that "where plain language is used a court is bound to interpret that language to mean exactly what it says." *Id.*; *Coastal States Gas Transmission Co. v. Ala. Public Serv. Comm'n*, 524 So. 2d 357, 360 (Ala. 1988). What it says is that the State of Alabama gives its consent to and authorizes "each county, city or town or municipal authority," not just those with outstanding bond debt, to proceed under acts for the readjustment of debts, not just bond debt.[17] This includes federal bankruptcy laws.

---

[17]  The words of the third sentence of § 37-253 Code of Alabama 1940 and in its 1958 recompilation as re-enacted in Act 1976-107 were, "And the state of Alabama hereby gives its assent *thereto*, and hereby authorizes each county . . . to proceed under the provisions of *such acts* for the readjustment of its debts (emphasis added)." This is also the language in the initial version of Ala. Code § 11-81-3 (1977). Sometime from the adoption of the Code of Alabama 1975 to the amendment of § 11-81-3 by Act 2001-959 to accord municipal authorities the power to use federal laws to readjust debts, including bankruptcy laws, the "such acts" wording was changed to "the acts." Since there were no acts amending Ala. Code § 11-81-3 (1977) in this 1977 to 2001 time frame other than Act 2001-959, and the Code supplements during this time period evidence no changes to these words by the code codification process, the change in the language occurred as a result of the 2001 amendment. Based on the title to Act 2001-959, this amendment was not intended to alter the meaning of this part of the statute by the change in the words "such acts" to "the acts." Act 2001-959's title, which must be distinguished from the Code's title, references the sole subject of the amendment as being "to specify that the governing body of a municipal authority . . . may exercise the same powers [as those possessed by counties, cities and town]."

23

Moreover and assuming solely for argument purposes an ambiguity exists, insertion of the words "having outstanding bonds" or similar wording in the first or second sentence of Ala. Code § 11-81-3 (2008) violates two other rules of statutory construction followed by Alabama courts. These rules provide that a legislature knows the meaning of words used in a law, *see, e.g.*, *USX Corp.*, 881 So. 2d at 442; *Bean Dredging*, 855 So. 2d at 517, and that courts are not to supply words where the omission is not palpable and the omitted words are not plainly indicated by the context or verifiable from other parts of the statute, *see, e.g.*, *Pace*, 578 So. 2d at 284-85. As the briefs filed by Jefferson County and the City of Prichard, Alabama reflect, the insertion of the requirement of having outstanding bonds as a precondition to being granted the powers accorded counties and other municipal entities under the language of the first sentence and the first portion of the second sentence of Ala. Code § 11-81-3 (2008) would cause the powers granted to effectively be nullities rendering the statute inoperative for all but a few of Alabama's counties and other municipal governments. This is the opposite from those instances when the Supreme Court of Alabama has determined the insertion of words into a statute is appropriate: when it avoids making a statute a nullity or inoperative. *Id.*

Further support for not reading into either the first or second sentence words to the effect that a county or other municipal entity must have outstanding bonds is that at the time of the 1935 enactment of this law, other subsections of The Municipal Bond Code, in particular § 2294(17) and § 2294(35) Code of Alabama 1928 relating to the requirements for refunding bonds, unequivocally specified the necessity of having outstanding bonds as a condition to issuance of refunding bonds without an election. Subsection 2294(17)'s language is "[t]he governing bodies of any municipality, *now having bonds outstanding*, may, without an election (emphasis added)," issue refunding bonds. Virtually identical are the words of § 2294(35) Code of Alabama 1928 that "[t]he governing body of any county *now having bonds outstanding* may without an election (emphasis added)" issue refunding bonds. Alabama's Legislature knew and knows the words of its laws, *see, e.g.*, *Blue Cross & Blue Shield*, 714 So. 2d 297, and could have included similar restrictive words in Acts 1935-197, but it has never inserted such a restrictive phrase for its grants of power into Ala. Code § 11-81-3 (2008).

Just as portions of the Code of Alabama 1928 explicitly set forth a requirement that a county or other municipality desiring to issue refunding bonds have them outstanding, today's Code of Alabama 1975 contains such a requirement in numerous provisions governing the terms and conditions upon which refunding bonds may be issued. For instance, Ala. Code §§ 11-81-64 & 93 (2008) are the statutory descendants of §§ 2294(17) & (35) Code of Alabama 1928. Each limits issuance of refunding bonds to those "then outstanding" and "having bonds outstanding," respectively. Ala. Code § 11-81-172.1 (2008) gives added authority to counties and municipalities to issue revenue bonds for refunding the principal of "any outstanding general or limited obligation warrants." Likewise, Ala. Code § 11-81-166 (2008) deals with the issuance of revenue bonds and provides for their issuance for refunding of principal and interest on "any bonds . . . theretofore issued under this article and then outstanding." These show that Alabama's Legislature knows the meaning of its words, *see, e.g.*, *USX Corp.*, 881 So. 2d at 442; *Bean Dredging*, 855 So. 2d at 517, and had it intended to require outstanding bonds for purposes

of Ala. Code § 11-81-3 (2008), it knew how to include such wording in this statute. *See Blue Cross & Blue Shield*, 714 So. 2d 297. Yet, it has never done so.

