**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFERSON COUNTY, ALABAMA, | ) | Case No.: 11-05736-TBB |
| a political subdivision of the | ) | |
| State of Alabama, | ) | |
| | ) | |
| Debtor. | ) | Chapter 9 |

**Memorandum Opinion on Application of Stays of 11 U.S.C. § 362(a) & 11 U.S.C. § 922(a)**
**to Proposed Lawsuit Regarding Cooper Green Mercy Hospital**

Before the Court are requests for (1) a determination with respect to Jefferson County's hospital property, Cooper Green Mercy Hospital, that the automatic stays of 11 U.S.C. §§ 362(a) and 922(a) (collectively, "the Automatic Stays") do not apply to actions sought to be taken by the City of Birmingham, Alabama, William A. Bell, Sr. in his capacity as the Mayor of Birmingham, and both of them *ex rel* the State of Alabama (collectively, "the City Parties"), and alternatively, (2)(a) modification of the Automatic Stays, and (b) abstention from any consideration of underlying Alabama law in making a determination of the applicability of either of the Automatic Stays and their modification.  As explained in more detail below, the Court holds that (1) the City Parties lack the requisite legal injury and necessary legally recognized damage to be able to assert the claims they desire to raise under the Alabama Health Care Responsibility Act, Alabama Code §§ 22-21-290, *et seq.* (1975) ("AHCRA"); (2) abstention is not appropriate with respect to this Court's determination to modify, or not, the Automatic Stays; (3) the automatic stay of 11 U.S.C. § 362(a)(3) stays the City Parties' proposed state court lawsuit; (4) the automatic stay of 11 U.S.C. § 922(a)(1) stays the commencement and maintenance of a suit against Jefferson County's Commissioners David Carrington, Jimmie Stephens, and T. Joe Knight to enforce pre-petition and certain post-petition claims against the County; (5) the police power exception of 11 U.S.C. § 362(b)(4) is not applicable to avoid the Automatic Stays; and (6) the provisions of 28 U.S.C. § 959 are inapplicable to a municipal debtor such as Jefferson County, Alabama, and do not permit, without modification of the Automatic Stays, the bringing of a suit in an Alabama court challenging the Jefferson County Commission's decision to end emergency room and inpatient care at Cooper Green Mercy Hospital.  Accordingly, the Automatic Stays preclude the actions sought to be brought in Alabama's courts by the City Parties, and relief from the Automatic Stays is denied.

**I.      The Genesis and an Outcome – Cooper Green's Plight Precipitated by Alabama**

Cooper Green Mercy Hospital ("Cooper Green") is owned by Jefferson County, Alabama, and functions as one of its departments.  The Jefferson County Commission has authority to direct, control, and maintain property of the County, including Cooper Green. Cooper Green has a storied history of caring for Jefferson County residents who are unable to

1

pay for medical care.  The subject of this opinion that will add to Cooper Green's history is a portion of a dispute between the City Parties and Jefferson County, Alabama, along with three of its county commissioners (hereinafter, Jefferson County, Alabama and the three commissioners are collectively referred to as "Jefferson County" or "the County").  The dispute revolves around Cooper Green's provision of inpatient and emergency room medical care for indigent residents of the County.  Along with providing indigent care, Cooper Green has for a number of years also provided medical care for non-indigents and received payment for this care from either or both the patients and third parties such as private health insurers, Medicare, or Medicaid.  Although Cooper Green is the beneficiary of a designated portion of sales tax revenues for payment of indigent care – in the most recent year an amount exceeding forty million dollars – Cooper Green has routinely lost substantial sums of monies.  In fiscal year 2011, the losses exceeded ten million dollars and in prior, recent fiscal years the losses were of the same relative magnitude.

Contrary to what many have written and what others have assumed was the sole impetus for Jefferson County's bankruptcy filing – its sewer system indebtedness – a major cause was actually beyond the County's control.  In part, the financial decline of Jefferson County and the necessity of its having to file a Chapter 9 bankruptcy case was the decrease in cash flow occasioned by the loss of a tax of approximately one-half of one percent on the gross wages of some of those working in Jefferson County.  This revenue source was one of the few not earmarked for other purposes by statute or otherwise that could be used to finance Cooper Green's perpetual over-budget spending and its losses.  By mid-2011 when an Alabama court's ruling striking down the occupation tax became final, the largest single source of unearmarked dollars available to the County fully evaporated.

Evaporation occurs over time.  The loss of the occupation tax has been no different.  The completion of the process was the culmination of years of prior actions.  The initiating act was the Alabama Legislature's elimination of a virtually identical tax that had been in place for a number of years and working as designed ("the Original Tax").  Alabama's Legislature repealed this tax in 1999 and enacted another one.  The replacement statute for the occupation tax allocated to each member of the delegation of legislators from Jefferson County a portion of the tax revenues for purposes and uses the individual legislators deemed appropriate.  The Jefferson County Employees' Association challenged the legality of this occupation tax ("the First Reenacted Tax") and prevailed.  Subsequently, the Alabama Legislature enacted another occupation tax ("the Second Reenacted Tax"), which did not permit local legislators to allocate tax money and had a slightly lower tax rate than that of the Original Tax and the First Reenacted Tax.  The lower rate was occasioned, in part, by expanding the tax to earnings of those who previously were not subject to the occupation tax, such as lawyers, doctors, and dentists.  Unfortunately for the County, the Second Reenacted Tax was challenged in Alabama's courts by some of the taxpayers not previously subject to the tax, and it, too, was determined to be wanting as a valid law of Alabama.  The loss of this unencumbered revenue source was rooted in the inability of the State of Alabama and its Legislature to properly enact a statute.  It was improperly noticed.

During and following the appeals process for the Second Reenacted Tax, Jefferson County has sought the assistance of Alabama and its Legislature to enact a replacement occupation tax or other source of unearmarked revenue.  The necessity of this legislative action

by the County is due to the fact that the State of Alabama has not delegated to Jefferson County the authority to enact various and sundry taxes. Over the extended time these replacement tax activities were ongoing, the County put off filing a Chapter 9 bankruptcy case. Ultimately and as in a business reorganization case, an imbalance between cash inflows and outflows and approaching the point where one may run out of cash is often what often triggers a bankruptcy filing. This triggering point is no different for a municipal debtor.

Both before and after filing its Chapter 9 case, the County's revenue-seeking activities with Alabama have been to no avail. The State has not enacted another occupation tax or other source of revenues for the County to replace the lost occupation tax monies. This is part of what determined when Jefferson County filed its Chapter 9 case.

Along with the disappearance of this source of general revenue funds has been its immediate impact: the County's inability to fund numerous activities including the continued funding of Cooper Green's deficits. A consequence is Jefferson County having to make difficult decisions on the where, when, and how the reduced unearmarked monies it still receives are to be spent. It has made such determinations across all activities of the County including those at Cooper Green.

With respect to Cooper Green, one decision was to prospectively close its emergency room along with ending inpatient hospital services. This determination has not been popular with various segments of the County Commission's constituencies including, among others, patients, the varying, approximately five hundred (500) to seven hundred (700) employees servicing, on average, about forty inpatients in a facility with the capacity for around three hundred (300) inpatients, and the City of Birmingham and its mayor. This is the genesis of the challenges by the City Parties to the County's actions regarding Cooper Green's operations.

As will become apparent, the fight is not truly over Jefferson County's financial responsibility for certain of its indigent residents' medical treatments. Rather, it is about those with no pecuniary interest in the financial responsibility for Jefferson County's indigent residents trying to dictate how the County decides to meet its indigent care payment obligations. At its heart, it is about requiring the County to keep operating both emergency room and inpatient care facilities at the same level and scope where they were when Cooper Green failed to operate within its budget. Should the City Parties prevail, the outcome will be a diversion of monies to Cooper Green's inpatient and emergency room services from other necessary purposes. All of this will take place at a facility that is surrounded by a massive health care infrastructure operated by numerous other medical providers, including the largest in Alabama, the University of Alabama at Birmingham. All of these other medical care providers – hospitals, clinics, and legions of doctors and other medical personnel – are located across the street or within a few blocks of Cooper Green.

From a dollars and cents perspective, the financial deficiencies in Cooper Green's operations were brought to the forefront – though it took some years – by Alabama's repeal of the Original Tax which had become the traditional source of funding in substantial part, if not totally, for Cooper Green's continual deficits, and by Alabama's repeated inability to enact a valid, replacement occupation tax or other replacement revenue source for the County's lost

3

general revenues. The loss of the occupation tax cannot be attributed to Jefferson County or its commissioners. It rests with the State of Alabama. Likewise, the fact that Jefferson County's unencumbered cash inflow was almost cut in half is not the result of conduct by the County. A cause of Jefferson County's commencing its bankruptcy case when it did flows from the repeal of the Original Tax by the State of Alabama and its legislators and indifference by many to what Alabama and its legislators have wrought over the course of years. One outgrowth of these actions and the inaction is the inability of the County to continue to fund Cooper Green's deficits, forcing Jefferson County to cut back the scope of operation of Cooper Green. All those who attribute Jefferson County's bankruptcy case and Cooper Green's plight only to conduct and actions by the County are ill-informed. The State of Alabama and its legislators are a significant, precipitating cause.

## II. The Jockeying: The Too Soon and The After the Fact

The City Parties claim they are seeking to protect the health care services provided to indigent residents living in the City of Birmingham, as well as the general safety, health, and welfare of all the citizens of the City of Birmingham. Compelling the County not to close inpatient and emergency room services at Cooper Green until it has put into a place a new structure and plan for treating indigent patients who seek health care services is what is supposedly being sought. The timing and tactics underlying the City Parties' actions and the County's reaction are somewhat convoluted.

On August 7, 2012, a committee of the Jefferson County Commission voted to close the inpatient care portion of Cooper Green within thirty (30) days. On August 10, 2012, the City Parties bypassed seeking authorization from this Court and filed a Complaint against the County Commission in the Circuit Court of Jefferson County, Alabama (Case No. CV-2012-902529) (the "State Court Case"), seeking a declaratory judgment, among other relief, that the County is not allowed to close Cooper Green because such action would violate AHCRA. On the same day, the County filed a Notice of Bankruptcy and Suggestion of Stay in the State Court Case.

On August 28, 2012, the County Commission passed a resolution directing Cooper Green to cease admitting persons for inpatient care and operating the emergency room on the first day of a month, no later than December 1, 2012.[1] On the same day, the County filed an Emergency Motion to Enforce the Automatic Stay with this Court seeking to stay further proceedings in the State Court Case. The following day, August 29, 2012, the City Parties filed a response to the Motion to Enforce, and this Court held a hearing on the Motion to Enforce on August 30, 2012.

Although not settled, the State Court Case was resolved by a procedure not objected to by the County. The City Parties' agreed to the voluntary dismissal of the State Court Case without prejudice, and the State Court Case was so dismissed on September 11, 2012. The same day, the City Parties filed a complaint with this Court, commencing Adversary Proceeding No.: 12-0133-TBB ("the Adversary Proceeding"). In the Adversary Proceeding, the City Parties seek (1) relief from the Automatic Stays so they may pursue a new state court action against the County, (2) a declaratory judgment that the closure of inpatient and emergency room services at Cooper Green

---

[1]    The County has reset the date from December 1 to December 31, 2012.

4

(hereinafter, "the Medical Services") without having another structure in place to deliver healthcare services to the indigent citizens of Jefferson County would violate AHCRA, and (3) writs of *quo warranto* and mandamus preventing three of the county commissioners from permanently suspending the Medical Services at Cooper Green without having an alternate structure or plan for indigent healthcare in place. Contemporaneously, the City Parties filed a "Motion for Determination of the Applicability of the Automatic Stay, or, in the Alternative, Motion for Relief from Stay" in the main bankruptcy case ("the Stay Motion").

In the Stay Motion, the City Parties request entry of an order either finding that the Automatic Stays do not apply to the relief sought against the County or, in the alternative, an order granting the City Parties relief from the Automatic Stays, allowing them to proceed in state court with the prosecution of a lawsuit against the Jefferson County Commission and the three County Commissioners who voted to eliminate the Medical Services. The proposed Alabama court suit is to have the same causes of action as those in the Adversary Proceeding. Following the Stay Motion, on September 20, 2012, the City Parties filed another motion suggesting the Court must, or at least should, abstain in the asserted state-law based dispute between them and the County ("the Abstention Motion") with respect to both the Stay Motion and the Adversary Proceeding.

The County filed a response to the Stay Motion and the Abstention Motion on September 25, 2012. Shortly thereafter, this Court entered an order severing count one of the Adversary Proceeding, the stay relief count, and consolidating it with the Stay Motion filed by the City Parties in the bankruptcy case. On October 9, 2012, the County filed a Supplement to Jefferson County's Response to the Stay Motion, and the City Parties filed a Brief in Support of their Stay Motion. At the conclusion of the October 2012 hearing on the Stay Motion, the Court orally informed the City Parties that the automatic stay of 11 U.S.C. § 362(a)(3) applied to the City Parties' proposed state court proceeding and that stay relief would be denied as set forth more fully in a written decision and order. This is the written decision.

### III.    City Parties' Legalities

#### A.  Abstention

The City Parties argue that this Court should abstain from hearing the merits of the dispute between them and the County and permit the merits of their dispute with the County to be heard in an Alabama court based on the assertion, without much more, that their proposed causes of action sound only in equity and are solely premised on state law. All of the proposed state suit causes of action rest on the closing of the Medical Services at Cooper Green constituting a violation of AHCRA. The City Parties' motion is premised on 28 U.S.C. § 1334(c)(1)&(2) and the *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), and *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25 (1959), abstention doctrines as they are further explained and clarified in *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706 (1996) (hereinafter the *Burford*, *Thibodaux*, and *Quackenbush* decisions are collectively referred to as "Case-Based Abstention").

