UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **JEFFERSON COUNTY, ALABAMA** ) | Case No.: 11-5736-TBB |
| a political subdivision of the State of ) | |
| Alabama, ) | |
| ) | Chapter 9 |
| Debtor. ) | |

### MEMORANDUM OPINION ON THE AUTOMATIC STAY AND THE ASSURED ACTION

#### I. Introduction

Creative lawyering has its merits. Sometimes, it allows one to solve what previously had been an intractable legal issue. Other times, it is a bane masking problems inherent in what creativity's means is attempting to accomplish. This is a case of the second sort demonstrating the downside of creativity. What is involved is an attempt to avoid the shield afforded debtors by the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362(a), based on Jefferson County, Alabama ("the County") not having been sued by the plaintiff, Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance, Inc. ("Assured") in one of two lawsuits pending in the same New York state court, before the same judge, with the same counsel and coordinated discovery, involving virtually identical claims that arose from the same, critical factual background.

The question presented to this Court is whether the degree of sameness between these two lawsuits is sufficient for the automatic stay to apply when the only meaningful difference is that the County is a defendant in one suit and a third-party defendant in the other. Viewed from another perspective, the issue is whether Assured's creative pleading is enough to avoid application of 11 U.S.C. § 362(a)'s shield. The Court holds that it is not. The automatic stay applies to Assured's action against JPMorgan in New York state court ("Assured Action"), and there is no cause to modify the stay to allow the Assured Action to proceed.

#### II. The Assured and Syncora Actions – The Sameness

The United States District Court for the Northern District of Alabama entered a consent decree in 1996 that required Jefferson County, Alabama to remediate its Sewer System ("Sewer System"). The County proceeded to raise billions of dollars for the development of its sewer system by issuing warrants secured exclusively by revenue generated by its Sewer System, which were underwritten by JPMorgan Chase Bank, N.A. and its affiliate, J.P. Morgan Securities LLC (collectively, "JPMorgan"). The County also entered into several interest rate swap transactions with JPMorgan in relation to these warrants. Between 2002 and 2005, the County and JPMorgan made several agreements with Assured and Syncora Guarantee Inc. ("Syncora")

in which Assured and Syncora issued policies that insured against the County's failure to pay principal and interest on the warrants. Assured also reinsured over $360 million in policies originally issued by Syncora and Financial Guaranty Insurance Company ("FGIC"). *See* Assured's Statement of Legal Issues, at 4, Nov. 15, 2011 (Doc. 146).

To obtain these policies, the County and JPMorgan allegedly made statements and representations to Assured and Syncora that purposefully misrepresented and concealed information about bribes that JPMorgan had paid to County officials. Additionally, the County and JPMorgan allegedly failed to disclose the 2003 Krebs Report, an analysis of the Sewer System's ability to generate revenues and needed sewer rate modifications, to Assured and Syncora.

Syncora's credit rating was downgraded in 2008 partially as a result of its overexposure to subprime residential mortgages. This downgrade triggered a modified and accelerated principal repayment schedule in the Sewer System warrant indebtedness. In addition, starting in April 2008, the Sewer System failed to generate sufficient revenues to meet the payment obligations on its warrants. This confluence of events caused the County to default on its obligations to warrantholders. The SEC subsequently censured JPMorgan for its involvement in the financing of the Sewer System, and several Jefferson County Commissioners were convicted of crimes relating to its rehabilitation and improvements.

On April 29, 2010, Syncora filed a complaint against JPMorgan and the County in the Supreme Court of the State of New York, County of New York ("New York court") that alleged fraud and aiding and abetting fraud in connection with the financing of the Sewer System ("Syncora Action"). Syncora opened its Complaint with the following paragraph:

> This action arises out of one of the biggest cases of municipal corruption in United States history and a massive fraud perpetrated by Defendants Jefferson County and JPMorgan in connection with billions of dollars of municipal debt that the County, with the aid of JPMorgan, issued to finance a sewer system remediation project. As part of an unprecedented scheme of corruption and abuse, which has resulted in over 20 criminal convictions (including several County Commissioners), and multiple SEC enforcement actions (including ones against JPMorgan and two of its former senior bankers), Jefferson County and JPMorgan fraudulently induced Syncora, a New York-based insurer, to provide over $1 billion in insurance coverage for certain of the County's municipal debt.

*Syncora Guarantee Inc. v. Jefferson Cnty., Ala.*, No. 601100/10, Compl. ¶ 1 (N.Y. Sup. Ct. Apr. 29, 2010) ("Syncora Complaint"). The Syncora Complaint contains four causes of action: "Fraud Related to Bribes (2002 Policy, 2003 Policy, and Surety Bond) (Against Jefferson County and JPMorgan)"; "Aiding and Abetting Fraud Related to Bribes (2002 Policy, 2003 Policy, and Surety Bond) (Against Jefferson County and JPMorgan)"; "Fraud Related to Krebs Findings (2003 Policy and Surety Bond) (Against Jefferson County and JPMorgan)"; and "Aiding and Abetting Fraud Related to Krebs Findings (2003 Policy and Surety Bond) (Against Jefferson County and JPMorgan)." Syncora Compl. ¶¶ 108-53. The Syncora Complaint asks the

New York court to find "Defendants jointly and severally liable to Syncora for compensatory and punitive damages," among other requests. Syncora Compl. at p. 43.

On June 16, 2010, Assured (using the same law firm as Syncora) filed a Complaint against JPMorgan – but not the County – in the New York court, alleging fraud and aiding and abetting fraud in connection with the financing of the Sewer System ("Assured Action"). Assured opened its Complaint with the following paragraph:

> This action arises out of one of the biggest cases of municipal corruption in United States history and a massive fraud perpetrated by JPMorgan and Jefferson County, Alabama ("Jefferson County" or the "County") in connection with billions of dollars of municipal debt issued by the County and underwritten by JPMorgan to finance a sewer system remediation project. As part of an unprecedented scheme of corruption and abuse, which has resulted in over 20 criminal convictions (including several County Commissioners), and multiple SEC enforcement actions (including ones against JPMorgan and two of its former senior bankers), JPMorgan and the County fraudulently induced Assured, a New York-based insurer, to provide over $378 million in insurance coverage for Jefferson County municipal debt.

*Assured Guar. Mun. Corp. v. JPMorgan Chase Bank, N.A.*, No. 650642/2010, Compl. ¶ 1, (N.Y. Sup. Ct. June 16, 2010) ("Assured Complaint"). The remainder of the Assured Complaint repeats many of the same allegations – often verbatim – from the Syncora Complaint. The Assured Complaint contains two causes of action, which mirror the first two causes of action in the Syncora Complaint: "Fraud" and "Aiding and Abetting Fraud." Assured Compl. ¶¶ 28-31. The main difference between the two Complaints, apart from Assured's decision not to name the County as a party, is the absence of discussion about the Krebs Report in the Assured Complaint. The facts section in the Assured Complaint does not discuss the Krebs Report, and the third and fourth causes of action in the Syncora Complaint, which are premised on the Krebs Report, are not present in the Assured Complaint. The remaining variations between the two Complaints mostly reflect the differing procedural postures of the cases. Finally, much like the Syncora Complaint, the Assured Complaint asks the court to find "JPMorgan liable to Assured for compensatory and punitive damages," among other requests. Assured Compl. at p. 32.