Additionally, inserting such words or reading them into Ala. Code § 11-81-3 (2008) and the act from which it emanated creates a conflict between the refinancing and restructuring authority granted and the current laws governing bond issuance and the 1935 version of The Municipal Bond Code. The conflict is that The Municipal Bond Code did not, and the current statutes governing issuance of bonds, do not require outstanding bonds as a precondition to issuing new bonds that are not refunding bonds. *See* Ala. Code § 2294(1)-(70) (1928); *see also* Ala. Code §§ 11-81-1-227 (2008). The Objectors' interpretation of Ala. Code § 11-81-3 (2008) makes outstanding bonds a requirement for issuing new bonds that are not refunding bonds. This interpretation places Ala. Code § 11-81-3 (2008) at odds with the other portions of Title 11 governing bonds that are not refunding bonds. This, also, is contrary to Alabama's case law for statutory interpretation. The Objectors' reading is one that frustrates the major purpose for Acts 1935-197 & 198, as now codified in Ala. Code §§ 11-81-3 & 4 (2008), and is inconsistent with the Supreme Court of Alabama's determination that opposing interpretations must be read in a manner that effectuates a statute's purpose. *See BP Exploration & Oil, Inc. v. Hopkins*, 678 So. 2d 1052, 1054 (Ala. 1996).

Besides this external conflict, the Objectors' suggested interpretation also makes the first sentence of Ala. Code § 11-81-3 (2008) internally inconsistent by limiting the settlement, adjustment, funding and refunding authority to only those with outstanding bonds when the sentence clearly contemplates all municipal entities having use of funding bonds for refinancing and restructuring all indebtedness. To paraphrase the Supreme Court of Alabama, the Objectors "would have us read a condition into [the statute] that doesn't appear on its face, that is inconsistent with persuasive . . . legislative history of the statute, and that does not comport with the ordinary function [of the purpose of the statute]. This we refuse to do." *Pinigis v. Regions Bank*, 977 So. 2d 446, 456-57 (Ala. 2007). Likewise, so does this Court.

### (B). Code Titles Do Not Count, but Act Titles Do

Again assuming an ambiguity exists for argument purposes, the dual restrictions of Ala. Code § 1-1-14 (1999) and Ala. Code § 29-7-8 (2003) on what may be used to determine the purpose, meaning, and intent of enacted legislation do not constrain the use of an act's title, which is different from a title used in the Alabama Code. The Alabama Constitution of 1901 provides in Article IV, § 45 that:

> The style of the laws of this state shall be: "Be it enacted by the legislature of Alabama," which need not be repeated, but the act shall be divided into sections for convenience, according to substance, and the sections designated merely by figures. *Each law shall contain but one subject, which shall be clearly expressed in it*

25

> *title,* except general appropriation bills, . . . and bills adopting a
> code, digest, or revision of statutes . . . .

*Id.* (emphasis added). This constitutional provision limits an act to one general subject which is to be fairly disclosed in the act's title. *See Ala. Educ. Ass'n v. Grayson*, 382 So. 2d 501, 505 (Ala. 1980); *Opinion of the Justices*, 319 So. 2d 699, 702 (Ala. 1975); *Kendrick v. State*, 120 So. 140, 143-44 (Ala. 1928). The one general subject requirement of an act appropriately disclosed in its title is why the contents of the title of an act are meaningful for determining the purpose and reason underlying a statute in order to establish the underlying intent. The Supreme Court of Alabama has held that the title, sometimes referenced as a preamble, to an act may serve as an aid to statutory interpretation. *DeKalb Cnty. LP Gas Co.*, 729 So. 2d at 276; *Jordan v. Reliable Life Ins. Co.*, 589 So. 2d 699, 702 (Ala. 1991).

Acts 1935-197 has an exquisitely explicit title:

> Authorizing the governing body of *any* county, city or town
> to exercise all powers necessary to carry out plans for *refinancing*
> its *indebtedness*, and to proceed under any Act of the Congress of
> the United States relating to the *readjustment* of municipal
> *indebtedness*, and assenting to the Act of Congress approved May
> 24, 1934, amending the National Bankruptcy Act.

*Id.* (emphasis added). It elucidates the reason for and purpose of the Act. The wording is plain and clear: the purpose was to enable "any" county, city or town to be able to restructure its debts and, if necessary, to initiate such a refinancing or restructuring of debts in or out of bankruptcy. The text does not indicate or reference any limitation on the authority conferred for filing bankruptcy. It has no language evidencing a restriction on the types of indebtedness that may be settled, adjusted, refunded, funded, or readjusted. To the contrary, the wording is expansive by its use of "any" for entities that may refinance indebtedness, and is equally broad by the use of "indebtedness," which may be refinanced or readjusted in lieu of more restrictive words such as bonds, warrants, or the like, and is similarly comprehensive when describing those counties, cities, and towns that are being authorized and given the State's assent to file a municipal bankruptcy case. There is no mention of having already outstanding bonds as a precondition to the grants of power in the Act.[18]

Equally pristine in clarity as the title to Act 1935-197 is the title to Act 2001-959, 2001 Ala. Acts 839, which amended Ala. Code § 11-81-3 (2008). It reinforces that the title of Act

---

[18] Inserting such language or reading it to require such a precondition may create the very problem for which the Alabama Constitution of 1901 included Article IV, § 45. It raises the question of whether such an insertion makes the title misleading to the extent that it violates Article IV, § 45's directive.