Case 11-05736-CRJ9    Doc 1524    Filed 12/19/12    Entered 12/19/12 11:48:50    Desc
Main Document      Page 5 of 37

## B.  Relief from the Automatic Stays

The main argument by the City Parties regarding the Automatic Stays is that they do not apply to the proposed action because the City Parties do not seek to enforce a "claim" against the County or to exercise control over any of the County's property within either 11 U.S.C. §§ 362(a) or 922(a).  Further, even if the proposed suit would be a "claim" to which either of the Automatic Stays applies, the City Parties argue that their proposed causes of action fall within the § 362(b)(4) police power exception to the imposition of the automatic stay.  In particular, they argue that § 362(b)(4) is an exception not just to the § 362(a) stay, but also to that of § 922(a).  Along with the § 362(b)(4) position, the City Parties argue that 28 U.S.C. § 959 allows suits such as their proposed one against a Chapter 9 debtor in the same circumstances it has been utilized in other cases processed under other chapters of the Bankruptcy Code and its predecessor statute.  In other words, they contend that their proposed suit is permitted via § 959(a) without stay modification.

The City Parties argue next that should this Court find that either of the Automatic Stays applies, cause exists to lift it to allow the City Parties to proceed with their proposed state court action.  The requisite cause is that the state court suit would be founded entirely upon the interpretation of state law, not bankruptcy law.  The City Parties also posit that stay modification is necessary because their proposed state court action seeks writs of mandamus and *quo warranto*, and some federal courts have held that a federal court lacks jurisdiction to enter a writ of mandamus (or similarly, a writ of *quo warranto*) against a state or county official.  *See, e.g.*, *Moye v. Clerk, DeKalb Cnty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973).

They further maintain that a balancing of the equities between them and the County weighs in their favor and that relief from stay is appropriate because it would not run afoul of the purposes underlying the Automatic Stays.  It is asserted that allowing the filing of a suit in an Alabama court would not deplete the assets of the County, would not deprive other creditors from a chance at recovery of their claims, and would not result in wasteful or duplicative proceedings.

In a Supplemental Brief, the City Parties urge that portions of both the Alabama Constitution[2] and the Alabama Code require Jefferson County to provide health care for indigent people.  The City Parties maintain that they are entitled to sue the County – in other words, they have standing – to compel compliance with AHCRA.  They contend that the fact the County is in bankruptcy does not change its obligation to provide health care to indigent residents nor does it

---

[2]     This Court has been directed by the City Parties to three portions of Alabama's Constitution.  One is Article IV, § 88, which deals with the legislature's duty to require Alabama's counties "to make adequate provision for the maintenance of the poor."  Another is Article XI, § 215, which governs certain property taxes and special county taxes and use of revenues derived from a special tax.  The last is Alabama Constitutional Amendment No. 125, which relates to special hospital taxes for hospital care and treatment of indigent residents of a county.

       None of these mandates that a county operate a hospital or supply any sort of medical care.  Amendment 125 only specifies that a county may, among a litany of other ways, make provision for medical care to its indigent residents via a public hospital.  Since these Alabama Constitutional provisions do not even arguably support the City Parties' contentions, this Court will not further deal with them separate from the later discussion of the Alabama statute relied upon by the City Parties.

hinder the City Parties' ability to sue to compel the County to meet this asserted obligation. They also put forward that their proposed claims are ripe for adjudication.

## IV.     Abstention and Undoing AHCRA's Chimerical Construction

### A.  Statutory Abstention Is Not an Avoidance for the Automatic Stays

As indicated, this Court is asked "to abstain from hearing the merits of the dispute between the City and the County" in conjunction with both their Automatic Stays determination requests and their Adversary Proceeding complaint.[3]  The Court has been directed to 28 U.S.C. § 1334(c)(1) and (2), the statutory provisions governing permissive and mandatory abstention, respectively, as well as the Supreme Court's Case-Based Abstention in support of the motion for abstention, but there are no specific arguments delineating the application of any of these authorities to this proceeding.  Rather, abstention's application to the Automatic Stays is made by not much more than a bare contention.

At a hearing in this matter, counsel for the City Parties stated that if abstention is warranted, this Court must grant the City Parties' motion for stay relief.  Hearing, Sept. 27, 2012; City Parties' Supplemental Brief at 28-29.  This is incorrect.  Title 28 U.S.C. § 1334(d) provides that § 1334(c) "shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy."  As it is used in this section, "property of the estate" includes property of a Chapter 9 municipal debtor.  *In re Jefferson Cnty., Ala.*, 474 B.R. 228, 281 n.22 (Bankr. N.D. Ala. 2012).  As this Court has previously held, the "permissive and mandatory abstention of § 1334(c) may not be used to avoid the automatic stay[] of § 362(a)."  *Jefferson Cnty.*, 474 B.R. at 281; *see also Benedor Corp. v. Conejo Enters., Inc.* (*In re Conejo Enters., Inc.*), 96 F.3d 346, 352 (9th Cir. 1996) ("a finding that mandatory abstention applies to the underlying state action does not preclude denial of relief from § 362's automatic stay").  Moreover, as this Court has recognized, it may only abstain from a "proceeding," *Jefferson Cnty.*, 474 B.R. at 280-81, and the only proceeding before the Court at this time is the Stay Motion.  So, implementation of either statutory or Case-Based Abstention could only be done with respect to the Stay Motion if the City Parties desire no relief from the Automatic Stays, assuming either is in place precluding their proposed action.  *See* 28 U.S.C. § 1334(d); *Jefferson Cnty.*, 474 B.R. at 280-81.

In the context of the Stay Motion, a little more discussion is warranted than reliance on one of this Court's prior Jefferson County rulings on the identical issue.  The reason is that the added consideration demonstrates even more definitively why abstention is not a foundation upon which the City Parties may rest the propriety of a suit against the County in Alabama's courts.

---

[3]        This opinion only addresses the City Parties' Stay Motion and abstention in connection with an evaluation of the requests for relief from the automatic stays of 11 U.S.C. §§ 362(a) and 922(a).  Contrary to the City Parties' assertion in their supplemental brief, when ruling on a motion for relief from stay, this Court need not decide whether the underlying dispute between the City Parties and the County is a core or non-core proceeding.  *See* 28 U.S.C. § 157(b)(2)(G); *see also Meoli v. The Huntington Nat'l Bank* (*In re Teleservices Grp., Inc.*), 456 B.R. 318, 335-36 (Bankr. W.D. Mich. 2011) (*Stern v. Marshall*, 131 S. Ct. 2594 (2011), does not limit a bankruptcy court's ability to enter final orders regarding modification of the automatic stay).

Case 11-05736-CRJ9    Doc 1524    Filed 12/19/12    Entered 12/19/12 11:48:50    Desc
Main Document         Page 7 of 37

## B. More on Case-Based and Permissive Statutory Abstention[4]

Section 1334(c)(1) provides that a court may abstain from hearing a particular proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." *Burford* abstention requires a federal court to "decline to interfere with the proceedings or orders of state administrative agencies" involving "difficult questions of state law bearing on policy problems of substantial public import," *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361 (1989) (quotations and citation omitted). Similarly, *Thibodaux* abstention requires suspension of federal proceedings in cases where it would be desirable to allow a state court to decide unsettled questions of state law in areas of particular local concern. *See Thibodaux,* 360 U.S. at 29-30. Abstention of any kind is an extraordinary exception to the exercise of jurisdiction and should be applied sparingly and cautiously. *See Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976). Whether or not to abstain under § 1334(c)(1) or the Case-Based Abstention doctrines is committed to the sound discretion of the trial court. *See Knudsen Corp. v. Nevada State Dairy Comm'n,* 676 F.2d 374, 376 (9th Cir. 1982); *Carlson v. Attorney Registration and Disciplinary Comm'n of the State of Ill.* (*In re Carlson*), 202 B.R. 946, 949 (Bankr. N.D. Ill. 1996).

Although this Court is not tasked with deciding the merits of the dispute underlying a request for a motion for relief from stay, *see, e.g., Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33-34 (1st Cir. 1994), it cannot further decide whether permissive or case law abstention is an appropriate basis for stay modification purposes without a preliminary examination of the state law questions presented by the City Parties' proposed action. Indeed, a primary determinant for abstaining pursuant to § 1334(c)(1) and the case law abstention doctrines is whether a case presents unsettled or difficult questions of state law. *See In re Verrazano Holding Corp.*, 86 B.R. 755, 763 (Bankr. E.D.N.Y. 1988); *In re Earle Indus., Inc.*, 72 B.R. 131, 133 (Bankr. E.D. Pa. 1987).[5]

The mere presence of state law issues is insufficient to justify abstention, even if there are no other issues in the proceeding. *Charter Crude Oil Co. v. Exxon Co., USA* (*In re Charter Co.*),

---

[4]    As this Court has noted, it is not clear that case law abstention ever applies in the context of a bankruptcy case, which needs to be differentiated from an adversary proceeding. *Jefferson Cnty., Ala.,* 474 B.R. at 278.

[5]    Other factors courts look at include "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." *Christensen v. Tucson Estates, Inc.* (*In re Tucson Estates, Inc.*), 912 F.2d 1162, 1167 (9th Cir. 1990); *see also In re Terry Mfg. Co. Inc.*, 324 B.R. 147, 154 (Bankr. M.D. Ala. 2005) (applying the same test); *In re Scanware, Inc.*, 411 B.R. 889, 897-98 (Bankr. S.D. Ga. 2009) (applying a similar 14-factor test).

82 B.R. 602, 603-04 (Bankr. M.D. Fla. 1988); *In re Cemetery Dev. Corp.,* 59 B.R. 115, 126-27 (Bankr. M.D. La. 1986). Despite there being no state court precedent on an issue, if the issue's resolution is no more uncertain than most legal questions, abstention is not necessary. *See Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 654 F.2d 1218, 1221-22 (7th Cir. 1981); *see also Charter*, 82 B.R. at 603-04 (abstention is not appropriate if bankruptcy court could predict probable outcome on state law question); *Orion Ref. Corp. v. Dep't of Revenue* (*In re Orion Ref. Corp.*), No. 03-11483, 2004 WL 3244578, at *6 (Bankr. M.D. La. May 28, 2004) (even where state public policy issue is involved, abstention is not necessary where bankruptcy court can apply state law).

As explained below, there are no questions – let alone difficult ones – of state law in the City Parties' proposed state court case that warrant abstention of any kind. While there is no Alabama case law fully addressing the precise question at issue here, the purposes and application of AHCRA are readily apparent, and abstention under either 28 U.S.C. § 1334(c)(1) or the Case-Based Abstention doctrines – assuming they apply to a bankruptcy case – is not appropriate. To know why requires understanding the purpose and scope of AHCRA. The following discussion of AHCRA also facilitates the analysis and holdings of this Court for the other legal arguments presented by the City Parties. In particular, it shows the absence of predicates upon which the City Parties rely and goes to the heart of a missing element for both abstention and stay modification: likelihood of success on the merits of the proposed causes of action.

### 1. The Accurate AHCRA

The cornerstone of the City Parties' stance is that the County will violate AHCRA, Alabama Code § 22-21-290, *et seq.*, if it goes through with its plan to close the Medical Services at Cooper Green without putting "in place a new structure for the funding of the delivery of healthcare services to the indigent." Compl. ¶ 37. Specifically, the City Parties rely on § 22-21-291, which provides that

> [i]t is the intent of the Legislature to place the ultimate financial obligation for the medical treatment of indigents on the county in which the indigent resides, for all those costs not fully reimbursed by other governmental programs or third-party payers.

From this and with disregard for the balance of Title 22, Chapter 21, Article 10, *see* Ala. Code § 22-21-292-297 (1975), the City Parties extrapolate the espoused necessity of a new structure for funding of the delivery of healthcare service.

Use of Alabama's rules of statutory construction demonstrates why the City Parties' AHCRA position is untenable. In Alabama, "[t]he fundamental rule of statutory construction is that [a] Court is to ascertain and effectuate the legislative intent as expressed in the statute," *City of Bessemer v. McClain*, 957 So. 2d 1061, 1074 (Ala. 2006) (citation omitted), which "may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage," *Tuscaloosa Cnty. Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa Cnty.*, 589 So. 2d 687, 689 (Ala. 1991). Also, "[w]ords used in the statute must be given their

Case 11-05736-CRJ9    Doc 1524    Filed 12/19/12    Entered 12/19/12 11:48:50    Desc
Main Document      Page 9 of 37

natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says." *Id.*

In this case, the plain language of § 22-21-291 does not support the interpretation advanced by the City Parties. There is nothing in the wording of § 22-21-291 that creates an obligation on the part of the County to provide the Medical Services or to have a structure or plan in place for their provision. The statute does not mention a program or a plan to provide health care for indigent residents or a requirement that counties fund such a program or plan, which is distinguishable from an obligation to pay for indigent care. Indeed, the statute sets forth only that the Legislature intends "to place the ultimate financial obligation for the medical treatment of indigents on the county in which the indigent resides" when those costs are not fully reimbursed by other government programs or third-party payers. Section 22-21-291 unmistakably does not require that a county operate a hospital or adopt a specific structure for the provision of indigent health care. Nor does any other provision of AHCRA impose such a requirement on Alabama's counties. *See* Ala. Code §§ 22-21-292 *et seq.* (1975). It is a law dealing with a county's reimbursement or payment of others for certain medical care those others provided.

Although unnecessary given this Court's determination of the clear language of § 22-21-291, even assuming an interpretative issue exists does not alter the outcome. This arises from an analysis following other Alabama rules of statutory construction. These rules have been used in cases where the language of a statute, standing alone, is not conclusive of legislative intent, and they allow a court to look at other factors to ascertain intent. *See Jefferson Cnty. Comm'n v. Edwards*, 32 So. 3d 572, 587 (Ala. 2009). Three such factors are particularly relevant here.

First, a court is to "look to the entire Act instead of isolated phrases or clauses," *City of Bessemer*, 957 So. 2d at 1074 (citation omitted), and read it "*in pari materia* in order to produce a harmonious whole," *Ex parte Jackson*, 625 So. 2d 425, 428 (Ala. 1992); *see also League of Women Voters v. Renfro*, 290 So. 2d 167, 169 (Ala. 1974) ("statutes should be resolved in favor of each other to form one harmonious plan and give uniformity to the law").