Both the Assured and Syncora Actions are assigned to the same judge in the New York court. On July 28, 2010, JPMorgan filed a motion to dismiss the Assured Complaint, but the New York court denied this motion. JPMorgan then filed a third-party complaint in the Assured Action on February 10, 2011, in which it denied that Assured is entitled to any relief, but if any liability were to be imposed upon it, JPMorgan asserted two cross-claims against the County for indemnification (both contractual and common law) and contribution. Jefferson County filed a motion to dismiss JPMorgan's third-party complaint on April 1, 2011, but the New York court denied that motion.

JPMorgan's arguments for contractual indemnification are based on provisions in various warrant purchase agreements between JPMorgan and the County. In one such agreement, the

3

County agreed to indemnify J.P. Morgan Securities LLC, along with its members, officers, and employees, among others, against:

> any and all losses, claims, damages or liabilities caused by . . . any untrue statement or alleged untrue statement of a material fact contained in the Official Statement or caused by any omission or alleged omission from the Official Statement of any material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading.

Objection of JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC to the Motion of Assured Guaranty Municipal Corp. for a Determination that the Automatic Stay Does Not Apply or For Relief From the Automatic Stay ("JPMorgan Br."), Ex. 9 § 11(a) (Doc. 871-11). Other standby warrant purchase agreements contain a similar provision, in which the County agreed to indemnify JPMorgan Chase Bank, N.A. along with its officers and employees "from and against any and all claims, damages, losses, liabilities, reasonable costs or expenses whatsoever that [JPMorgan Chase Bank, N.A.] may incur . . . that arises [sic] out of the transactions contemplated by this Agreement or the Related Documents . . . ." JPMorgan Br., Ex. 10 § 9.03(b).

Assured, Syncora, JPMorgan, and the County agreed to coordinate discovery for efficiency purposes in the Assured and Syncora Actions, but the discovery in these cases was and remains nonetheless substantial. During the pre-bankruptcy period, the County agreed to cooperate with Assured's document requests and produced more than 370,000 pages of documents. On October 6, 2011, the parties informed the New York court that they had agreed to a framework for settlement negotiations, and had therefore reached an informal standstill on the Assured and Syncora Actions. At the time of this standstill, document discovery was unfinished, third-party document discovery had been minimal, depositions and expert discovery had yet to commence, and the parties still had unresolved discovery disputes. Further, at the time of the standstill, the County had already spent over $2.5 million from its limited General Fund to defend itself in the Assured and Syncora Actions.

On November 9, 2011, the County filed its Chapter 9 petition and scheduled approximately $4.23 billion dollars of debt, with approximately $3.14 billion of that debt attributable to the Sewer System. The bankruptcy filing triggered imposition of the automatic stays of 11 U.S.C. § 362(a) and 11 U.S.C. § 922(a), and Assured, Syncora, JPMorgan, and the County informed the New York court that their informal standstill would continue until they reached a resolution of whether the stay affects the Assured and Syncora Actions. Accordingly, Assured filed a motion in the County's bankruptcy case for this Court to determine that the automatic stay does not apply to the Assured Action, or alternatively, to modify the stay and allow the Assured Action to continue ("the Assured Motion") (Doc. 748). Both the County and JPMorgan objected to the Assured Motion.

### III. The Assured Action is Subject to the Automatic Stay of 11 U.S.C. § 362(a)(1)

Section 362(a)(1) automatically stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Generally, the automatic stay of § 362(a)(1) applies only to certain actions taken or not taken with respect to a debtor, and not with respect to such action or inaction affecting other parties. *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). However, courts have recognized that certain "unusual circumstances" warrant applying the § 362(a)(1) stay to proceedings against a non-debtor defendant where such an application furthers the purposes behind the stay. *See id.*; *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."). Such unusual circumstances have been found (1) when an indemnification or contribution relationship creates an identity of interests between the debtor and the non-debtor defendant; (2) when the proceeding imposes a substantial burden of discovery on the debtor; or (3) when the proceeding would have a potential preclusive effect that forces the debtor to participate in the proceeding as if the debtor were a party. *See, e.g.*, *A.H. Robins*, 788 F.2d at 999; *Queenie, Ltd.*, 321 F.3d at 287; *Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.) (Johns-Manville I)*, 40 B.R. 219, 223-26 (S.D.N.Y. 1984); *Lesser v. A-Z Assocs. (In re Lion Capital Grp.)*, 44 B.R. 690, 702-04 (Bankr. S.D.N.Y. 1984).[1]

#### A. The Assured Action is at odds with the purposes behind the automatic stay and Chapter 9

In the context of determining whether specific "unusual circumstances" warrant extension of the automatic stay, it is important to consider the bigger picture at issue – the purposes behind the 11 U.S.C. § 362 automatic stay and Chapter 9 generally. As the House Report on the bill enacting the § 362 automatic stay succinctly explains,

---

[1] This Court notes that other courts have stayed actions involving non-debtor parties in a variety of procedural ways. Some courts have simply determined the 11 U.S.C. § 362(a) stay applies to non-debtors based on the considerations outlined above, *see, e.g.*, *In re QA3 Fin. Corp.*, No. BK11-80297-TJM, 2011 WL 2678591 (Bankr. D. Neb. July 7, 2011); *Maaco Enters., Inc. v. Corrao*, No. 91–3325, 1991 WL 255132 (E.D. Pa. Nov. 25, 1991), while other courts have extended the § 362 stay using 11 U.S.C. § 105, which allows a bankruptcy court "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." *See, e.g.*, *Sudbury, Inc. v. Escott (In re Sudbury, Inc.)*, 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992); *Johns-Manville I*, 40 B.R. at 226. Still other courts have held that a movant seeking relief pursuant to § 105 must do so through an adversary proceeding. *See, e.g.*, *In re Cincom iOutsource, Inc.*, 398 B.R. 223, 227 (Bankr. S.D. Ohio 2008).

As set forth in detail below, this Court holds that the automatic stay of 11 U.S.C. § 362(a)(1) and (a)(3) apply to the Assured Action. Alternatively, for those actions or proceedings requiring its extension, this Court is imposing the automatic stay. Whether the imposition may be accomplished without the use of 11 U.S.C. § 105, must be done in conjunction with § 105, or requires an adversary proceeding is not and need not be resolved. This Court reaches the same conclusion based on the circumstances presented regardless of whether it utilizes § 105, and, to the extent an adversary proceeding might be required, this Court would issue such relief consistent with this opinion if an adversary proceeding were to be filed.

> [t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.
>
> . . . The scope of [§ 362(a)(1)] is broad. All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. Proceeding in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals.

H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97. *See also* S. Rep. No. 95-989, at 49, 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835, 5840-41.