1935-197's indicated purpose for the grant of refinancing and restructuring authority to all counties, cities, and towns is not limited to bond debts. The caption to Act 2001-959 reads:

> To amend Section 11-81-3, code of Alabama 1975, relating to the power of the governing body of *any* county or city or town to exercise powers deemed necessary by the governing body for the *execution and fulfillment of any plan or agreement for the settlement, adjustment, refunding, or funding* of the *indebtedness* of the county or city or town, to specify that the governing body of a municipal authority organized under Article 9, Chapter 47 of Title 11 of the Code of Alabama 1975, may exercise the same powers.

*Id.* (emphasis added). It is just as clear that it is for the refinancing and restructuring of all indebtedness. There is no wording that indicates it is to be limited to bonds. The language is, as that of Act 1935-197, to give the necessary grant of authority and the enhanced tools needed for financially distressed Alabama municipalities to restructure their debts outside or within a bankruptcy case. Construing Ala. Code § 11-81-3 (2008)'s reach by reference to the titles of these acts reveals just how wrong the Objectors' offered interpretation is while showing that the intent and purpose is to enable all of its counties, among other municipalities, to have the power to refinance and restructure their debts via bankruptcy as one of their debt readjustment tools.

## VIII.  The Residuum

Finding and understanding the significance of three sections of the Code of Alabama 1975, Ala. Code §§ 1-1-2 & 14 (1999) and Ala. Code § 29-7-8 (2003), is the key to knowing that Ala. Code § 11-81-3 (2008) empowers Jefferson County, Alabama to meet the eligibility requirement of 11 U.S.C § 109(c)(2). Without knowing their import, interpretations of Alabama's laws can be improperly done via implementation of case law developed rules of statutory construction.

Of critical importance is undoing the yoke perceived as tying an Alabama statute's location with its meaning. Once one dislodges this concept from the tools of statutory interpretation and learns the reasons for and purposes of a law it becomes clear that Alabama's grant of authority and assent to its counties commencing a bankruptcy case applies to all of its counties and is not constrained by the types of debts outstanding on the day a bankruptcy case is initiated.

Some of what is required is knowledge of the evolution of Alabama's laws on refinancing and restructuring municipal debts. Also necessary is knowing what changes to the appearance of a statute caused by Alabama's Code Commissioner codification process have occurred over time and backtracking to see what alterations made to a statute–not the law as enacted–were the result of the codification process. By doing this, this Court has avoided interpretations of a law that

27

"alter the sense, meaning, or effect of [it]," *see* Ala. Code § 29-7-8 (2003), which have been created by others based on a sequence of Code Commissioner codifications that over time changed the wording and placement of Ala. Code § 11-81-3 (2008), and which are proscribed by Ala. Code § 29-7-8 (2003). It is the transformed appearance of Alabama's law authorizing refinance and restructuring of counties' debts that cannot be undone unless this historical analysis is followed.

As part of this methodology, it is important to understand that the placement in the Codes of Alabama by the Code Commissioner codification process could have been, and originally was, outside The Municipal Bond Code and its successor Alabama Code provisions governing issuing bonds. Although Ala. Code § 11-81-3 (2008)'s placement in the general provisions governing bonds within the Code of Alabama 1975 may or may not have been fortuitous, its location via the Code Commissioner codification process, along with the current captions for it, are meaningless. The meaningless placement and captions are what underpin virtually all of the Objectors' arguments regarding the Act's intent. As a consequence, the Objectors' arguments are unsupportable under any statutory interpretation made consistent with Alabama's case law and statutes governing interpretation.

The benefit of the protracted process undertaken by this Court is that what is a critical issue to Jefferson County and the State of Alabama is given the attention that is mandated by the seriousness of the challenges to the County's eligibility to be a municipal bankruptcy debtor. The crux is that Jefferson County has demonstrated that it has meet all of the requirements of § 109(c)(1) - (5) of the Bankruptcy Code, 11 U.S.C. § 109(c)(1) - (5). Therefore, a separate order incorporating the findings of fact and conclusions of law set forth in this memorandum opinion will be entered overruling all of the objections to Jefferson County's eligibility as a municipal debtor. This order will also constitute an order for relief under chapter 9 of the Bankruptcy Code, 11 U.S.C. §§ 901 *et seq.*

**Dated:**      **March 4, 2012**

**Thomas B. Bennett**
**United States Bankruptcy Judge**

28