Similarly, the principle of *generalibus specialia derogant* provides that where sections *in pari materia* are general and specific, the more specific controls the more general. *Ex parte Coffee Cnty. Comm'n*, 583 So. 2d 985, 988-89 (Ala. 1991). In *Coffee County*, the Supreme Court of Alabama noted that where a statute sets forth in general terms the duty of the county to provide jail facilities, the more specific provisions that followed it specifying the amount of the taxes to be used for such purpose and the sources from which it may be derived "further refined" the general statutory provision. *Id.*

Finally, as this Court has previously noted, the Alabama Constitution requires that an act be limited to one general subject, which is to be fairly disclosed in the act's title, or preamble, and the Supreme Court of Alabama has held that this title may be used as an aid in statutory interpretation. *See In re Jefferson County, Ala.*, 469 B.R. 92, 118 (Bankr. N.D. Ala. 2012) (citing Ala. Const. Article IV, § 45 and *Jordan v. Reliable Life Ins. Co.,* 589 So.2d 699, 702 (Ala.1991)).

10

When § 22-21-291 is read *in pari materia* with its act's title, or preamble, not Alabama Code's section, chapter, or title headings, *see Jefferson Cnty.*, 469 B.R. at 118, while keeping in mind that the specific controls the general and that Alabama acts shall be limited to one subject, it is a certainty that the intent in enacting AHCRA was to require that when a qualified indigent resident of one county receives certain medical services at regional referral hospitals located in another county, the county where the indigent person resides is responsible for payment of such treatment. Here is why.

The preamble to the bill enacting AHCRA provides as follows:

This bill creates the Alabama Health Care Responsibility Act; providing legislative intent, providing definitions; *providing that ultimate financial responsibility for the cost of treatment of a patient certified to be indigent, who is a resident of one county but receives services from a hospital in another county, shall be placed with the county of which the patient is a resident*; providing limitations on such responsibility; providing that the Department of Pensions and Security shall adopt rules for certifying patients as indigent; requiring hospitals to admit certified indigents under certain conditions; providing that disputes between hospitals and counties shall be resolved by action in the circuit court of the county in which the regional referral hospital is located and providing an effective date.

Act. No. 79-808, 1979 Ala. Acts 1487, 1487 (emphasis added). It sets forth the legislative intent, and there is no mention of an Alabama county having to provide medical services. All that is imposed is "responsibility for the cost of treatment."

Coupled with AHCRA's title making clear that its purpose is to ensure that a county is responsible for reimbursing out-of-county hospitals that provide certain qualified, medical care to its indigent residents is the balance of the sections comprising AHCRA. All of these expressly and only pertain to regional referral hospitals, which AHCRA defines as a "hospital that provides services to [indigent] patients who reside in counties other than the county in which the hospital is located," and the manner by which a county is to reimburse a regional referral hospital. *See* Ala. Code §§ 22-21-293-297 (1975). AHCRA does not provide procedures for a county to pay for in-county indigent hospital care.

Further evidence that AHCRA's scope is limited to reimbursement for certain out-of-county indigent resident medical care is found in the other the articles of Title 22, Chapter 21 of the Alabama Code that concern indigent care. In particular is the structure of Title 22, Chapter 21, Article 1. One portion sets forth that ". . . any town or city and the county commission of any county *may* establish . . . hospitals, temporary or permanent, for the reception of the sick or infirm . . . and *may* make all needful rules and regulations for the control and management thereof . . . ." Ala. Code § 22-21-1 (1975) (emphasis added). Nothing cited to this Court in Alabama's Constitution, Title 22, Chapter 21 of the Alabama Code of 1975, or any other statutory provision requires Jefferson County to operate a hospital, let alone provide inpatient and emergency care services.

Another factor disposing of the City Parties' assertions becomes apparent by a review of Title 22, Chapter 21, Article 7 of the Alabama Code of 1975. It is an act captioned "Hospital Service Program for Indigents." Article 7 creates a voluntary program for counties to meet the financial costs of indigent county residents incurred in medical facilities located within an indigent resident's home county. Alabama Code § 22-21-211 states that it is "not intended that this article shall be compulsory on any county except during such time as the county agrees, in the manner prescribed in this article, to participate in the program."

Moreover, it is significant that Article 7 and the remainder of Chapter 21, with the exception of AHCRA, govern an Alabama county's financial obligations with respect to in-county indigent care. *Compare* Ala. Code §§ 22-21-1-210-227, 278 and 22-21-310-391 *with* Ala. Code §§ 22-21-290-297 (1975). Juxtaposed with these is AHCRA, which is designed to clarify that out-of-county qualifying medical care for a county's indigents is the financial responsibility of the indigent person's county of residence. What the relevant portions detailing indigent care financial responsibility that are set forth in Title 22, Chapter 21 do is define the scope of in-county and out-of-county financial responsibility for indigent medical care. AHCRA is the statutory provision dealing solely with payment for qualified out-of-county care.

More simply and when the structure of all of the provisions dealing with indigent care of Title 22, Chapter 21 of the Alabama Code of 1975 are considered, it is evident that AHCRA deals with financial responsibility of a county for treatment of certain of its indigent residents in medical facilities located in other counties. It does nothing more. *See* Ala. Code §§ 22-21-290-297 (1975).

The County's obligation is payment for rendered medical services only to the extent required by Alabama's laws. In this matter, there is no evidence that Jefferson County has failed to pay to the extent required under Alabama law for indigent medical care. Likewise, there is no evidence that Jefferson County intends to prospectively not pay for such medical care to the extent Alabama law demands.

In sum, and when AHCRA is read as a whole while utilizing Alabama's principles of statutory construction, there is no support for the City Parties' claim that the County is required to either keep open Cooper Green's Medical Services or to provide an ongoing, alternative plan for the provision of indigent health care before termination of the Medical Services.[6] Neither is the subject of AHCRA or any other Alabama law cited to this Court. The result is that further caviling over the County's determination to cease the Medical Services is unavailing in the manner and by the means sought by the City Parties. As is discussed in more detail below and

---

[6] The case law the City Parties cite also supports the Court's interpretation of AHCRA because these cases deal only with payment for specific services provided to indigents in one county for those who are residents of another rather than a requirement that a County implement any sort of plan or program. *See, e.g., Childree v. Health Care Auth. of City of Huntsville*, 548 So. 2d 419, 421 (Ala. 1989) (requiring only that the county pay for hospital care for indigent individuals subject to involuntary commitment proceedings without mentioning a structure for the provision of care for future indigent patients); *Bd. of Comm'rs of Wilcox County v. Bd. of Trustees of Univ. of Ala.*, 483 So. 2d 1365 (Ala. Civ. App. 1985) (a case involving a hospital located in Jefferson County seeking reimbursement for care provided to a Wilcox County resident); *Marengo County v. University of South Alabama*, 479 So. 2d 48 (Ala. Civ. App. 1985) (Mobile County hospital seeking reimbursement for care provided to a Marengo County resident).

with respect to their other contentions, this statute is unsupportive of what the City Parties seek to do.

### 2. Clearly No Right, Clearly No Usurpation, Clearly No Mandamus, and Clearly No *Quo Warranto*

The proposed mandamus and *quo warranto* claims also do not present difficult state law questions that require abstention. Under Alabama law, a petitioner for a writ of mandamus, must show, *inter alia*, a clear legal right to the order sought. *Ex parte Jackson*, 780 So. 2d 681, 683 (Ala. 2000). For the reasons already discussed, AHCRA does not provide for the relief the City Parties are requesting. Thus, they cannot meet the clear legal right requirement. *See, e.g.*, *Ex parte Price*, 698 So. 2d 112, 113 (Ala. 1997) (petitioner failed to show his Fifth Amendment rights were implicated by malpractice action against him and therefore failed to demonstrate clear legal right to the order sought); *Campton v. Miller*, 19 So. 3d 245, 250 (Ala. Civ. App. 2009) (petitioner did not have clear legal right to order sought when circuit court lacked jurisdiction to issue the order). Therefore, the City Parties' mandamus claim does not warrant abstention or modification of the Automatic Stays.

Under Alabama's laws, *quo warranto* is a common law writ used to determine whether an official is properly qualified and eligible to hold a public office, *see Ex parte Sierra Club*, 674 So. 2d 54, 56 (Ala. 1995), and a *quo warranto* action lies under Alabama law "[w]hen any person usurps, intrudes into or unlawfully holds or exercises any public office, civil or military, any franchise . . . or other legal authorization within this state . . . ." Ala. Code § 6-6-591. In Alabama, *quo warranto* is not an appropriate device to challenge actions taken by an official who properly holds his office. *See Brannan v. Smith*, 784 So. 2d 293, 296 (Ala. 2000). The case relied upon by the City Parties, *Tyson v. Jones*, 60 So. 3d 831 (Ala. 2010), is not to the contrary.

In *Tyson*, there was an allegation that a district attorney for one county was usurping the powers of a district attorney and a sheriff of another county. 60 So. 3d at 843. Here, the City Parties are not alleging that the county commissioners usurped another official's office or duties, nor are they arguing that the commissioners unlawfully obtained or hold their public office. In point of fact, the only challenged actions they have taken vis-à-vis Cooper Green were done while performing their duties as validly elected commissioners of Jefferson County. *See* Compl. ¶¶ 40-45. All that is involved here is the City Parties' not liking the decisions of the properly elected Jefferson County Commissioners, who were acting within the scope of their legitimate powers. These are not the sort of actions for which Alabama's courts allow one to utilize *quo warranto*. *See Brannan*, 784 So. 2d at 296. Accordingly, the proposed *quo warranto* claim does not present a question of Alabama law that warrants any form of abstention, and it is, like their mandamus claim, also unsupportive for purposes of stay modification.[7]

---

[7]     While the primary determinant for permissive abstention is the presence of a difficult question of state law, there are other significant factors that weigh against abstention in this case. The City Parties' proposed action would hinder the County's development and filing of the Chapter 9 plan, delaying its adjustment of debts and impeding the efficient administration of the bankruptcy case while a state court proceeding moves through three levels of Alabama courts. *See In re Wilson Feed Co., Inc.*, 142 B.R. 123, 126 (Bankr. E.D. Va. 1992). Even with expedited scheduling, this process would most likely take several years to complete and would most certainly require the expenditure of additional tens of thousands, if not hundreds of thousands, of dollars in legal and related costs from the County's already limited funds.

13

### 3. No Existence, No Mandatory Abstention

Section 1334(c)(2) states that a court shall abstain from hearing a proceeding "if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." The majority of courts have interpreted this phrase to mean that an action must be pending in state court prior to the filing of a bankruptcy petition in order for mandatory abstention to apply. *See, e.g.*, *Ferretti Const. Co. v. Italimplanti of Am., Inc.* (*In re Ferretti Const., Inc.*), 208 B.R. 396, 398 (Bankr. S.D. Tex. 1995) (mandatory abstention did not apply where no proceeding had been commenced in a state forum of appropriate jurisdiction and could not be commenced without first obtaining relief from automatic stay); *Container Transp., Inc. v. Scott Paper Co.* (*In re Container Transp., Inc.*), 86 B.R. 804, 806 (E.D. Pa. 1988) (action must be pending in state court at the time a proceeding is initiated in bankruptcy court in order to successfully invoke mandatory abstention). Despite this, this Court is urged to adopt the "minority rule" articulated in *World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 610 (Bankr. S.D. Cal.1988), which holds that no pending state action is required.

This Court sides with the majority of courts that have found *World Solar Corp.*'s holding to be "inconsistent with the legislative history and the plain language of" § 1334(c)(2). *See, e.g.*, *Walter v. Freeway Foods, Inc.* (*In re Freeway Foods of Greensboro, Inc.*), 449 B.R. 860, 877-78 (Bankr. M.D.N.C. 2011) (rejecting the *World Solar Corp.* analysis and noting that "[t]he clear majority of cases supports the position that the cause of action must be pending in state court prior to the bankruptcy for mandatory abstention to apply"). Because there is no pending action in state court, mandatory abstention under § 1334(c)(2) is inapplicable, and, as a consequence, does not support the City Parties' Automatic Stays arguments. Additionally, for § 1334(c)(2), the current progress of the County's Chapter 9 case makes it highly unlikely that any Alabama court proceeding over the Medical Services can be timely adjudicated to a final judgment.

Lastly and in the context of considering application of the Automatic Stays and their modification, where there is no validly arguable nor colorable cause of action such as is the case with the proposed AHCRA claims, mandatory abstention under 28 U.S.C. § 1334(c)(2) simply cannot apply. Otherwise, to apply 28 U.S.C. § 1334(c)(2) would allow nonexistent claims and causes of action to be a basis for stay modification via abstention by cloaking nonexistent causes of action in the veil of state law-premised ones. Accordingly, mandatory abstention does not form a basis for modifying the Automatic Stays.[8]

---

[8]     Another possible dilemma for the City Parties is the potential inconsistency between § 1334(c)(2) and 28 U.S.C. § 959. This need not be addressed in this opinion.

14

### A.  Proposed Suit and § 362(a)(3)

Title 11 U.S.C. § 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[9]  It is undisputed that Cooper Green is property of the debtor and is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1334(e)(1).  Any action that affects property of the debtor in a manner within the automatic stay's sphere, including a declaratory judgment action, is subject to § 362(a)(3), even if the debtor is not named in the action.[10]  *Amedisys, Inc. v. Nat. Century Fin. Enters., Inc.* (*In re Nat. Century Fin. Enters., Inc.*), 423 F.3d 567, 577-78 (6th Cir. 2005) (§ 362(a)(3) stays declaratory judgment action seeking to obtain property of the debtor even where debtor is not named); *see also Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 392 (2d Cir.1997) ("[A]n action taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the [§ 362(a)(3)] automatic stay provision.").

Here, the City Parties' proposed declaratory judgment, mandamus, and *quo warranto* actions come within the purview of § 362(a)(3) because the City Parties seek to prevent the County's closing of the Medical Services at Cooper Green, i.e., keeping Cooper Green open to the same extent it has been for many years while it continues to lose millions of dollars each year.  *See, e.g.*, *B.F. Goodrich Employees Fed. Credit Union v. Patterson* (*In re Patterson*), 967 F.2d 505, 511-12 (11th Cir. 1992) (action to control property of debtor violates § 362(a)(3) automatic stay); *In re Saint Vincents Catholic Med. Ctrs. of New York*, 429 B.R. 139, 146-47 (Bankr. S.D.N.Y. 2010).  The proposed lawsuit is nothing more than an attempt to impose the City Parties' desired operation of Cooper Green in lieu of that chosen by the County.  Thus, the proposed Alabama court lawsuit by the City Parties is stayed under the provisions of 11 U.S.C. § 362(a)(3) as an attempt to exercise control over the County's hospital property.