This "breathing spell" afforded by the stay is particularly important in the context of a Chapter 9 case:

> The two main benefits of a Chapter 9 filing are (1) the breathing spell provided by the automatic stay, and (2) the ability to adjust debts of claimants through the plan process. If the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan. This certainly was not the policy or intent of Congress in providing debt relief for municipalities through Chapter 9. It likewise was not the intent of California in authorizing its municipalities to use Chapter 9.

*Alliance Capital Mgmt. L.P. v. Cnty. of Orange* (*In re Cnty. of Orange*), 179 B.R. 185, 191 (Bankr. C.D. Cal. 1995), *rev'd in part on other grounds & remanded*, 189 B.R. 499 (C.D. Cal. 1995).

Courts routinely cite the purpose behind the automatic stay when applying it to non-debtors. *See, e.g.*, *Maaco Enters., Inc. v. Corrao*, No. 91–3325, 1991 WL 255132, at *2 (E.D. Pa. Nov. 25, 1991) (citing legislative history describing the broad application of the stay and holding that the stay "applies to suits against non-debtor defendants who are related to the debtor and to suits the resolution of which may have a significant impact on the debtor."); *Lomas Fin. Corp. v. Northern Trust Co.* (*In re Lomas Fin. Corp.*), 117 B.R. 64, 67-68 (S.D.N.Y. 1990) (allowing debtor's participation in lawsuit "would contravene the congressional intent of an automatic stay"); *Sudbury, Inc. v. Escott* (*In re Sudbury, Inc.*), 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992) (citing the purpose of the stay and noting that "Plaintiffs' actions would violate the spirit" of § 362).

6

In effectuating the purpose behind the stay, courts have declined to elevate form over substance. In a case similar to this one, a district court upheld a bankruptcy court's imposition of the stay in a suit against officers of the debtor where the allegations in the complaint were actually against the debtor. *Lomas Fin. Corp.*, 117 B.R. at 65-68. The court held that § 362(a)(1) applied to the action against the non-debtor defendants based on the indemnification agreement between the debtor and non-debtor defendants, the harm to the debtor's reorganization, and the potential for collateral estoppel. *Id.* at 66-68. The district court agreed with the bankruptcy court's conclusion that naming the non-debtors in the suit was merely a "transparent attempt . . . to end run the automatic stay." *Id.* at 68 (internal quotations and citation omitted).

Similarly, in *Kaiser Grp. Int'l, Inc. v. Kaiser Aluminum & Chemical Corp.* (*In re Kaiser Aluminum Corp., Inc.*), 315 B.R. 655 (D. Del. 2004), an adversary proceeding plaintiff argued that because only the insurance company, and not the debtor, was named as a defendant in the adversary proceeding, the automatic stay did not apply. 315 B.R. at 657. Both the bankruptcy and district courts disagreed, noting that who was named in the suit was not controlling. *Id.* at 658-59. The district court held

> KGI contends that its adversary action only names Travelers as a defendant, and therefore it is not a lawsuit against a debtor. The Court disagrees with KGI's position. The protection of the automatic stay extends to any action or proceeding against an interest of the debtor. The scope of this protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation.

*Id.* at 658; *see also Maaco Enters., Inc.*, 1991 WL 255132, at *2-3 (staying action against individuals who owned debtor franchise because it would "effectively be a judgment against the debtor").

In the context of the County's Chapter 9 case, Assured's position on the inapplicability of the automatic stay and in the alternative, for its modification, elevates form over substance. The Assured Action against JPMorgan and the Syncora Action against JPMorgan *and* the County are virtually identical. Even though Syncora directly named the County as a defendant and JPMorgan brought the County into the Assured Action as a third-party defendant, it is obvious that the County is a party in interest in both cases. Both the Assured and Syncora Complaints contain numerous material allegations implicating conduct by the County. Indeed, one of the two claims Assured asserts against JPMorgan is that it aided and abetted *the County's* fraud. In order to succeed on that claim, it will have to prove that *the County* committed the underlying fraud and that JPMorgan had actual knowledge of it and provided substantial assistance to advance the fraud's commission. *See, e.g.*, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) ("To establish liability for aiding and abetting fraud, the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.") (internal quotations and citations omitted).

Just as in the *Kaiser* and *Lomas* cases, the fact that the Assured Complaint does not actually name the County as a defendant is simply not controlling. As more fully detailed below, the claims against the County and JPMorgan are inextricably interwoven, and the County has an indemnification agreement with JPMorgan that could make it responsible for any recovery Assured wins against JPMorgan. *See infra* Section III.B. This relationship is augmented by Assured's reinsurance of some of Syncora's liability exposure to warrantholders, which, if the Assured Action continued, would effectively be litigation of the Syncora Action via the Assured Action.

Allowing the Assured Action to proceed would circumvent the purpose of the automatic stay. It would significantly infringe on the County's "breathing spell" by requiring it to expend significant time and resources defending its interests in the action. *See infra* at Section III.C. Moreover, Assured's fraud allegations may affect the claims allowance, subordination, and adjustment of debt processes in this Court. In fact, Assured might try to rely on a finding of fraud to advance its interests ahead of other creditors by turning its non-recourse contract claim into one against the County's General Fund, fundamentally altering the balance of the County's Chapter 9 case. The Assured Action also represents an attempt to fix the amount of Assured's claim against the County via outside litigation even though the bankruptcy court is the more efficient forum for making such a determination. *See McKesson Corp. v. El Paso Pharm., Inc.* (*In re El Paso Pharm., Inc.*), 130 B.R. 492, 496 (Bankr. W.D. Tex. 1991) (bankruptcy courts generally do not modify the automatic stay to allow parties to pursue claims adjudication in state court because it is not "as fast, as inexpensive, or as fair to the estate" as the claims allowance process and because of concerns about uniformity of decision within bankruptcy case).

In short, the automatic stay's application to the Assured Action furthers the purpose behind the stay by giving the County a true breathing spell and allowing the Chapter 9 adjustment process to move forward in a fair and orderly fashion. The "unusual circumstances" that support its application or extension to the Assured Action – the identity of interests between the County and JPMorgan, the discovery burden on the County, and the potential preclusive effect of the Assured Action – are further discussed in detail below.

### B. Identity of interests between the County and JPMorgan

Courts have held that proceedings against a non-debtor defendant should be stayed where there is such a close identity between the non-debtor defendant and the debtor that a judgment against the non-debtor defendant would in effect be a judgment against the debtor. *See, e.g., A.H. Robins*, 788 F.2d at 999; *Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc.*, No. 09-0249-WS-N, 2009 WL 2413664, at *1 (S.D. Ala. Aug. 3, 2009); *Sudbury, Inc.*, 140 B.R. at 464. A stay is appropriate where the claims against the debtor and non-debtor defendant are "inextricably interwoven," such as in the case of an indemnification agreement. *See E. Air Lines, Inc. v. Rolleston* (*In re Ionosphere Clubs, Inc.*), 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990) (internal quotations and citation omitted); *see also Queenie, Ltd.*, 321 F.3d at 287-88; *A.H. Robins*, 788 F.2d at 999; *Gulfmark Offshore, Inc.*, 2009 WL 2413664, at *1.