### B.  11 U.S.C. § 922(a)(1)'s Ambit – Before and After Claims

#### 1.  Claims are Claims under 11 U.S.C. § 922(a)(1)

Given this Court's holding on the application of 11 U.S.C. § 362(a)(3) to the proposed state court lawsuit, it is unnecessary to address whether the City Parties are asserting a "claim" within the meaning of § 362(a).  It is, however, necessary to analyze their post-petition claim argument to determine whether 11 U.S.C. § 922(a)(1) enjoins the filing of the proposed suit.

Added to the automatic stay provisions of § 362(a) is § 922(a)(1), which stays "the commencement or continuation, including the issuance or employment of process, of a judicial,

---

[9]     Title 11 U.S.C. § 902(1) makes the references in 11 U.S.C. § 362(a)(3) to "property of the estate" mean "property of the debtor."

[10]    The proposed suit would name only the Jefferson County Commission and three of the commissioners.  *See* Compl.

administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." [11] For the proposed state court action, the § 922(a)(1) stay has potential application with respect to only the three Jefferson County Commissioners the City Parties wish to sue. One of the City Parties' contentions is that because they are not asserting a claim that arose pre-petition, § 922(a)(1) imposes no restriction on suing the three county commissioners over AHCRA's enforcement.

The language of § 922(a)(1) imposing an automatic stay is somewhat different than that of § 362(a). In one respect § 922(a)(1) is narrower than § 362(a) because it applies to certain actions and proceedings against an officer or inhabitant of a municipal debtor by one seeking to enforce a claim against the Chapter 9 debtor, while § 362(a) governs certain actions directly against a debtor, property of a debtor, or property of a bankruptcy estate. [12] In another way, § 922(a)(1) is broader. Unlike §§ 362(a)(1)-(2) & (4)-(7), which are limited to claims arising before the commencement of a bankruptcy case, the language of § 922(a)(1) has no such limitation. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (2002) ("when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (quotations and citations omitted). As written, § 922(a) applies to enforcement via an officer or inhabitant of a debtor of "a claim against the debtor." There is no requirement set forth in its plain language that it involve a *pre-bankruptcy* claim. *See United States v. Segarra*, 582 F.3d 1269, 1271 (11th Cir. 2009) (statutes should typically be interpreted based on their plain language). Nor is there any indication in the legislative history for this section that it is to apply to only pre-bankruptcy claims. *See, e.g.*, H.R. Rep. No. 95-595, at 398 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6354. Additionally and as demonstrated by § 922(a)'s "in addition to the stay provided under section 362 of this title" wording, it is apparent that the stay grant under § 922(a) is a supplemental stay not intended to replicate what is already accorded under § 362(a). *See 6 Collier on Bankruptcy* ¶ 922.02[1] (16th ed. 2009) ("The stay of section 922 is in addition to the section 362 stay, not in lieu of it.").

Restricting § 922(a)(1)'s application to pre-bankruptcy claims against a debtor would effectively make § 922(a)(1) replicate certain of the stay protections already accorded under § 362(a). For instance, § 362(a)(6)'s "any act to collect, assess, or recover a claim against the debtor" is broad enough to encompass actions against third parties who owe monies to a debtor. *See, e.g.*, *In re Brilliant Glass, Inc.*, 99 B.R. 16, 17-18 (Bankr. C.D. Cal. 1988). However, it is limited to claims that arose before a bankruptcy case is initiated. Similarly and due to the variances of state laws – particularly those governing when a property interest is created, the

---

[11]      As this Court has previously noted, once a state authorizes its subdivisions to file bankruptcy, all of Chapter 9's provisions will be applicable to the municipal bankruptcy. *Jefferson Cnty.*, 474 B.R. at 280; *see also Cnty. of Orange v. Merrill Lynch & Co. (In re County of Orange)*, 191 B.R. 1005, 1021 (Bankr.C.D.Cal.1996).

[12]      For purposes of this opinion, the scope of application of 11 U.S.C. § 105(a) to impose a stay consistent with the purposes underlying § 362(a) and of the scope of the § 362(a) automatic stay to prevent actions against non-debtors need not be considered. *See, e.g.*, *Nat. Century Fin. Enters., Inc.*, 423 F.3d at 577; *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002-03 (4th Cir. 1986); *see also In re Residential Capital, LLC*, 480 B.R. 529, 550 (Bankr. S.D.N.Y. 2012) (extending stay pursuant to § 105 to cover discovery against debtors who were not parties to the action).

Case 11-05736-CRJ9    Doc 1524    Filed 12/19/12    Entered 12/19/12 11:48:50    Desc
Main Document      Page 16 of 37

extent of a property interest held, and when and how an enforceable lien comes into existence – application of 11 U.S.C. § 362(a)(3)'s protections against obtaining possession or exercising control over property may not apply with respect to some actions against officers and inhabitants seeking to enforce claims against a Chapter 9 debtor.  This factor is part of why § 922(a)(1) was enacted.  *See 6 Collier on Bankruptcy* ¶ 922.02[1] (16th ed. 2009).[13]

Taken together, the absence of limiting language in § 922(a)(1) regarding claims against the Chapter 9 debtor, the legislative history not supporting such a restrictive reading, and the fact that Congress drafted § 362(a)(1)-(2) and (4)-(7), among other sections, to limit their reach to pre-bankruptcy "claims" while not expressly doing so for a "claim" within the meaning of § 922(a) demonstrate that 11 U.S.C. § 922(a)(1)'s reach is not limited to just pre-bankruptcy claims.

Further support for § 922(a)(1)'s sweep not being limited to pre-bankruptcy claims is that while § 922(b) makes subsections (c), (d), (e), (f), and (g) of § 362 applicable to the stays accorded under § 922(a), it does not expressly make applicable other subsections of § 362 – most notably, § 362(b) – that would constrict the automatic stay of § 922(a).  Congress clearly knew how to limit what constitutes a "claim" for § 922(a)(1) purposes, but chose not to do so.  *See Barnhart*, 534 U.S. at 452.  Further evidence that Congress did not intend to limit § 922(a)(1) to pre-bankruptcy claims is 11 U.S.C. § 922(d)'s wording making both § 362(a)'s and § 922(a)'s stays inoperative when it comes to application of pledged special revenues in a fashion consistent with 11 U.S.C. § 928.  *See Jefferson Cnty.*, 474 B.R. at 747-48; *see also* Municipal Bankruptcy Amendments of 1988, H.R. 5347, and S. 1863, from the 100th Congress, 2d session.  When Congress desired to limit § 922(a)'s reach, it did so in a subsection of § 922, 11 U.S.C. § 922(d).  No similar delimitation of claims has been engrafted onto § 922(a).

Perhaps, the most telling support for what constitutes a "claim" within § 922(a)'s purview is that 11 U.S.C. § 101(5) does not define a claim to be one that arises before commencement of a bankruptcy case.  11 U.S.C. § 101(5)(A) & (B).  The limitation of what is a "claim" for automatic stay purposes under 11 U.S.C. § 362(a) is per the express wording of subparts of § 362(a), not § 101(5).  *Compare* 11 U.S.C. § 101(5) *with* 11 U.S.C. § 362(a)(1)-(2) & (4)-(7); *see also In re M. Fabrikant & Sons, Inc.*, 385 B.R. 87, 96-97 (Bankr. S.D.N.Y. 2008).  As is

---

13    As *Collier* sets forth, § 922(a) also

prohibits a creditor from bringing an action against an inhabitant of the debtor who owes taxes to the debtor, whereby the creditor seeks to collect his debt by collection of taxes that are owed to the municipality.  Such taxes might be considered property of the debtor, because they are a chose in action or a debt owed by the debtor.  If so, action against an inhabitant to collect a prepetition claim from that source would be stayed by section 362(a)(3), prohibiting any act to collect a debt from property of the debtor.  However, because of the unique nature of municipal finance and debt collection procedures, the additional stay has been inserted to insure that a creditor cannot obtain an advantage over other creditors or pressure the municipality, by reason of action against inhabitants of the debtor.

*6 Collier on Bankruptcy* ¶ 922.02[1] (16th ed. 2009).  This discussion is in the context of enforcement of a pre-petition claim against a municipal debtor, but the rationale has equal application to certain claims arising post-bankruptcy.

17

discussed more fully in *M. Fabrikant & Sons*, various portions of the Bankruptcy Code delineate claims to be those existing pre-bankruptcy while others do not. Some parts of the Bankruptcy Code definitively encompass a "claim" as including some that arise post-bankruptcy. *Id.* at 96-97.

These sections of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, limiting a "claim" as defined in 11 U.S.C. § 101(5) to one arising pre-petition contain additional limiting language not found in § 922(a). *See, e.g.*, 11 U.S.C. § 362(a)(1) (staying actions to "recover a claim against the debtor that arose before the commencement of the case under this title"), § 362(a)(5) (staying "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title"), § 362(a)(6) ("any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title"). Section 922(a) does not contain similar restrictive wording. Thus, the stay imposed via § 922(a)(1) encompasses claims arising both before and during a Chapter 9 bankruptcy to at least the point of confirmation of a plan of adjustment when enforcement of a claim is structured to be accomplished against, as here, an officer of the municipal debtor. *See M. Fabrikant & Sons*, 385 B.R. at 97.

## 2. The Claim Against Jefferson County's Commissioners

Knowing why § 922(a)(1)'s stay applies to certain post-petition claims is not the end of the inquiry in this County-City Parties matter. It requires further consideration of what constitutes a claim under 11 U.S.C. § 101(5). *See* 11 U.S.C. § 901(b) (making the definitions of 11 U.S.C. § 101(5) applicable via 11 U.S.C. 103(f)).[14] Section 101(5) has two subsections. Subsection (A) defines a claim to be a "right to payment" and subsection (B) delineates it to include a "right to an equitable remedy for breach of performance if such breach gives rise to a right of payment. . . ."

The Supreme Court of the United States and lower federal courts have consistently broadly interpreted what constitutes a "claim" for bankruptcy law purposes. *See, e.g.*, *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("Congress intended by [the § 101(5)] language to adopt the broadest available definition of 'claim.'"); *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35-36 (1st Cir. 2009) (same); *In re WorldCom, Inc.*, 546 F.3d 211, 216 (2d Cir. 2008) (same). For instance, the concept that a breach of a statutory mandate is not a liability on a claim and that such a breach does not give rise to a right of payment within 11 U.S.C. § 101(5)'s definition of a claim has been rejected. *See Ohio v. Kovacs*, 469 U.S. 274, 281-83 (1985). Likewise, new or continuing acts that occur after the filing of a bankruptcy case that violate a statute can give rise to a post-petition claim. *See O'Loghlin v. Cnty. of Orange*, 229 F.3d 871, 874-75 (9th Cir. 2000).

Applying the *Kovacs* and *O'Loghlin* principles along with recalling AHCRA's purpose is to make Alabama's counties liable for the payment, not the provision, of certain out-of-county indigent medical care helps one understand the only colorable claim the City Parties could bring

---

[14]     Section 103(e) is referenced in 11 U.S.C. § 902(b). However, the correct reference for § 902(b) is to 11 U.S.C. § 103(f). *Jefferson Cnty.*, 474 B.R. at 281 n.22.

Case 11-05736-CRJ9   Doc 1524   Filed 12/19/12   Entered 12/19/12 11:48:50   Desc
Main Document     Page 18 of 37

under AHCRA falls within the scope of § 922(a)(1)'s prohibition. This is because on its face, the statute gives rise to a right to payment, *see* Ala. Code § 22-21-293 (1975), and Alabama's courts have interpreted it as creating an implied contract, the breach of which gives rise to a right to payment, *see Ex parte Univ. of S. Alabama*, 812 So. 2d 341, 345 (Ala. 2001); *Tuscaloosa County v. Children's Hosp., Inc.*, 486 So. 2d 1302,1303 (Ala. Civ. App. 1986), nothing more. Thus, any breach of AHCRA gives a plaintiff, assuming she has standing, only the right to enforce payment for covered medical services rendered, which is a claim within 11 U.S.C. § 101(5).[15] Guising what AHCRA accords and requires as something else does not alter what this Alabama-law premised claim or cause of action is or may be.

Taking only that which AHCRA and Alabama's courts' interpretation of AHCRA allow permits one to determine whether an AHCRA-based suit is within § 922(a)(1)'s orbit. Section 922(a)'s language specifies that the stay granted under its terms is "applicable to all entities . . ." Title 11 U.S.C. § 101(15) defines "entity" as including persons and governmental units. Governmental units, in turn, is defined as including a state and a municipality. 11 U.S.C. § 101(27). This means the proposed suit by the City Parties is by a municipality – the City of Birmingham – and a person – William A. Bell, Sr. – along with the municipality and person bringing the suit by or on the relation of, *ex rel.*, a state, Alabama. No one disputes the status of the City Parties as "entities" for § 922(a)(1)'s purposes. Furthermore, it is uncontestable that the proposed suit is against three of Jefferson County's commissioners who are officers within the meaning of 11 U.S.C. § 922(a)(1). *See* Ala. Code § 11-2-1(a)(2) (specifying county commissioners as county officers); *Cook v. St. Clair Cnty.*, 384 So. 2d 1, 5 (Ala. 1980). Thus assuming for argument purposes that the City Parties have standing *and* would be a real party in interest, all they could be bringing under AHCRA is a suit as entities against officers of a municipal debtor.[16] This meets part of the requirements governing the § 922(a)(1) stay.

All that remains is that the suit be one with respect to the necessary type of claim against Jefferson County. Since, as set forth in this portion of this memorandum opinion, § 922(a) is not limited to pre-petition claims against the County and all that AHCRA creates is an obligation to pay for certain indigent care along with an implied contract for payment, *see Ex parte Univ. of S. Alabama*, 812 So. 2d at 345; *Children's Hosp., Inc.*, 486 So. 2d at1303, the requisites of 11 U.S.C. § 922(a)(1)'s application exist for any claim denominated within AHCRA's reach. Stated differently, a claim premised on AHCRA constitutes a "claim" within the meaning of § 101(5) and is stayed by 11 U.S.C. § 922(a)(1) despite its being a chimerically pleaded version such as that by the City Parties and regardless of whether it arises pre- or post-petition.[17] The City

---

[15]    AHCRA is distinguishable from the environmental laws at issue in *In re Torwico Electronics, Inc.*, 8 F.3d 146 (3d Cir. 1993), where the debtor's expenditure of money was incidental to its compliance with the environmental laws and did not create a right to payment. *See* 8 F.3d at 151. Under AHCRA, payment for medical care is not incidental to compliance. It is the compliance.