*A.H. Robins* is a seminal case that established the "unusual circumstances" exception allowing courts to stay a proceeding against a non-debtor defendant when that defendant is indemnified by the debtor. *See* 788 F.2d at 999. A.H. Robins Company manufactured and

8

Case 11-05736-CRJ9   Doc 1720   Filed 04/15/13   Entered 04/15/13 16:27:46   Desc
Main Document      Page 8 of 20

marketed the Dalkon Shield medical device in the early 1970s. *Id.* at 996. Many of A.H. Robins' customers filed product liability lawsuits against A.H. Robins alleging that they had been injured by the Dalkon Shield. *Id.* A.H. Robins filed a Chapter 11 petition while trying to defend itself against these suits, and upon filing, the automatic stay prevented the suits against the debtor from proceeding. *Id.* However, several plaintiffs wanted to sever their claims against A.H. Robins and continue their suits against the debtor's insurance company and several individuals involved in the production of the Dalkon Shield. *See id.* at 996-97, 1007-08. Although the automatic stay generally does not protect non-debtors, the Fourth Circuit explained that this rule is not without exception:

> [Section 362](a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants. . . . However, . . . there are cases [under 362(a)(1)] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants but . . . in order for relief for such non-bankrupt defendants to be available under (a)(1), there must be unusual circumstances and certainly something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties. This unusual situation, it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

*Id.* at 999 (internal quotations and citations omitted) Because A.H. Robins had liability coverage from its insurance company and because the individual co-defendants involved in the production of the Dalkon Shield were indemnified by corporate by-laws, state statutes, and the debtor's insurance agreement, the Fourth Circuit upheld the extension of the automatic stay because this case fell within the "unusual circumstances" exception. *Id.* at 997, 1007-09. The Fourth Circuit also explained one possible consequence of not applying the automatic stay in the context of such an indemnity relationship:

> Of course, if the indemnitee, who has suffered a judgment for which he is entitled to be absolutely indemnified by the debtor, cannot file and have allowed as an adjudicated claim the actual amount of the judgment he has secured but must submit his claim for allowance in the bankruptcy proceeding with the prospect that his claim may not be allowed in the full amount of the judgment awarded in favor of him, the indemnitee will be unfairly mulcted by inconsistent judgments and his contract of indemnity in effect nullified.

*Id.* at 1000.

9

Case 11-05736-CRJ9    Doc 1720    Filed 04/15/13    Entered 04/15/13 16:27:46    Desc
Main Document      Page 9 of 20

Since *A.H. Robins* – and contrary to the argument set forth by Assured,[2] courts have clarified that absolute indemnity is not required for the unusual circumstances exception to apply. Rather, the "possibility" of a right of indemnification is sufficient. *See Robert Plan Corp. v. Liberty Mut. Ins. Co.*, No. 09-CV-1930JS, 2010 WL 1193151, at *4 (E.D.N.Y. Mar. 23, 2010) ("given the possibility that the Officers had such an absolute right [of indemnification], the Bankruptcy Court properly protected the estate by staying the contempt case"); *see also In re Fiddler's Creek, LLC*, No. 9:10-bk-03846-ALP, 2010 WL 6618876, at *5 (Bankr. M.D. Fla. Sept. 15, 2010) (existence of "potential" indemnity and contribution claims was sufficient to apply unusual circumstances exception).

One particularly relevant case, *American Film Technologies., Inc. v. Taritero (In re American Film Technologies, Inc.)*, 175 B.R. 847, 851-55 (Bankr. D. Del. 1994), demonstrates that a court need not formally determine that a non-debtor defendant is indemnified by the debtor to apply the "unusual circumstances" exception. *See Am. Film*, 175 B.R. at 851-55. The plaintiff in *American Film* was a former officer and director of American Film Technologies, Inc., who sued the company and its officers and directors for fraud and breach of his employment contract. *Id.* at 848. The company subsequently filed a petition for Chapter 11 bankruptcy and sought a stay of the lawsuit against its officers and directors, who were to be indemnified for any such damages under the company's charter and by-laws. *Id.* at 848-49. The plaintiff argued that if the officers and directors had committed fraud, the applicable state laws prevented them from being indemnified by the debtor. *Id.* at 851, 854-55. The court rejected that argument, holding that the plaintiff's lawsuit "squarely implicate[d] [the debtor's] indemnification obligations" and that the "unusual circumstances" exception applied. *Id.* at 855.[3] *See also Sudbury*, 140 B.R. at 464 (applying the "unusual circumstances" exception even though there were "questions as to the enforceability of the indemnities" because of fraud on the part of individual officers and directors).[4]

---

[2] In its brief, Assured selectively quotes from *A.H. Robins* to create an overly narrow rule: "For there to be an identity of interest, at minimum, JPMorgan must establish an 'absolute' or 'automatic' right of indemnity. *See A.H. Robins*, 788 F.2d at 999 (stay may be applied to action against non-debtor where non-debtor 'is entitled to *absolute* indemnity by the debtor') (emphasis added) . . . ." Assured Motion at 15 (Doc. 748). *A.H. Robins*, however, did not state that absolute indemnity is a minimum requirement for "unusual circumstances" to exist, but mentioned it only as an "illustration." *A.H. Robins*, 788 F.2d at 999. And, as the Court notes, other courts interpreting *A.H. Robins* have not imposed such a requirement.

[3] In its Reply, Assured claims that the *American Film* "court only imposed the automatic stay because the non-debtor defendants *indisputably* had a right to indemnification for plaintiff's breach of contract claim." Assured Reply Br. at 6 n.4 (emphasis added). This summary of the case is not accurate. First, the court noted that the officers and directors were "presumably" indemnified under the contract claim; it did not "indisputably" settle this issue. *See Am. Film*, 175 B.R. at 851. As with the fraud claim, the contract claim remained a *potential* source of indemnification that had not yet been determined by a judge or jury. Second, the court found that the "California case" implicated the debtor's indemnification obligations, and that "California case" included both the fraud and contract claims. *See id.* at 855.

[4] Assured's contention that the stay cannot be applied in the case of joint tortfeasors is inapposite in this case because here the "debtor and a nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law." *Plessey Precision Metals, Inc. v. Metal Ctr., Inc.* (*In re Metal Ctr., Inc.*), 31 B.R. 458, 462 (Bankr. D. Conn. 1983); *see also Am. Film*, 175 B.R. at 853. In addition, JPMorgan's contribution claim survives regardless of the parties' fault. *See Corva v. United Servs. Auto. Ass'n*, 485 N.Y.S.2d 264, 265 (N.Y. App. Div. 1985) ("It is of course well established that New York law permits an apportionment of

10

JPMorgan and the County entered into several warrant purchase agreements that included indemnification provisions. In addition to these contract-based grounds for indemnification, JPMorgan has claimed that it should receive damages from the County based on its contribution and common law indemnification claims. The actions of the County and JPMorgan were closely intertwined while coordinating the financing of the Sewer System, and the alleged misconduct falls within the County's potential obligations for indemnification and contribution to JPMorgan.