[16]    Additionally, it does not matter that the regional referral hospitals, rather than the City Parties, have a right to payment. Under the terms of § 922(a), the action need only "seek[] to enforce a claim against the debtor;" nothing in the statute requires that the right to payment inure to the benefit of the party seeking to enforce the claim. *See Magma Irr. & Draining Dist. v. Bd. of Supervisors of Maricopa Cnty.* (*In re Magma Irr. & Draining Dist.*), 193 B.R. 528, 536 (Bankr. D. Ariz. 1994) (the § 922(a) stay "halts all collection efforts") (emphasis added).

[17]    There is an alternate way to view what would be sought via the proposed lawsuit in an Alabama court. It is to enforce on behalf of others how the costs of Medical Services are to be paid, which would generate a right to

Parties' proposed action is therefore stayed as one against officers of Jefferson County even though it may have arisen after the filing of the County's Chapter 9 case but prior to confirmation of a plan of adjustment of its debts.[18]

## C. Police Power Not Involved[19]

Another of the legal skirmishes revolves around the insistence of the City Parties that § 362(a)(3)'s and § 922(a)(1)'s automatic stays are inapt because of the police power exception in § 362(b)(4). Section 362(b)(4) provides that the § 362(a)(3) stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."

Congress has directed that the police power exception be construed narrowly. *See, e.g.*, *Bd. of Supervisors v. Royal (In re Royal)*, 137 Fed. App'x 537, 541 (4th Cir. 2005); *Schulman v. Cal. State Water Res. Control Bd. (In re Lazar)*, 200 B.R. 358, 368 (Bankr. C.D. Cal. 1996). In determining whether § 362(b)(4) applies, most courts apply one or both of two tests: (1) the pecuniary purpose test, which looks at whether the governmental proceeding at issue relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety, or (2) the public policy test, which distinguishes between proceedings that adjudicate private rights and those that effectuate public policy. *See City & Cnty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1124-26 (9th Cir. 2006); *McAtee v. Fla. Bar* (*In re McAtee*), 162 B.R. 574, 578 (Bankr. N.D. Fla. 1993). Actions that are primarily related to public safety or the effectuation of public policy are exempt from the automatic stay. *McAtee*, 162 B.R. at 578.

As explained *supra* at IV.B.1., the purpose of AHCRA is payment. It does not require counties to have programs in place for the provision of indigent care. It merely requires that if

---

payment against the County for their provision. This includes claims for both legal and equitable relief, each of which is to control the means of supplying medical care for certain indigent residents by dictating the means for their payment. As already set forth, certain actions to obtain or enforce a right to payment or a right to equitable relief for a breach of performance that gives rise to a right to payment is a claim under 11 U.S.C. § 101(5), which is stayed by § 922(a)(1). Whether such a claim is in fact yours or someone else's or is ultimately a successful claim is not the issue for whether the action is stayed pending further action by a bankruptcy court or being excepted or otherwise taken out from under the ambit of an automatic stay. *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33-34 (1st Cir. 1994) (decision on motion for relief from stay is not an adjudication on the merits, and "the only issue properly and necessarily before a bankruptcy court during relief from stay proceedings is whether the movant creditor has a colorable claim").

[18]     In light of this Court's § 922(a)(1) disposition for the types of claims it encompasses, the Court need not address the County's argument that if a claim at all, it is pre-petition. Even the City Parties do not argue that pre-petition claims are not within § 922(a)(1)'s grasp.

[19]     There is an issue regarding whether the City Parties have any "police powers" over the County with respect to AHCRA. *See Bd. of Supervisors v. Royal (In re Royal)*, 137 Fed. App'x 537, 540 (4th Cir. 2005). However, this Court need not address this issue given its holding with respect to § 362(b)(4).

an indigent resident of a county receives covered, out-of-county hospital services, the county of residence must bear the cost for properly incurred medical expenses of an indigent person to the extent they are not otherwise paid. *See* Ala. Code § 22-21-293 (1975). Thus, the purpose of the statute is ensuring that the financial burdens of indigent care are properly allocated among counties. *See* Ala. Code §§ 22-21-290 *et seq.* It achieves this purpose by adjudicating the private rights of individual regional referral hospitals. *See id.* Because, at best, AHCRA only imposes a financial obligation on a county for certain out-of-county medical care provided a county's indigent citizens, it is a statute creating a payment obligation of a county to a medical care provider. It does not involve any police or regulatory power as that phrase is used in 11 U.S.C. § 362(b)(4) and fails both the pecuniary purpose and public policy tests. *See, e.g.*, *PG & E Corp.*, 433 F.3d at 1125 (public purpose test not met if suit seeks primarily to advantage particular person or entities); *Nejberger v. Pa. Liquor Control Bd.* (*In re Nejberger*), 112 B.R. 714, 722 (Bankr. E.D. Pa. 1990), *vacated on other grounds*, 120 B.R. 21 (E.D. Pa. 1990) (exemption will not lie if purpose of law upon which action is based is pecuniary); *Muzio v. Sampson* (*In re Sampson*), 17 B.R. 528, 531 (Bankr. D. Conn. 1982) (refusing to apply exemption when purpose of statute was not safety of drivers but rather protection of pecuniary interests of judgment creditors).[20]

Moreover, as noted above, 11 U.S.C. § 922(b) does not incorporate § 362(b) as applying to the § 922(a) stay, although it expressly makes § 362(c), (d), (e), (f), and (g) applicable to § 922(a). The implication is that § 362(b) does not limit § 922(a)'s stay imposition. *See Jefferson Cnty.*, 474 B.R. at 263-64; *see also Poulakis v. Rogers*, 341 F. App'x 523, 530 (11th Cir. 2009). In short, § 362(b)(4) does not exclude 11 U.S.C. § 362(a)(3)'s or 11 U.S.C. § 922(a)(1)'s staying of the City Parties' proposed state court action.

---

[20]      Even if AHCRA be viewed as being a regulatory law, § 362(b)(4) is of no assistance to the City Parties because what they seek is merely enforcement of contractual rights. *See In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440, 445 (1st Cir. 1986).

**D.** *Barton*'s Exclusion Excepted aka Sameness' Masking of 28 U.S.C. § 959 – Not a Trustee, Receiver, Manager of Property, Debtor in Possession, or Functional Equivalent[21]

## 1. The Mask's Evolution and Mutation

Equity receiverships evolved prior to the 20th Century merger of courts of equity with those of law. For many jurisdictions, this merger happened on the adoption of rules of civil procedure. *See, e.g.*, Fed. R. Civ. P. 2; Ala. R. Civ. P. 2. Equity receiverships were frequently structured so that the court of equity took possession of property of a person or entity by appointment of a receiver to hold the properties on behalf of the court. *See Jefferson Cnty.*, 474 B.R. at 250; *see also Union Nat'l Bank of Chicago v. Bank of Kansas City*, 136 U.S. 223 (1890); *Sullivan Timber Co. v. Black*, 48 So. 870 (1909). The property-based jurisdiction of these receivership courts over the property of a person or entity was and is *in rem*. *See Jefferson Cnty.*, 474 B.R. at 255; *Green v. City of Montgomery*, 55 So. 3d 256, 259-60 (Ala. Civ. App. 2009). Along with the use of *in rem* jurisdiction over properties, a principle evolved: The first receivership court to obtain possession of property via a receiver had jurisdiction over the *res* to the exclusion of all other courts. Because of the supremacy of 28 U.S.C. § 1334(e)[22] over this first-in-time rule, the subsequent filing of a bankruptcy case displaces possession of a receivership court via a receiver when there has been no taking away of the owner's property interests by actions in the receivership proceeding that occur before the bankruptcy filing.[23] *See Taylor v. Sternberg*, 293 U.S. 470, 472–73 (1935); *Gross v. Irving Trust Co.*, 289 U.S. 342, 342–45 (1933); *see also Jefferson Cnty.*, 474 B.R. at 255; *Green*, 55 So. 3d at 259-60.

Often coupled with the first-in-time principle was the issuance of an injunction by the receivership court enjoining suits against the receiver and receivership property without prior leave of the appointing court. *See Barton v. Barbour*, 104 U.S. 126, 136 (1881). Part of the rationale for this first-in-time principle and the injunction issuance on the appointment of a receiver was and has been the necessity for unimpeded control over property in order to fulfill the function of the receivership – be it liquidation of properties to pay creditors and other claimants, to adjudicate conflicting interests in property, or other administration of the property

---

[21] Part of why *Barton*'s evolution is considered when addressing 28 U.S.C. § 959 is how Barton's application in a matter involving a bankruptcy court's trustee or debtor in possession or other court officer interrelates with § 959's usage. Of particular relevance is how the Automatic Stays of the Bankruptcy Code operate along with the § 959(a) exception to the *Barton* Doctrine. Some courts have used the statutory interpretation rule that a more specific enactment, § 959(a), further defines the more general one, 11 U.S.C. § 362(a). *See, e.g.*, *Minn. Pollution Control Agency Inc. v. Gouveia* (*In re Globe Bldg. Materials, Inc.*), 345 B.R. 619, 636 (Bankr. N.D. Ind. 2006); 10 *Collier on Bankruptcy* ¶ 10.04[1] (16th ed. 2009). Others have attempted to harmonize the two. *See, e.g.*, *In re Continental Air Lines, Inc.*, 61 B.R. 758 (S.D. Tex. 1986); 10 *Collier on Bankruptcy* ¶ 10.04[1] (16th ed. 2009). Both views allow § 959 to supersede the Automatic Stays in certain instances. Given 28 U.S.C. § 959's origins dating back to 1887 along with alteration of federal bankruptcy jurisdiction, it is arguable that neither approach is warranted and that § 959 should have no application in a federal jurisdictional setting under the Bankruptcy Code. *See infra* n.25.

[22] Section 1334(e) provides the court with exclusive jurisdiction over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

[23] This taking is not stripping possession of the res from its owner. Rather, it must be effective transfer of legal and equitable interest in the property in addition to possession. *See Jefferson Cnty.*, 474 B.R. at 248-60.

in possession of the receivership court. To allow other courts to adjudicate claims against receivership property or the receiver in a forum other than the receivership court could adversely impact how the receivership court performed its duties and would permit some to advance their position vis-à-vis the *res* at the expense of others. *See id.*

This first-in-time principle coupled with an injunction to shield a receiver has two aspects. One is protection of the *res*. The other is shielding the appointing court's receiver from acts taken when done within her official capacity. However, the necessity of the defensive injunction for a receiver is in significant part attributable to protecting the *res*. This arises from the receiver being the one legally recognized as the person or entity properly sued for negligent acts while administering the *res*. Without the injunctive shield, a route to assert and enforce a claim against the *res* would otherwise be an action against the receiver. *See Barton*, 104 U.S. at 134; *Med. Dev. Int'l v. Cal. Dept. of Corr. & Rehab.*, 585 F.3d 1211, 1219 (9th Cir. 2009). Another part of the justification for the defensive injunction was to ensure that the "appointing" court maintained its control over its receiver to the exclusion of other courts. *See Fed. Sav. & Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980).

This receivership jurisdiction principle, along with giving recognition to the injunction against actions versus a receiver, was adopted for application in federal courts in *Barton*. *See Barton*, 104 U.S. at 136-37. When a receiver is acting within her official capacity, the *Barton* Doctrine (1) enforces the absence of jurisdiction of other, non-receiver courts over a *res* in the possession of an equity court, including a bankruptcy court, and (2) recognizes the receivership court's need to shield its receiver from challenges by other courts to her actions while acting within her capacity as a receiver. *See id.* at 133-35; *In re Crown Vantage, Inc.*, 421 F.3d 963, 971 (9th Cir. 2005) ("The *Barton* doctrine applies in bankruptcy, because the trustee in bankruptcy is a statutory successor to the equity receiver, and just like the equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code.") (quotations and citations omitted); *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000) ("we hold that a debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity."); *In re Linton,* 136 F.3d 544, 546 (7th Cir.1998); *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272, 276 (2d Cir.1996); *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir.1993). As these cases demonstrate, *Barton*'s holding has been extended beyond receivers and applied in cases involving bankruptcy trustees and others.

The *Barton* Court ruling employed the equity receivership principle in the context of a tort action involving a railroad operated by a receiver appointed by a Virginia court. The injured individual, Barton, brought suit in the District of Columbia. As the Supreme Court recognized,

> If the court below had entertained jurisdiction of this suit, it would have been an attempt on its part [to] adjust charges and expenses incident to the administration by the court of another jurisdiction of trust property in its possession, and to enforce the payment of such charges and expenses out of the trust property without the leave of the court which was administering it, and without

consideration of the rights and equities of other claimants thereto. It would have been an usurpation of the powers and duties which belonged exclusively to another court, and it would have made impossible of performance the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities.

*Id.* at 136.

The Supreme Court's *Barton* holding was limited in the last paragraph of the opinion to negligence-based actions against a receiver while performing his receivership duties of carrying on the business to which the property "is adapted." *Id.* An earlier discussion indicates the Court considered the first-in-time principle applicable to receiverships where no ongoing business was being undertaken by a receiver. *Id.* at 132-34. *Barton* has thus been applied to both a receiver who took property on behalf of an equity court and immediately ceased business operations and those in which the business uses of the properties were continued in operation by the receiver. *Id.* at 136-37; *see also In re Crown Vantage, Inc.*, 421 F.3d 963, 972 (9th Cir. 2005) (*Barton* Doctrine applied to trustee charged only with liquidating assets of the estate).[24]

In his dissent in *Barton*, Justice Miller did not take exception to application of the exclusive jurisdiction of a receivership court when the properties in its possession were being sold or otherwise disposed of without ongoing business operations. However, he did when the properties continued to be used as part of an ongoing business. He asserted that a distinction needed to be made between what he viewed as historically having been a receivership court's function of non-operational administration of properties and what he perceived was a more recent trend in railroad receivership cases of continued operation of railroads for extended periods while no liquidation was taking place. He also pointed out that the right to trial by jury was being impaired by those who would otherwise have such a right under the Constitution by adjudication of *Barton*-type claims in equity courts where no jury trial was available. His disagreement with the majority was founded on the dual concepts of carrying on a business and the right to a jury trial along with requiring those with claims against a receiver to go to an equity court, sometimes far away from where the tort occurred, when such a claim could have otherwise been brought in a court of law. *Id.* at 137-41. This dissent was founded on three concepts: carrying on a business, a jury trial right, and forum selection by a tort plaintiff.[25]

---

[24]     *Barton*'s implementation by courts of the United States has expanded its reach to include persons and entities beyond just trustees, receivers, managers of property, and debtors in possession. As used by some courts, it includes all those who are what has been called the "functional equivalent" of a trustee, receiver, manager of property, or debtor in possession. This expansion of *Barton* has been without consideration of the implications for 28 U.S.C. § 959. *See Lawrence v. Goldberg*, 573 F.3d 1265, 1269-70 (11th Cir. 2009); *Lowenbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 321 (6th Cir. 2006); *Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*), 421 F.3d 963, 973 (9th Cir. 2005).