Because of the bases on which these indemnification and contribution claims are premised, JPMorgan's interests are "inextricably interwoven" with the County's. In order to prove that JPMorgan aided and abetted the County's fraud, Assured will have to prove that the County committed fraud, and if the New York court enters a judgment against JPMorgan on Assured's fraud claims, that judgment could, via preclusion, result in a judgment against the County when JPMorgan pursues its indemnification and contribution claims. *See A.H. Robins Co.*, 788 F.2d at 999; *Vazquez v. Aetna Cas. & Sur. Co.*, 446 N.Y.S.2d 176, 178-79 (Civ. Ct. 1982) (offensive collateral estoppel is permissible where the non-party can show privity with the party against whom the judgment was rendered). Although Assured's fraud allegations have yet to be addressed by the New York court, and even if state law eventually prevents JPMorgan from being indemnified by the County for the fraud claims, these allegations "squarely implicate" the potential applicability of the County's indemnification and contribution obligations. *See Am. Film*, 175 B.R. at 855. Accordingly, these "unusual circumstances" warrant application of the § 362(a)(1) automatic stay.

### C. Discovery would significantly burden the County's adjustment of debts

Courts apply the § 362(a)(1) stay to proceedings against non-debtor defendants when discovery in those proceedings would impose a burden on the debtor that would substantially hinder the debtor's reorganization.[5] *See, e.g.*, *Lomas Fin. Corp.*, 117 B.R. at 67; *Johns-Manville I*, 40 B.R. at 223-26; *Sudbury, Inc.*, 140 B.R. at 465; *E. Air Lines, Inc.*, 111 B.R. at 435.[6]

---

damages among culpable parties regardless of the degree or nature of the concurring fault and that contribution is permitted even in favor of an intentional wrongdoer if the parties are subject to liability to plaintiff for damages for the same injury.") (internal quotations and citation omitted).

[5] Because a Chapter 9 debtor does not "reorganize" as this terminology is used in a Chapter 11 case, the Court will reference the same sort of restructuring used in Chapter 9 cases by referring to it as the County's adjustment of debts.

[6] Conversely, courts have not applied the stay where the discovery would cause little to no harm to the debtor's reorganization efforts. *See, e.g.*, *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 33-34 (S.D.N.Y. 1990) (declining to apply the stay to "only one action against a single former corporate insider" because there was no evidence that continued litigation against the defendant would have a "substantive effect" on the debtor's reorganization); *Ochs v. Lipson (In re First Cent. Fin. Corp)*, 238 B.R. 9, 18-21 (Bankr. E.D.N.Y. 1999) ("Here, mass litigation is non-existent, there is no reorganization effort which would require the participation of the Officers and Directors, and no discernible harm can be ascribed to the Debtor if the Officers and Directors ultimately file claims for indemnification in this Chapter 7 case."); *All Seasons Resorts, Inc. v. Milner (In re All Seasons Resorts, Inc.)*, 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987) (refusing to apply the stay to invalidate a default judgment against debtors' officers where there was no threat to debtor's reorganization). Unlike these cases, the Assured Action involves more than little or no harm to the County's adjustment of debts.

11

One of the seminal cases on this issue is *Johns-Manville I*. In that case, Johns-Manville, a large manufacturer of asbestos, filed a Chapter 11 bankruptcy petition after being faced with a vast number of product liability lawsuits totaling more than two billion dollars. *Johns-Manville I*, 40 B.R. at 221. Johns-Manville was severed out of the product liability lawsuits because of the automatic stay, but many plaintiffs wanted to continue to pursue their litigation against other non-debtor defendants. *Id.* The district court explained why the burden of discovery would have a serious, adverse impact on the debtor's reorganization:

> In considering the effect of extensive and expensive pre-trial discovery taken from a debtor in reorganization, or from its present or past officers and employees, the Court must be mindful of the realities of modern litigation. Pre-trial discovery under modern federal practice has become a monster on the loose. It is no longer a simple question of inspecting documents or producing a witness under oath who may simply be directed by Debtor's counsel to tell the truth and then testify. Pre-trial proceedings have become more costly and important than trials themselves. It is customary today for the lawyers for a witness or party subject to deposition testimony, to meet with the witness prior to depositions and interview the witness in depth. This is done in order to refresh the witness' recollection, prepare the witness to listen carefully to questions and assure that the witness will not engage in surmise or speculation and give unfounded answers which later pass as an admission against interest. Witness preparation also extends to making sure that attorney-client privileged matter, or trade secrets are not inadvertently loosed to the world.
>
> . . .
>
> Furthermore, once a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving Manville, whether or not Manville was a party to the record on which the initial testimony was taken.
>
> . . .
>
> Manville cannot be reorganized while its management is chasing around the country preparing for pre-trial discovery and protecting its legitimate interests in the scope and conduct of deposition testimony. To suggest otherwise, as noted above, would be to ignore the realities of modern litigation.

*Id.* at 224-25.[7] *See also E. Air Lines, Inc.*, 111 B.R. at 435 ("Because the suit would ultimately divert the debtor's resources and attention from the bankruptcy process, and possibly deprive this

---

[7] A subsequent case demonstrated that § 362(a)(1)'s protection against such discovery from the debtor is not absolute. In *Occidental Chemical Corp. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*) (*Johns-Manville II*), 41 B.R. 926 (S.D.N.Y. 1984), another district court declined to apply the stay to a non-debtor defendant, a former supplier of Manville's asbestos fibers, where the discovery sought was very limited and involved information that was in the exclusive custody and control of Manville, the plaintiffs' employer. The court balanced the parties' competing interests and determined that the small effect on the debtor's reorganization was outweighed by the asbestosis plaintiffs' right to pursue their claims in a timely fashion and by the non-debtor defendant's need to

12

Court of control over issues central to its administration of the case, it is necessary to enjoin [the lawsuit against the non-debtor defendants]."); *Sudbury, Inc.*, 140 B.R. at 465 (ruling that two lawsuits, each requesting $60 million in damages, were stayed because the lawsuits "would require the examination and production of voluminous records of the Debtor, analysis of its activities and financial reporting over a number of years and would be time-consuming and costly"); *Lomas Fin. Corp.*, 117 B.R. at 67 (staying a lawsuit because "key personnel would be distracted from participating in the reorganization process") (internal quotations and citation omitted). Moreover, the case law indicates that the concerns expressed by the *Johns-Manville I* court apply equally to discovery taken against former officers of the debtor. *See, e.g.*, *Johns-Manville I*, 40 B.R. at 224 (noting that its analysis applies to "present or past officers and employees"); *Sudbury, Inc.*, 140 B.R. at 467 ("prosecution of these suits would seriously impair Debtor's 'breathing spell' and its reorganization" even if no current officers are named).