[25]     Given the evolution of bankruptcy court jurisdiction, in particular 28 U.S.C. § 1334, along with the Supreme Court's decisions restricting equity's avoidance of the right to a jury trial from what it had previously been viewed, *see, e.g., Stern v. Marshall*, 131 S. Ct. 2594 (2011), and its progeny, plus the merger of courts of equity with courts of law, all of which post-date the original reasons underlying and the enactment of what is now 28 U.S.C. § 959 (1978), much, if not all, of the rationale espoused by Justice Miller no longer supports this statute's necessity other than in a non-bankruptcy jurisdiction context. When one takes into consideration that a merged court of law and equity, a United States District Court, has jurisdiction over bankruptcy cases under 28 U.S.C. § 1334(a), the

24

An outcome of Justice Miller's dissent was Congress' enactment of the forerunner of 28 U.S.C. § 959(a) & (b).  *See Med. Dev. Int'l v. Cal. Dep't of Corr. and Rehab.*, 585 F.3d 1211, 1217 (9ᵗʰ Cir. 2009); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F. 3d 1, 4-5 (1st Cir. 1999); *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398-99 (9ᵗʰ Cir. 1970).  It responds to some of Justice Miller's concerns.  In its current version, the statute reads,

> (a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court *appointing* them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

> (b) Except as provided in section 1166 of title 11, a trustee, receiver or manager *appointed* in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, *in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.*[26]

28 U.S.C. § 959 (emphasis added).

Although there is no question that Congress initially desired to create an exception to the *Barton* Doctrine for certain receivers and managers of property ". . . with respect to . . . [their] carrying on the business connected with such property . . .," trustees and debtors in possession were not included within the statute's plain words.  *See* 28 U.S.C. §§ 124 & 125 (1887).  This

---

delegation to bankruptcy courts is restricted by 28 U.S.C. § 157, and both the district court's and bankruptcy court's exercise of bankruptcy-related jurisdiction is constrained by 28 U.S.C. § 1334(b), (c), & (d) and other parts of the Bankruptcy Code, such as 11 U.S.C. §§ 305 (abstention from a bankruptcy case, excluding a Chapter 9), 362(b) & (d) (exclusions from the automatic stay and its modification), the forum selection, jury trial, and carrying on business concerns have been addressed by alteration of bankruptcy statutes and case law developments.   These developments in bankruptcy court jurisdiction allow a federal district court as a law court with a jury to try just the types of cases about which Justice Miller was concerned.  The now extant limits of 28 U.S.C. § 1334(b), (c), & (d), along with the Supreme Court's case law restraining bankruptcy jurisdiction and its Case-Based Abstention, are mechanisms designed to escape equity jurisdiction, and 11 U.S.C. § 362(b) & (d) along with other sections and subsections of the Bankruptcy Code permit a bankruptcy court to allow matters that otherwise would be within *res*-based jurisdiction to go elsewhere and be premised on another jurisdictional basis such as *in personam*.  When these provisions are considered together fundamentally, if not precisely, they allow what 28 U.S.C. § 959 was enacted to permit.  More succinctly and since the 1887 enactment of the lineal parent of § 959, virtually all aspects of Justice Miller's rationale in *Barton* have been built into bankruptcy jurisdiction, its exercise, and escaping its equity court grasp.  In short, 28 U.S.C. § 959(a) adds little, perhaps noting, when a bankruptcy case is the federal jurisdictional predicate.  This is not the focus of this discussion, however.  Rather, the current consideration is how courts have perceived and utilized 28 U.S.C. § 959.

[26]      In the 1887 statute, what is the progenitor for § 959(b) was the first section and that for § 959(a) was the second section.  28 U.S.C. §§ 124 & 125 (1887).  This remained true in the 1911 enactment.  28 U.S.C. §§ 124 & 125 (1911).  Whether their reversal in location in the current version has any interpretative implications is not discussed in this opinion.

25

statutory distinction was kept in place in the 1911 version. *See* 28 U.S.C. §§ 124 & 125 (1911). It was not until enactment of the 1948 version that trustees and debtors in possession were added to receivers and managers of property as being within the scope of both subsections (a) and (b) of 28 U.S.C. § 959, which was carried forward in 1978 to the current version. *See* 28 U.S.C. § 959 (1948); 28 U.S.C. § 959 (1978).[27]

Superficially, the current version of 28 U.S.C. § 959(a) appears to be applicable to any and all trustees, receivers, or managers of any property, including debtors in possession. A further review of the origins and modifications to this legislation, however, reveals that its perimeter is not as broad as the City Parties believe. The 1887 version expressly limited its exception to the *Barton* Doctrine in several ways. The one of significance to this Court's discussion involves who is a "receiver or manager of any property. . . ." The original statute provided "[t]hat every receiver or manager of any property *appointed by any court of the United States* may be sued . . . ." 28 U.S.C. § 125 (1887) (emphasis added). As written, it applied to only receivers or managers appointed by a court of the United States. The identical restriction was carried forward in the 1911 statute: "Every receiver or manager of any property *appointed by any court of the United States* . . . ." 28 U.S.C. § 125 (1911) (emphasis added).

In 1948, Congress deleted the language "appointed by any court of the United States." The altered statute read: "(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them. . . ." 28 U.S.C. § 959(a) (1948). The identical wording is in the current statute. 28 U.S.C. § 959(a) (1978).

Despite this change, § 959(a) still literally requires that the trustee, receiver, manager of property, or debtor in possession be appointed by a court of the United States.[28] Based on

---

[27]    The types of acts and transactions covered by § 959(a) have been expanded over time by some courts to include not just actions sounding in tort. *See Med. Dev.*, 585 F.3d at 1217-19 (contract claim); *Carpenters Local Union No. 2746, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Turney Wood Products, Inc.*, 289 F. Supp. 143 (W.D. Ark. 1968) (specific performance of a labor contract); *In re Newman Cos. of Wis., Inc.*, 45 B.R. 308, 309 (Bankr. E.D. Wis. 1985) (employee non-compete agreements); *In re Kish*, 41 B.R. 620 (Bankr. E.D. Mich. 1984) (suit to enjoin landfill operation as violating environmental laws). But, some federal courts have retained the opinion that § 959(a) is only a *Barton* exception for tort actions. *See, e.g.*, *Reading Co. v. Brown*, 391 U.S. 471, 477 n.7 (1968); *Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004); *In re Am. Associated Sys., Inc.*, 373 F. Supp. 977, 979 (E.D. Ky. 1974) ("The exception created in 28 U.S.C. 959(a) is intended to permit actions redressing torts committed in furtherance of the bankrupt's business operations, and is not cast to foster interference with the use, control, maintenance and operation of the bankrupt's property . . . .") (quotations and citations omitted).

[28]    Obviously, all trustees and debtors in possession are not "appointed" by the court as that term is used in § 959(a). In the case of trustees, the term has been technically incorrect for some time except in the case of Chapter 11 trustees in those judicial districts of the United States within the United States Trustee system. *See* 11 U.S.C. §§ 701, 702, 703, 1104, 1202, 1302, & 1163. This is partly due to the wording change in the 1948 statute from the precursor version of 11 U.S.C. § 959(a) as carried forward to today's provision, which no longer contains the identical "appointing" language. In Alabama and North Carolina, which have Bankruptcy Administrators, there is another convolution that for some trustees, e.g., Chapter 12 and 13 trustees, makes the "appointing court" usage in court opinions less inappropriate since it is currently accurate in Chapter 12 and Chapter 13 cases. This technical issue has uniformly been overlooked in court opinions, which have applied § 959(a) to "officers of the court" regardless of whether they are technically appointed by the court. *See, e.g.*, *In re McKenzie*, 476 B.R. 515, 529-31 (E.D. Tenn. 2012); *Herrera v. Gonzales* (*In re Herrera*), 472 B.R. 839, 850-51 (Bankr. D.N.M. 2012); *Henkel v. Lickman* (*In re Lickman*), 297 B.R. 162, 203-05 (Bankr. M.D. Fla. 2003).

26

review of virtually all, if not all, reported opinions of federal courts dealing with the 1887 and 1911 versions, this Court has located no opinion where a court utilized it as applicable to any receiver or property manager other than one appointed by a federal court. *See, e.g., Investment Registry v. Chicago & M. Elec. Ry. Co.*, 204 F. 500, 507 (E.D. Wis. 1913); *In re Kalb & Berger Mfg. Co.*, 165 F. 895, 896 (2d Cir. 1908). With only one exception, this remained true after the statute was revised in 1948. *See, e.g., SEC v. Lincoln Thrift Ass'n*, 557 F.2d 1274, 1277 n.1 (9th Cir. 1977); *Republic Bank of Chicago v. Lighthouse Mgmt. Grp., Inc.*, 829 F. Supp. 2d 766, 772 (D. Minn. 2010) (holding that "Section 959(a) applies to receivers appointed by federal courts," not state courts).[29] This requirement arises not only from the history of 28 U.S.C. § 959 but also from its placement in the United States Code. Section 959 is part of Title 28 of the United States Code, the "Judiciary and Judicial Procedure," and Chapter 57 of Title 28, which is the chapter for "General Provisions Applicable to Court Officers and Employees." *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute") (quoting *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528–529 (1947)). Yet, the case law application of § 959(a) has glossed over the "appointing" language and substituted in some instances only that one be an officer of the court. *See, e.g., In re McKenzie*, 476 B.R. 515, 529-31 (E.D. Tenn. 2012) (trustee not "appointed" by court); *Herrera v. Gonzales (In re Herrera)*, 472 B.R. 839, 850-51 (Bankr. D.N.M. 2012) (same); *Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 203-05 (Bankr. M.D. Fla. 2003) (same); *see also supra* note 28. Essentially, these courts have written the "appointed" wording out of 28 U.S.C. § 959. Thus, giving this statute the breadth accorded by current case law application, its history, and its placement in the Code, § 959(a) is limited to trustees, receivers, managers, and debtors in possession who are *officers of the courts of the United States*. The application of § 959(a) in these cases represents the mutation that has evolved since the original, 1887 version of the statute and forms the basis for the way this Court will apply this mutated, broader version to the debtor in this case.

## 2. The Organic Structure and What's Behind the Mask

### a. Officers and Appointing

There is a beguiling appearance of sameness of how a trustee, receiver, manager of property, and debtor in possession function in a bankruptcy case to that of a Chapter 9 debtor.

---

[29]     This Court's review of over 125 years of cases discussing 28 U.S.C. § 959 and its predecessor acts resulted in finding only one reported opinion of a court that has arguably viewed the exception to *Barton* as applicable to a state court-appointed receiver. It is *Seitz v. Freeman (In re Citx Corporation)*, 302 B.R. 144, 150 (Bankr. E.D. Pa. 2003), which involved a suit by a Chapter 7 trustee against a receiver appointed by a Florida court. In *Seitz*, there is no consideration given to the § 959(a) exception being limited to actions and transactions of a federal court appointed trustee, receiver, or manager of property, including a debtor in possession. Nor is there consideration that one be an officer of a court of the United States. The bankruptcy court simply assumed that it might apply and determined that because the Florida court receiver had never been "empowered to operate the business" that 28 U.S.C. § 959(a) was inapposite. Additionally, the authority relied upon by the *Seitz* court involved two cases, *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000), and *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240-41 (6th Cir. 1993), which support the requirement that the acts or transactions must involve carrying on a business. However, neither stands for the proposition that § 959(a) applies to suits by or against a state court receiver because *Carter*, a case that originated in this Court, and *DeLorean* both revolved around actions against a federal court's bankruptcy trustee. 220 F.3d at 1251-52; 991 F.2d at 1238-39.

For instance, each may undertake actions and enter into transactions in connection with a bankruptcy case that often involve property interests. These property interests are frequently utilized in the carrying on of the operations of an entity. The automatic stay of 11 U.S.C. § 362(a) protects the property of an estate and that of a debtor from actions by certain third parties seeking to enforce or collect a claim or exercise control over these property interests. In a Chapter 9 case, 11 U.S.C. § 922(a)(1) does the same with respect to property of a debtor where enforcement of a claim is through an officer or inhabitant of a municipality. Due regard for one or both of these Automatic Stays often necessitates obtaining their modification by a bankruptcy court. Other parallels exist. At first blush, one may easily believe that this sameness supports application of 28 U.S.C. § 959 to a municipal debtor in the manner it has been applied to suits by and against a trustee, receiver, manager of property, and debtors in possession in a bankruptcy case filed under other chapters of the Bankruptcy Code.

This is not the case. The superficial similarities mask underlying and critical differences. One is the structure of what a trustee, receiver, and the like are and do compared to a Chapter 9 debtor. The other arises from the Constitution, in particular the Tenth Amendment, and the recognition of the dual sovereignty that is our federalism.