Allowing the Assured Action to proceed would impose a burden on the County that would substantially hinder its adjustment of debts by diverting its attention and resources away from the bankruptcy process. The stakes in the Assured Action are high, and discovery is in the early stages. Assured alleges that fraud occurred during the financing of the Sewer System, which is responsible for approximately $3.14 billion of the County's $4.23 billion in scheduled debt, and makes allegations that involve hundreds of millions of dollars in potential compensatory and punitive damages. The County has already produced more than 370,000 pages of documents to Assured and spent over $2.5 million from its General Fund defending itself, and the parties still have yet to finish what remains as extensive and expensive pre-trial discovery. Document discovery – including third-party document discovery – is not yet complete, depositions and expert discovery have not begun, and numerous discovery disputes have yet to be briefed and resolved.

Participating in this discovery would distract key personnel of the County – including Commissioners, employees, and counsel – from the process of developing and executing a plan of adjustment because they will be required to respond to document discovery and be deposed or, at the very least, be involved in the deposition process. Even if Assured seeks discovery only from former, and not current, officials and employees of the County as it currently asserts it will do, JPMorgan, which also has a right to engage in discovery against the County, anticipates undertaking much broader discovery, including discovery from both current and former County officials. JPMorgan Br. at 3.[8]

---

mount a reasonable defense. *Id.* at 931-32 ("I am not persuaded that permitting limited discovery in this or comparable cases would bring about so disruptive an effect upon Manville's reorganization efforts as to condone the imposition of an injustice upon others."). In this case, the balance tips the other way. *See infra* Section V.

[8] JPMorgan's brief states that

> Assured's argument that *Assured* does not currently expect to depose any current County employees is of no moment. JPMorgan will be required to do so to defend itself against Assured's claims. Specifically, among JPMorgan's defenses are (1) that the payments made by JPMS at the direction of duly authorized County Commissioners were not secret and were in fact well known to the participants in the transactions at issue, including County Commissioners and employees, as well as the County's legal and financial advisors; and (2) that the payments were immaterial to the sewer-related problems that subsequently confronted the County. Thus, JPMorgan intends to

13

Further, despite Assured's assurances that "all the events relevant to Assured's fraudulent inducement claims against JPMorgan occurred prior to the issuance of Assured's final policy in April 2005 (and largely between 2002 and 2004)," Assured Reply Br. at 15 (Doc. 901), discovery will not necessarily be so limited. The Assured Complaint relies heavily upon events that occurred after 2005, including the County's April 2008 failure to generate sufficient revenues to meet its payment obligations, the 2009 criminal conviction of former Birmingham mayor Larry Langford, the 2009 censures and fines that the SEC imposed on JPMorgan, the 2009 civil charges that the SEC brought against former JPMorgan bankers, and the 2009 revelation at Langford's criminal trial of the bribes involved in the sewer financing. Assured Compl. ¶¶ 77-83. In any case, even discovery against former officials would require the participation of the County's counsel and its current leadership as well as an expenditure of funds, all of which are resources that not only should be, but out of financial necessity must be, devoted to the County's adjustment of debts. *See Johns-Manville I*, 40 B.R. at 224; *Sudbury, Inc.*, 140 B.R. at 467.

In short, discovery in the Assured Action promises to be the same sort of "extensive and expensive" process described by the *Johns-Manville* court. *See Johns-Manville I*, 40 B.R. at 224. Application of the stay is therefore appropriate.

---

depose and potentially call at trial numerous current and former County representatives and outside advisors.

JPMorgan Br. at 3. Assured counters JPMorgan's contentions by arguing that JPMorgan will not need to engage in such discovery "because none of the current County Commissioners were in office at the time of JPMorgan's fraud and its bribery scheme in the early half of the last decade (and none is believed to have been involved in the JPMorgan bribery scandal)." Assured Reply Br. at 16. Assured contends that JPMorgan misstates the reasons for these depositions and ignores the possibility that the County may decide to cooperate with JPMorgan's discovery requests (as the County did with Assured's document requests in the pre-bankruptcy period of 2011). However, the County's resistance to Assured's motion demonstrates that cooperation is not likely to occur. Furthermore, the costs that would be incurred even if the County cooperated would be substantial, and the other factors supporting application of the automatic stay that are discussed in the text of this opinion remain. Finally, even if Assured were correct that JPMorgan would not need to depose such officials and employees, reaching that determination could itself be a significant discovery dispute that would contribute to the County's burden.

14

Case 11-05736-CRJ9    Doc 1720    Filed 04/15/13    Entered 04/15/13 16:27:46    Desc
Main Document    Page 14 of 20

### D. Potential preclusive effect of the Assured Action

This Court also considers whether the Assured Action should be stayed because of its potential preclusive effect.[9] Courts have stayed proceedings against non-debtor defendants when the proceedings would have a potential preclusive effect that would force the debtors to participate in the proceedings as if they were a party. *See Lomas Fin. Corp.*, 117 B.R. at 67; *Lesser,* 44 B.R. at 702-04.

When dealing with preclusion, courts look to the laws of the state in which judgment would be or has been rendered. *See, e.g., Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 381 (1985). As such, this Court looks to the laws of New York. The doctrine of collateral estoppel in New York contains two requirements: "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (N.Y. 1985). Collateral estoppel can be used offensively under New York law, and the doctrine of mutuality is "a dead letter." *B. R. DeWitt, Inc. v. Hall*, 19 N.Y.2d 141, 147 (N.Y. 1967). Based on this formulation, "collateral estoppel bars not only parties from a previous action from litigating an issue decided therein, but those in privity with them as well." *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 486 (N.Y. 1979). Privity often exists in the relationship between an indemnitor and indemnitee, *A to Z Assocs. v. Cooper*, 613 N.Y.S.2d 512, 517 (N.Y. Sup. Ct. 1993) (quoting *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 119 (N.Y. 1956)), and some courts have applied the stay on the basis of similar relationships. *See, e.g.*, *Lomas Fin. Corp.*, 117 B.R. at 67 (in case involving allegations against officers of the debtor, the court noted that "it is not possible for the debtor to be a bystander to a suit which may have a $20 million issue preclusion effect against it in favor of a pre-petition creditor") (internal citation and quotations omitted); *Lesser,* 44 B.R. at 702-04 (applying stay where potential effect of collateral estoppel would force the debtors to monitor, and possibly participate in the district court cases). *But see Queenie, Ltd.*, 321 F.3d at 288 (declining to apply stay "because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision").

The potential preclusive effect of allowing the Assured Action to proceed against JPMorgan presents a concern for the County because of the Syncora Action involving claims against it in the hundreds of millions of dollars, if not greater, and the County's indemnification agreements with JPMorgan. The Assured and Syncora Complaints allege substantially similar fraud claims, have been assigned to the same judge, and the parties had been coordinating discovery for both cases.[10] The County would be forced to participate in the Assured Action as

---

[9] The case law remains ambiguous regarding whether the preclusive effect of a proceeding against a non-debtor defendant is an independent ground for imposing a stay on that proceeding, or whether it is merged with the analysis about a debtor's discovery burden. Although these issues often overlap, the preclusive effect of a proceeding and a debtor's discovery burden are two distinct concepts. *See Lesser*, 44 B.R. at 702-04 (examining collateral estoppel issues independently of a proceeding's discovery burden). For example, a debtor could be overwhelmed by the discovery costs of a proceeding in which the debtor has no stake in the outcome. Similarly, a debtor could be concerned about the developments in a case that might affect the debtor's own future litigation without being forced to engage in discovery in that case.