Unlike other chapters of the Bankruptcy Code where either the bankruptcy court under 11 U.S.C. § 1104(a) or, in United States Trustee districts, the United States Trustee, "appoint" a trustee, *see, e.g.*, 11 U.S.C. §§ 701, 702, 703, 1104(d), 1163, 1201, & 1302, or there is a debtor in possession, *see* 11 U.S.C. §§ 1011(1), 1107, 1203, & 1204, or its counterpart in a Chapter 13 case, *see* 11 U.S.C. §§ 1303, 1304, there is no similar person or entity who is a court officer within the meaning of Title 28, Chapter 57 in a municipal bankruptcy case involving a governmental unit such as Jefferson County. Part of why is that unlike other chapters, there is no bankruptcy estate, which under the case law is considered a separate and distinct entity from a debtor, *see, e.g.*, *Katz v. Comm'r of Internal Revenue*, 335 F.3d 1121, 1127 (10th Cir. 2003); *Smith v. Kennedy* (*In re Smith*), 235 F.3d 472, 477-78 (9th Cir. 2000); *Prime Healthcare Mgmt v. Valley Health Sys.* (*In re Valley Health Sys.*), 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010), that is being administered by a trustee, receiver, manager of property, or debtor in possession. *See In re City of Stockton, Cal.*, 478 B.R. 8, 18 (Bankr. E.D. Cal. 2012); *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 141-42 (Bankr. S.D.N.Y. 2010); *In re JZ LLC*, 371 B.R. 412, 419 n.4 (B.A.P. 9th Cir. 2007); *In re City of Vallejo*, 403 B.R. 72, 78 n.2 (Bankr. E.D. Cal. 2009).

One focus of the "officer" and "appointed" inquiries for 28 U.S.C. § 959 purposes is whether a Chapter 9 debtor is an officer of a court of the United States. Decisions of courts of the United States hold that those performing duties in the administration of an estate, which for a bankruptcy case is a bankruptcy estate, are doing so as officers of the court. *See, e.g.*, *Callaghan v. Reconstruction Fin. Corp.*, 297 U.S. 464, 468 (1936); *York Int'l Bldg., Inc. v. Chaney*, 527 F.2d 1061, 1068 (9th Cir. 1975); *Official Creditors' Comm. of Fox Markets, Inc. v. Ely*, 337 F.2d 461, 465 (9th Cir. 1964); *In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr. S.D. Cal. 1984). These include bankruptcy trustees and debtors in possession. *See, e.g.*, *Callaghan*, 297 U.S. at 468; *In re Weibel, Inc.*, 176 B.R. 209, 212 (B.A.P. 9th Cir. 1994); *York Int'l Bldg., Inc.*, 527 F.2d at 1068; *Official Creditors' Comm. of Fox Markets, Inc.*, 337 F.2d at 465; *Power-Pak Prods. v. Royal Globe Ins. Co.*, 433 F. Supp. 684, 687 (W.D.N.Y. 1977); *In re Tri-Cran, Inc.*, 98 B.R. 609, 617 (Bankr. D. Mass. 1989); *Matter of Tudor Assocs., Ltd., II*, 64 B.R. 656, 662 (E.D.N.C.

28

1986); *In re Coastal Equities, Inc.*, 39 B.R. at 308. Also encompassed have been bankruptcy referees, masters, and certain attorneys. *See York Int'l Bldg., Inc.*, 527 F.2d at 1068. Through what the U.S. Court of Appeals for the Eleventh Circuit calls the "functional equivalent" of a court-appointed officer like a trustee, receiver, manager of property, or debtor in possession, others beyond those delineated in § 959(a) have been determined to be an officer of a bankruptcy or federal court. *See Lawrence v. Goldberg*, 573 F.3d 1265, 1269-70 (11th Cir. 2009) (*Barton* Doctrine applies to officers of the court and those who are approved by the court and function as the equivalent of court-appointed officers, such as the trustee's counsel and investigators); *see also Lowenbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 321 (6th Cir. 2006); *Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*), 421 F.3d 963, 973 (9th Cir. 2005). Conversely, a debtor not serving in the capacity of a debtor in possession – such as a Chapter 9 debtor – has not and is not an officer of the bankruptcy court. *In re Weibel, Inc.*, 176 B.R. at 212; *In re Pich*, 99-21386, 2000 WL 33716964, at *3 (Bankr. D. Idaho Feb. 24, 2000); *In re Dynamo, LLC*, No. 08-27675 RTL, 2011 WL 2038971, at *7 (Bankr. D.N.J. May 24, 2011).

This is partially caused by the absence of a bankruptcy estate in a Chapter 9 case because 11 U.S.C. § 541, which both creates an estate and specifies the properties in the estate, is not incorporated into Chapter 9 by 11 U.S.C. §§ 103(f) and 901. *See New York City Off-Track Betting Corp.*, 434 B.R. at 141-42; *Valley Health Sys.*, 429 B.R. at 714; 6 *Collier on Bankruptcy* ¶ 901.04[13][a], [27] (16th ed. 2009). Differently from Chapters 7, 11, 12, and 13 of the Bankruptcy Code and Chapter 15 to a more limited degree, the absence of a bankruptcy estate in a Chapter 9 case results in there being no trustee, receiver, manager of property, or debtor in possession who is an officer of a United States court, let alone someone who is "appointed," within § 959(a)'s requirement. *See City of Stockton, Cal.*, 478 B.R. at 18; *New York City Off-Track Betting Corp.*, 434 B.R. at 141-42. Nor does the functional equivalent expansion of *Barton* by some federal courts implicate a Chapter 9 debtor because *Barton*'s coverage has always included only those acting on behalf of a bankruptcy estate's representative. *See Lawrence*, 573 F.3d at 1269-70; *Lowenbraun*, 453 F.3d at 321; *Crown Vantage, Inc.*, 421 F.3d at 973.

Assuming that § 959 would be interpreted by courts to also include the "functional equivalent" gives the broadest scope for § 959(a)'s exception, yet does not alter the outcome. The absence of such an estate in a Chapter 9 case results in no officer of a United States court performing acts or undertaking transactions in carrying on business connected with such estate property for 28 U.S.C. § 959(a) purposes. A Chapter 9 debtor does not meet the dual requirements of § 959(a) or (b) because it is not such an officer and, therefore, cannot be "appointed" within either subsection of § 959.[30]

Returning for further consideration of the implications of the absence of a bankruptcy estate in a Chapter 9 case allows one to see past the apparent similarities between a municipal

---

[30]    This Court is simply assuming for purposes of argument that the "functional equivalent" concept may be used by courts in 28 U.S.C. § 959(a) context, not that it has or should be. The reality is that numerous cases have assumed that 28 U.S.C. § 959(a) may apply when a bankruptcy trustee has not been "appointed" by a federal court. *See, e.g.*, *McKenzie*, 476 B.R. at 529-31; *Herrera*, 472 B.R. at 850-51; *Lickman*, 297 B.R. at 203-05. For courts such as these, § 959's use rests solely on the trustee, receiver, etc. being "officers of the court," not having been "appointed" by a court of the United States.

and other types of bankruptcy cases that create the appearance of justification for why 28 U.S.C. § 959(a) may be utilized to overcome the *Barton* Doctrine in an action against a Chapter 9 debtor. As partially discussed, one who is a municipal debtor is unlike a trustee, manager, or debtor in possession under other chapters of the Bankruptcy Code, who are officers of the court.

From the molecular and definitional vantage point, Jefferson County is not an officer of a court of the United States within what is required for § 959(a). Moreover, for purposes of § 922(a)(1), the inapplicability of § 959(a) is more evident with respect to inhabitants of a municipality. Section 959(a)'s language does not encompass inhabitants of a debtor qua inhabitant. When it comes to officers of a municipality such as the Jefferson County Commissioners, it is a certainty that they are not trustees or receivers. Nor, as discussed in this subdivision of this opinion, can they be debtors in possession as that concept is utilized under our bankruptcy laws. The only remaining capacity is that of a manager of property whose meaning has not been fleshed out by case law authority. However and using the historical context from which the *Barton* Doctrine and 28 U.S.C. § 959 have been implemented in federal courts, they were developed to address a court officer's holding or dealing with property held in *custodia legis,* not an owner of property taking acts or entering into transactions with his/her/its property. *See Barton*, 104 U.S. at 134-35. Title 28 U.S.C. § 959(b)'s wording adds support to this status by its qualification that the actions of such trustee, receiver, manager of property, or debtor in possession be "in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." Joined with this is the framework of § 959(a)'s usage of trustee, receiver, and debtor in possession, which are meant to be an officer of a federal court exercising control over the debtor's property. Again, not one considered legally separate and distinct from them such as a debtor in the status as only the debtor, which is that of a Chapter 9 debtor like Jefferson County.

For 28 U.S.C. § 959(b), the foregoing points for why § 959(a) is inapplicable in a Chapter 9 bankruptcy are augmented by the fact that § 959(b) has retained the "appointed" wording in a different manner: "a trustee, receiver or manager *appointed* in any cause pending in any court of the United States." A Chapter 9 debtor is simply not appointed by a federal court. Furthermore, the concept that the United States can require a state or its municipal body, which is merely a delegation to a subpart of a state, to comply with a state's laws via a federal statute is, at a minimum, inconsistent with, if not in derogation of, a state's sovereignty, see 11 U.S.C. §§ 903, 904, and the Constitution, specifically the Tenth Amendment. *See New York City Off-Track Betting Corp.*, 434 B.R. at 144.

## b. No Control = Dual Sovereignty

There is more of a distinction than just "officer" for "appointing" purposes. A debtor in possession, trustee, and others acting as officers of a bankruptcy court in Chapters 7, 11,12, 13, & 15 of the Bankruptcy Code are at "at all times [subject] to the control of the court. And in operating the business it had to have 'authorization by and subject to the control of the court.'" *City of New York v. Rassner*, 127 F.2d 703, 705-706 (2d Cir. 1942) (citations omitted). As the *Power-Pak* court detailed in its opinion,

> [t]he debtor-in-possession, like a trustee, is an officer of the bankruptcy court *subject to the Bankruptcy Judge's complete power to control. In other words, a debtor-in-possession has no power except such as the court may allow. In exercising his exclusive authority over the debtor [-in-possession] and its property by direction of the activity of the trustee or debtor-in-possession . . .*

*Power-Pak*, 433 F. Supp. at 687 (emphasis added) (citing *Rassner*, *Moore v. Linahan*, 117 F.2d 140 (2d Cir. 1941), and *In re Standard Commercial Tobacco Co.*, 34 F. Supp. 304, 308 (S.D.N.Y. 1940)). The same is not the case for a Chapter 9 debtor.

A Chapter 9 debtor such as Jefferson County retains not just full title over its property, it also keeps the same degree of control over it in a bankruptcy case along with complete control over its property's operations without restrictions on the ability to sell, use, or lease it. *New York City Off-Track Betting Corp.*, 434 B.R. at 142; *Valley Health Sys.*, 429 B.R. at 714. This retention of control over its property, the *res*, has been incorporated into 11 U.S.C. § 904 along with other restrictions placed on a bankruptcy court's interference with a municipal debtor's powers under our system of dual sovereignty inherent in federalism.

The municipal debtor's retained authority was considered by the Supreme Court of the United States in *United States v. Bekins*, 304 U.S. 27 (1938), which upheld the forerunner of the current Chapter 9. As part of its discussion, the Supreme Court in *Bekins* quoted from the report of the Committee on the Judiciary of the House of Representatives regarding the earlier version of what has, with modifications not relevant for this discussion, become Chapter 9 (Chapter X as it is referenced in *Bekins*) and set forth that points of the Committee in its report were well taken. In particular, one "well taken" point was "no control . . . over that property and those revenues of the petitioning agency necessary for essential governmental purposes is conferred by the bill." *Bekins*, 304 U.S. at 50-51; *see City of Stockton, Cal.*, 478 B.R. at 18. The absence of such control was and remains pivotal in multiple respects.

Absence of a federal court's control is added evidence that a Chapter 9 debtor is not an officer of the bankruptcy court. Another is that the *Bekins* Court viewed the restraints on control as an essential justification for upholding the municipal bankruptcy provisions it had under consideration. 304 U.S. at 50-51. This was part of its recognition of our duel sovereignty governmental structure and its Constitutional incorporation.

Consistent with the Tenth Amendment's reservation of powers to states is 11 U.S.C. § 904's demarcation that without a municipal debtor's consent, a bankruptcy court may not interfere with any of its political or governmental powers, any of its property or revenues, or its use or enjoyment of any income-producing properties. 11 U.S.C. § 904(1)-(3). *See, e.g.*, *In re Cnty. of Orange*, 179 B.R. 185, 189-90 (Bankr. C.D. Cal. 1995). Added to § 904 is 11 U.S.C. § 903. Among other things, it restricts a Chapter 9 debtor's ability to consent. 11 U.S.C. § 903; *see also Jefferson Cnty.*, 474 B.R. at 276. All of these have been designed to retain as and to the extent called for in our Constitution the separateness of states and their subdivisions from that of the United States government.

31

Just why this federalism structure precludes application of 28 U.S.C. § 959 to suits by and against a Chapter 9 debtor is revealed by one example. Should a Chapter 9 debtor be an officer of a federal court, the federal court would, of necessity, have the ability to interfere with, and even exercise control over its properties, *see, e.g., Rassner*, 127 F.2d at 705-06; *Power-Pak*, 433 F. Supp. at 687; *Standard Commercial Tobacco Co.*, 34 F. Supp. at 308, in derogation of what § 904 has been designed to avoid and what the Constitution and the *Bekins* Court require. This control springs from being an officer of a United States court. *See Rassner*, 127 F.2d at 705-06; *Power-Pak*, 433 F. Supp. at 687; *Standard Commercial Tobacco Co.*, 34 F. Supp. at 308.

From the bigger picture point of view, it is due to the dual sovereignty structure under the Constitution that 11 U.S.C. § 959(a) is inapplicable to a Chapter 9 municipality's ongoing operations of its properties such as Cooper Green. Jefferson County may not be an officer of this bankruptcy court or other federal court for 11 U.S.C. § 959(a)'s exclusion from the *Barton* Doctrine and from the automatic stays of 11 U.S.C. §§ 362(a) and 922(a)(1).

All of these factors represent why neither portion of 28 U.S.C. § 959 is available for use in a municipal bankruptcy case in the manner the courts of the United States have applied it to trustees, receivers, and debtors in possession existing in cases under another chapter of the Bankruptcy Code to allow suits against them without bankruptcy court authorization and without modification of an automatic stay.[31] In this Jefferson County matter, 28 U.S.C. § 959 does not enable the City Parties to either make the Automatic Stays inapplicable to their proposed conduct or avoid the necessity for their modification.