[10] Quinn Emanuel Urquhart & Sullivan, LLP currently represents both Assured and Syncora before the New York court, but offered during this Court's April 16, 2012, hearing to terminate its joint representation if such an option

if it were a party to the case because of the potential prejudicial effect the outcome of the Assured Action will have on both the Syncora Action and JPMorgan's indemnity claims against the County.[11] Even if, as the County contends, an actual collateral estoppel claim might not succeed, the County's legal position could still be adversely impacted by testimony given in the Assured Action to the detriment of its positions as a third-party defendant in the Assured Action and a defendant in the Syncora Action. *See Johns-Manville I*, 40 B.R. at 224-26.

As a practical matter, the County cannot be a bystander to a suit which may have a preclusive effect on claims for of hundreds of millions of dollars against it by a pre-petition creditor. The County's doing nothing is even more problematic because Assured has reinsured certain of Syncora's potential obligations to warrantholders. When one recognizes that the underlying liability basis to warrantholders is identical for the reinsured policies, it is obvious that the County cannot avoid participating in the Assured Action. More simply, it would be forced to a significant degree to participate in the Assured Action unless it wants to gamble that no adverse facts or rulings will be conclusively established. Therefore, the potential prejudice to the County's positions in the Syncora Action and indemnity actions by JPMorgan further supports application of the automatic stay.

### IV. Assured's Action is Subject to the Automatic Stay of 11 U.S.C. § 362(a)(3)

Unlike § 362(a)(1), § 362(a)(3) is not limited to actions against the debtor but instead stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and courts have applied the (a)(3) stay to non-debtor actions that "have an adverse impact on property of the estate."[12] *See Kagan v. Saint Vincents Catholic Med. Ctrs. of New York* (*In re Saint Vincents Catholic Med. Ctrs. of New York*), 449 B.R. 209, 217-18 (S.D.N.Y. 2011) ("the automatic stay provision is not limited solely to actions against the debtor, but rather bars actions against even against third-parties that would have an adverse impact on the property of the estate"); *Queenie, Ltd.*, 321 F.3d at 287 ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."); *48th Street Steakhouse, Inc. v. Rockefeller Grp.* (*In re 48th Street Steakhouse, Inc.*), 835 F.2d 427, 430-31 (2d Cir. 1987) (applying (a)(3) stay to non-debtor); *Kaiser*, 315 B.R. at 659 (same). "Property of the estate" within the meaning of § 362(a)(3) is governed by 11 U.S.C. § 541(a) and includes "'[e]very conceivable interest of the debtor,' including those that are 'future, nonpossessory, contingent, speculative, and derivative.'" *Saint Vincents Catholic Med.*

---

would allow the Assured Action to continue. Hr'g Tr. at 62-63 (Doc. 921). Concerns about the preclusive effect of the Assured Action remain regardless of the identity of Assured's legal representation, and Quinn Emanuel's offer – although being the right thing to do for its client – has no effect on this Court's determination of this issue. *See Johns-Manville I*, 40 B.R. at 224-25 (disregarding a party's offer to waive any right it had to use discovery against the debtor in future proceedings).

[11] Although the parties in the Assured and Syncora Actions have not stated any intention of invoking collateral estoppel, given the near-identical nature of the two suits, it is highly unlikely that such arguments will not be made.

[12] Title 11 U.S.C. § 902(1) makes the references in 11 U.S.C. § 362(a)(3) to "property of the estate" mean "property of the debtor." *See In re Jefferson Cnty., Ala.*, 484 B.R. 427, 447 (Bankr. N.D. Ala. 2012).

16

*Ctrs. of New York*, 449 B.R. at 217 (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.,* 538 F.3d 116, 122 (2d Cir.2008)).

An indemnification claim against the debtor – even if it is ultimately unsuccessful – may fall within § 362(a)(3) because it has an "immediate adverse economic consequence for the debtor's estate:"

> [B]ecause the Debtors have already pledged to indemnify the Officers, a claim against the Officers will, when entered, constitute a claim (and hence, an "immediate adverse economic consequence") against the estate. The fact that Appellants could sue to nullify this negative economic consequence does not eliminate the fact that it would still continue to exist for at least the duration of Appellants' suit—thereby potentially complicating the pending bankruptcy proceedings.

*Robert Plan Corp.,* 2010 WL 1193151, at *3 (citing *Queenie, Ltd.*, 321 F.3d at 287). *But see In re All Seasons Resorts, Inc.*, 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987) (officer's right to be indemnified by debtor does not implicate § 362(a)(3)).[13]

The Assured Action is an attempt to indirectly obtain property of the debtor under § 362(a)(3). Just as in *Robert Plan Corp.*, JPMorgan's indemnification and contribution claims against the County create an immediate adverse economic consequence for the debtor regardless of whether they are ultimately successful. Additionally, and as already discussed, the reinsurance agreement between Assured and Syncora effectively brings the underlying reinsured liabilities in the Syncora Action into the Assured Action as well. These identical underlying claims should not be allowed to go forward in the Assured Action while they are stayed in the Syncora Action simply because of Assured's pleading differences. The Assured Action is stayed pursuant to 11 U.S.C. § 362(a)(3).[14]

---

[13] In *All Seasons*, the court held that "special circumstances" did not exist to apply the stay to the non-debtors in that case because the circumstances there – the non-debtor officers' attempts to reverse the default judgment against them by applying the stay – did not implicate the debtor's reorganization:

> [T]he magnitude of the harm to debtor if no stay is in force does not approach the scope of the potential injuries besetting the debtors in *Robins* and *Johns–Manville.* I believe the court in those cases was particularly sensitive to the magnitude of the problems and the need to maintain the status quo and control over all the litigations which had the potential to destroy any reorganization plans. Such a threat is not evident here. Debtor seeks to unravel a default judgment against two of its officers. The balancing of harm in this proceeding is between the officers and Milner, not debtor. With his default judgment against McNamee and Mooney, Milner will likely be paid the full amount of his claim. They, in turn can seek indemnification from debtor, but their claim will be treated like any pre-petition, unsecured claim. In all likelihood, they will not get paid in full.

*All Seasons Resorts, Inc.*, 79 B.R. at 904. As detailed in Sections III.C and V, the County's adjustment of debts would be significantly impacted if the Assured Action were to proceed.