### 3. Even if, No Matter

Should the 11 U.S.C. § 959(a) be found to apply in the same manner as in a non-municipal debtor context, it does not assist the City Parties in their positing that § 959(a) stands for the proposition that "post petition causes of action against the debtor are not subject to the automatic stay." Doc. 1353 at 20. Section 959(a) does not create such a blanket exception to the Automatic Stays. *See, e.g., In re Cinematronics, Inc.*, 111 B.R. 892, 897-98 (Bankr. S.D. Cal. 1990); *In re Television Studio Sch. of New York*, 77 B.R. 411, 412 (Bankr. S.D.N.Y. 1987). At least one court has held that where, as here, the post-petition action seeks to exercise control over property of the estate, § 362(a)(3) continues to apply. *Cinematronics,* 111 B.R. at 897-98 (obtaining a temporary restraining order in state court and enforcing it against trustee was action to obtain property of the estate subject to § 362(a)(3)).

Further, as the *Television Studio* court explained, the statute itself gives the court authority to limit suits when they will impede the reorganization proceedings:

---

[31]    The Court is aware that its treatment of § 959 raises issues with respect to the scope of the application of the *Barton* Doctrine in a Chapter 9 case. However, it need not consider this for resolution of this matter. Moreover, its consideration of any modified application of *Barton* would not alter this Court's outcome regarding 28 U.S.C. § 959.

32

The first sentence is intended to render debtors-in-possession amenable to suit in a non-appointing forum on causes of action arising in the ordinary activities of the company in reorganization. . . .

The policy behind the second sentence, however, is to limit the seemingly unfettered power to bring suit against a debtor-in-possession, where to do so would significantly interfere with the orderly administration of the debtor's estate. Thus, while it is essential to allow most of these suits to proceed without leave, there will inevitably be instances when to allow a suit of this type would substantially impede the reorganization of the debtor. As a result, Congress provided the second clause of section 959(a) which empowers the appointing court to use its discretion so as to avoid an unjust result. The standard which has been employed under section 959(a) is that the bankruptcy court must exercise sound discretion and find the action would embarrass, burden, delay, or otherwise impede the reorganization proceedings.

77 B.R. at 412 (internal quotations and citations omitted).

In this case, just as in *Cinematronics*, the City Parties' proposed action seeks to exercise control over property of the debtor. *See supra* at V.A. Even if it did not, though, under the *Television Studio* standard, it is clear to the Court that the proposed action, which seeks to pursue an unavailable claim and remedy, would unnecessarily burden, delay, and impede this Chapter 9 case.[32] Added onto all of this is that implicit in 28 U.S.C. § 959(a) is the well-established rule that one must have, at a minimum, a colorable cause of action, not – as in the City Parties-Jefferson County dispute – no cause of action. Absent such a cause of action, the City Parties' § 959(a) argument is unsustainable.

Similarly, there is no merit to the City Parties' contention that § 959(b) precludes the County from closing the Medical Services at Cooper Green. Section 959(b) mandates only that the debtor in possession operate its property "according to the requirements of the valid laws of the State." As discussed at length elsewhere in this opinion, nothing in the valid laws of Alabama that have been cited by the City Parties requires the County to operate a hospital or a particular program for the provision of indigent health care. *See supra* at IV.B.1. So too, nothing in AHCRA requires – indeed there is not even a hint – that a "new structure for the funding of the delivery of healthcare services to the indigent" exist or be implemented before a county may cease providing care such as the Medical Services in a county-owned medical facility. The only arguable AHCRA-founded claim that one may assert is for reimbursement or payment of certain medical services provided – not the how, when, and by whom such services are provided. As such, an AHCRA-premised claim or cause of action has nothing to do with the County's management and operation of Cooper Green.

What this recognition regarding AHCRA means is that assuming 28 U.S.C. § 959 applies to a municipal entity, 28 U.S.C. § 959(b) does not pertain to the County's cessation of the Medical Services. The outcome is that no failure by the County to comply with AHCRA exists,

---

[32]   The United States Court of Appeals for the Eleventh Circuit case the City Parties cite is inapposite as it does not relate to the automatic stay. *See In re N.P. Mining Co.*, 963 F.2d 1449 (11th Cir. 1992).

and § 959(b) is not a basis on which the City Parties may sidestep the Automatic Stays and file a suit against Jefferson County.[33]

## VI.  Stay Relief

### A.  Absent a Cause of Action, No Modification.

Section 362(d) allows the Bankruptcy Court to grant relief from the automatic stay for "cause."  "Cause" is not defined in the Bankruptcy Code.  "Because there is no clear definition of what constitutes "cause," discretionary relief from the stay must be determined on a case by case basis."  *In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985); *see also In re S. Oakes Furniture, Inc.*, 167 B.R. 307, 308 (Bankr. M.D. Ga. 1994).  The party opposing the stay bears the burden of persuasion on all issues except equity.  11 U.S.C. § 362(g); *In re Caves*, 309 B.R. 76, 79 (Bankr. M.D. Ga. 2004); *see also In re Allstar Bldg. Prods., Inc.*, 834 F.2d 898, 900 (11th Cir. 1987).  However, the moving party must first make a prima facie showing that it is entitled to the relief requested.  *See Allstar*, 834 F.2d at 900; *Caves*, 309 B.R. at 79.

To determine whether "cause" exists to lift the stay and allow a suit to proceed in a non-bankruptcy forum, a court typically analyzes whether (1) any great prejudice to either the bankrupt estate or the debtor will result from continuation of a civil suit, (2) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (3) *the creditor has a probability of prevailing on the merits of its lawsuit.  Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) (emphasis added); *Caves*, 309 B.R. at 80; *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D.Ill.1986).

In this case, the debtor would suffer prejudice by allowing the City Parties to bring their proposed action because it would delay the process of formulating and filing a Chapter 9 plan by engaging the County's resources in a state court action designed to restrict the County's ability to control the disposition of Cooper Green.  The City Parties, on the other hand, would not suffer hardship from not being permitted to pursue the proposed action because the relief to be sought is simply not available under AHCRA or any other Alabama law relied on by them.  *See supra* at IV.B.1. and 2.  Also, there is no evidence that the County has not met or intends to not meet its payment obligation under AHCRA.

With respect to the third factor, and although the weight afforded to each of the three factors varies based on the circumstances of each case, a creditor must have a probability of prevailing on the merits in order for the automatic stay to be lifted to pursue litigation in a non-bankruptcy forum.  *See Gindi*, 642 F.3d at 873; *see also In re Veal*, 450 B.R. 897, 914-15 (B.A.P. 9th Cir. 2011) (party seeking stay relief must have a colorable claim); *Grella*, 42 F.3d at 34 (on a motion for relief from stay, court looks at whether proposed claim is colorable, or sufficiently plausible, to support relief from stay).  Here, the City Parties cannot prevail on the merits of their proposed claims because the relief they seek is simply not available under AHCRA or under Alabama law governing *quo warranto* and mandamus actions.  More

---

[33]      As a result of this Court's 28 U.S.C. § 959 holding, it does not consider whether a municipal debtor can be within the "carrying on business" requirement of § 959(a).

basically, their proposed action does not state a claim upon which relief can be granted. *See In re Archdiocese of Milwaukee*, No. 11-20059-SVK, 2012 WL 6107096, at *2 (Bankr. E.D. Wis. Dec. 10, 2012) ("A claim is colorable if it could survive a motion to dismiss," which means it is "plausible on its face.").

## B. Injury and Damages: Without Both, No Recourse

Lastly and importantly, the City Parties lack the legally recognized injury and damages necessary to succeed on their proposed state court claims.[34] All maintainable lawsuits require that the party seeking relief have both a legally recognized injury – the liability portion of the equation – and a legally cognizable damage or remedy – the damage part of the equation. Without both of these mandatory requirements, no cause of action exists. *See Twine v. Liberty Nat. Life Ins. Co.*, 311 So. 2d 299, 302 (Ala. 1975). Sometimes these requisites are referred to as *damnum absque injuria,* also called *damnum sine injuria,* and *injuria absque damno*. The first is that a party with damages has no legal remedy where the injury is not one considered by the law to be wrongful. *Black's Law Dictionary* 420-21 (8th ed. 2004); Howell, Ally, 1 Ala. Pers. Inj. & Torts § 1:2 (Aug. 2012) (quoting *Alabama Power Co. v. Ickes*, 302 U.S. 464, 478-79 (1938)); *see also Bediako v. Am. Honda Fin. Corp.*, 850 F. Supp. 2d 574, 582 (D. Md. 2012) (collecting cases). The other is the converse: Even though one has suffered a legally recognized injury, no remedy is available when no legally recognized damage has been incurred. *Black's Law Dictionary* 801 (8th ed. 2004); Howell, Ally, 2 Trial Handbook for Ala. Law. § 38:1 (3d ed.); *see also State v. Prop. at 2018 Rainbow Drive known as Oasis*, 740 So. 2d 1025, 1027 (Ala. 1999) (a party lacks standing when they have not alleged they have suffered an injury to a legally protected right). Both of these principles are followed by Alabama's courts. *See Twine*, 311 So. 2d at 302 ("There can be no legal claim for damages to the person or property of anyone except as it follows from the breach of a legal duty, and whatever damage results from doing that which is lawful does not lay the foundation of an action.") (quotations and citations omitted); *see also Ranger Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 410 So. 2d 40, 42 (Ala. 1982) (no claim where there is no legally accepted injury).

In this matter and as discussed in the portion of this opinion regarding AHCRA, the City Parties propose to bring in an Alabama court a lawsuit founded on claims for which there is no legally accepted injury and hence no liability. AHCRA is a statute that sets forth the payment via reimbursement of specified out-of-county hospitals, those denominated regional referral hospitals, for medical care provided to qualifying resident indigents of a county other than the one in which the hospital is located. *See* Ala. Code § 22-21-292-297. Once more, it has nothing to do with emergency care or inpatient care for in-county treatments accorded to a county's indigent residents. Nor does it or any other portion of Title 22, Chapter 21 require – as the City Parties urge – a new structure or plan for healthcare for indigent residents to be in place before

---

[34]     Although the County posits in its memorandum regarding the Stay Motion that the City Parties do not have standing to assert the claims and causes of action that they desire to pursue in an Alabama court, this Court will not address the standing issue under Alabama's cases in the way the County presents its standing arguments. The reason is that some of the Alabama cases discussing standing conflate it with the real party in interest requirement. *See, e.g., City Council of City of Prichard v. Cooper*, 358 So. 2d 440 (Ala. 1978); *Battle v. Alpha Chem. & Paper Co.*, 770 So. 2d 626, 634 n.3 (Ala. Civ. App. 2000) (noting that the Court of Civil Appeals has sometimes conflated the two concepts). By looking at the issue from a different legal perspective, the same result is achieved without having to dissect the Alabama case law mix of the real party in interest concept from that of standing.

the Medical Services being eliminated by the County at Cooper Green may be ended. The City Parties' complained of conduct by Jefferson County is not proscribed by any provision of AHCRA, the *quo warranto* and mandamus case law, or any other Alabama law cited to this Court. More simply, the legally recognized liability part of the equation for maintenance of a lawsuit is missing.

The same is so for the damage or remedy portion of the equation. There is no evidence that Jefferson County has failed to meet or intends to not comply with its payment/reimbursement obligation for medical care for indigent care services to the extent required by AHCRA. In fact, the City Parties admit as much by their argument that what they want is to preempt termination of the emergency and inpatient Medical Services until a replacement structure or plan is implemented. Nor have the City Parties presented any claim for damages under the procedures required by AHCRA. *See Health Care Auth. of City of Huntsville v. Madison Cnty.*, 601 So. 2d 459, 462 (Ala. 1992) (claims not properly presented were barred). Again, the damage/remedy part of the equation for maintenance of a lawsuit is absent.

Whether one uses the principle of standing or the two parts of what is required to maintain a lawsuit, the outcome is the same. The City Parties have no legally cognizable claim or cause of action under AHCRA or through a writ of *quo warranto* or mandamus against Jefferson County arising from its decision to end emergency room and inpatient medical services to qualified, resident indigents. *See Prop. at 2018 Rainbow Drive known as Oasis*, 740 So. 2d at 1027 (a party lacks standing when they have not alleged they have suffered an injury to a legally protected right).

Courts routinely deny stay relief where, as here, a creditor has little to no probability of success on the merits. *See, e.g.*, *Gindi*, 642 F.3d at 872, 874-75 (upholding bankruptcy court's refusal to lift stay where creditor had not demonstrated likelihood of success on the merits); *In re Flintkote Co.*, 475 B.R. 400 (Bankr. D. Del. 2012) (because the movant had no viable cause of action against the debtors under any of the theories it planned to pursue, it was not entitled to relief from the automatic stay for purposes of pursuing such causes of action in a non-bankruptcy forum); *Caves*, 309 B.R. at 80-81 (denying a motion for relief from stay where creditor did not have a probability of succeeding on the merits of its state RICO claims against debtor). The same result is appropriate here because there is no likelihood that the City Parties will prevail on the merits.

The balance of the three factors in this case – particularly the City Parties' inability to show any likelihood of success on the merits of their proposed claims – mandates this Court's conclusion that the City Parties are not entitled to the requested relief. This Court will not modify the Automatic Stays.

## VII.    Conclusion

   Based on the foregoing findings of fact and conclusions of law, the City Parties' Motion for Abstention is denied with respect to the Motion for Relief from Stay.  The City Parties' Motion for Determination of Applicability of the Automatic Stay, or, in the Alternative, Motion for Relief from Stay is also denied with respect to modification of the automatic stays of 11 U.S.C §§ 362(a) and 922(a), and the Court holds that a suit by the City Parties in a court of the State of Alabama seeking a determination of the scope and applicability of AHCRA to Jefferson County's decision to cease providing the Medical Services is stayed under 11 U.S.C. § 362(a)(3) and an AHCRA-based action against the Jefferson County Commissioners is stayed by 11 U.S.C. § 922(a)(1).  A separate order incorporating the Court's decision will be entered contemporaneously with this Memorandum Opinion.


**Dated:  December 19, 2012**

              **Thomas B. Bennett**
              **U.S. Bankruptcy Judge**

Case 11-05736-CRJ9    Doc 1524    Filed 12/19/12    Entered 12/19/12 11:48:50    Desc
Main Document        Page 37 of 37