[14] For all of the reasons above, the Court holds that the automatic stays of 11 U.S.C. § 362(a)(1) and (a)(3) apply to – or are imposed on – the Assured Action. However, the Court notes that even if the stays did not apply to the entire Assured Action, all portions of the Assured Action directly implicating the debtor itself – including anything related to the allegations that JPMorgan aided and abetted the County's fraud and all of the discovery impacting the debtor

17

## V. There is No Cause to Modify the Automatic Stay

Having determined that the automatic stays of 11 U.S.C. § 362(a)(1) and (a)(3) apply to the Assured Action, the Court must next examine whether Assured has made a prima facie showing that it is entitled to relief from the stay. *In re Jefferson Cnty., Ala.*, 484 B.R. 427, 465 (Bankr. N.D. Ala. 2012) (Although "[t]he party opposing the stay bears the burden of persuasion on all issues except equity, the moving party must first make a prima facie showing that it is entitled to the relief requested.") (internal citations omitted).

Section 362(d) allows the Bankruptcy Court to grant relief from the automatic stay for "cause." "Cause" is not defined in the Bankruptcy Code. "Because there is no clear definition of what constitutes "cause," discretionary relief from the stay must be determined on a case by case basis." *In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985); *see also In re S. Oakes Furniture, Inc.*, 167 B.R. 307, 308 (Bankr. M.D. Ga. 1994). To determine whether "cause" exists to lift the stay and allow a suit to proceed in a non-bankruptcy forum, this Court has analyzed whether (1) any great prejudice to either the bankrupt estate or the debtor will result from continuation of a civil suit, (2) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (3) the creditor has a probability of prevailing on the merits of its lawsuit.[15] *In re Jefferson Cnty., Ala.*, 484 B.R. at 465-66 (citing *Chizzali v. Gindi* (*In re Gindi*), 642 F.3d 865, 872 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)).

As detailed in the preceding sections of this opinion, the County would be greatly prejudiced by allowing the Assured Action to continue. It would be forced to participate in an extensive and expensive discovery process and a trial in another state, further depleting the County's rapidly diminishing General Fund. Moreover, the County's indemnification agreements with JPMorgan could mean that the County will essentially be required to participate in litigation involving the issues in the Assured Action twice. Further, if the Assured Action proceeds, the evidence presented may have a preclusive effect in the Syncora Action or the

---

– would be stayed pursuant to § 362(a). *See Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1991) (claims and parties should be disaggregated when determining application of the stay). As a practical matter, a stay affecting only the portions of the Assured Action impacting the County would effectively prohibit the Assured Action from moving forward in any meaningful way. This disaggregation for automatic stay purposes is another, alternative basis on which this Court premises its ruling.

The Court also notes that the automatic stay of 11 U.S.C. § 922(a) does not apply to the Assured Action because that stay applies only to actions or proceedings "against an officer or inhabitant of the debtor." No such officer or inhabitant is named in the Assured Action; only the County itself is a third-party defendant. *Cf. In re Jefferson Cnty., Ala.*, 484 B.R. 427, 447 (Bankr. N.D. Ala. 2012) (§ 922(a) stay has potential application only to County Commissioners); *In re City of Stockton, Cal.*, 484 B.R. 372 (Bankr. E.D. Cal. 2012) (staying action against city officers).

[15] The parties cite a ten-factor test from *In re Marvin Johnson's Auto Serv., Inc.*, 192 B.R. 1008, 1014 (Bankr. N.D. Ala. 1996), in analyzing whether cause exists to lift the stay. *See* Assured Br. at 20; County Br. at 15. As this Court has often noted during hearings, multi-factor tests – particularly those used to determine "cause" for stay relief – essentially come down to a totality of the circumstances analysis. As set forth in this section of this opinion, the totality of the circumstances indicates that relief from the automatic stay is not appropriate.

indemnification claims. It may also alter the type and classification of the claim Assured would otherwise have in the County's Chapter 9 case while other claimholders would not have a similar opportunity.

In contrast, Assured will suffer very little hardship if the stay is applied to the Assured Action. If the Assured Action is stayed, Assured can still pursue its claims against the County in this Court and will not forfeit its right to pursue its claims against JPMorgan at a later date. Even more pointedly, Assured is being treated identically to Syncora with respect to what for all intents and purposes are identical claims and causes of action.

This Court's resolution of issues involving the allowance of claims, subordination, and the County's plan of adjustment of debts will implicate – and may even moot – the Assured Action, and allowing Assured to litigate these issues outside the context of the County's Chapter 9 case would defeat the very purpose of the County's Chapter 9 petition.[16] In short, there is no question that prejudice to the County far outweighs any hardship to Assured.

Unlike the stay relief motion this Court recently ruled on in *In re Jefferson County, Ala.*, 484 B.R. 427 (Bankr. N.D. Ala. 2012), Assured's likelihood of success on the merits is unclear from the record before this Court. *See In re Tovar*, No. BR 12-00357, 2012 WL 4845593, at *6 (Bankr. N.D. Iowa Oct. 10, 2012) (because movant's chances of success on the merits were unclear on the record provided, the factor was neutral); *In re Marvin Johnson's Auto Serv., Inc.*, 192 B.R. 1008, 1017 (Bankr. N.D. Ala. 1996) ("Without knowing the testimony the state court will hear, it is not possible for this Court to predict to what extent, if any, Mr. Franks will be successful."). In any event, it appears it may be too early in the Assured Action for the Court to assess Assured's likelihood of success. *See In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D. Ill. 1986). This factor is therefore neutral, and the balance of these three factors weighs heavily against modifying the automatic stay of 11 U.S.C. § 362 with respect to the Assured Action, and it will not be modified.

---

[16] Assured argues that *Stern v. Marshall*, 131 S. Ct. 2594 (2011), calls into question whether this Court has the authority to issue a final order on Assured's state law fraud claims against JPMorgan. Assured Br. at 23. As this Court recently noted in another decision, though, *Stern* does not limit a bankruptcy court's ability to enter final orders regarding modification of the automatic stay. *In re Jefferson Cnty., Ala.*, 484 B.R. 427, 439 (Bankr. N.D. Ala. 2012). And in any case, Assured's claims directly implicate matters that are squarely within the jurisdiction of this Court. *See supra* Section III.B.

19

## VI. Conclusion

Based on the foregoing findings of fact and conclusions of law, Assured's Motion is denied. The Court holds that based on the unusual circumstances presented in this case – specifically, the identity of interests between JPMorgan and the County, the effect on the County's reorganization efforts, and the potential preclusive effect of a judgment in the Assured Action – that the automatic stay of 11 U.S.C. § 362 applies to the Assured Action.[17] Further, because the prejudice to the County far outweighs any hardship to Assured, the Court will not modify the automatic stay in order for the Assured Action to proceed. This outcome is the elevation of substance over form preventing the downside of creativity that might otherwise cause misapplication or avoidance of the automatic stay of 11 U.S.C. § 362(a). More basically, the degree of sameness between the Assured Action and the Syncora Action requires equality of treatment that the creative pleading attempts to avoid.

A separate order incorporating the Court's decision will be entered contemporaneously with this Memorandum Opinion.

**Dated: April 15, 2013**

**Thomas B. Bennett**
**U.S. Bankruptcy Judge**

---

[17] *See infra* note 1.